RAELENE K. PALMER
Nevada Bar No. 8602
THE PALMER LAW FIRM, P.C.
5550 Painted Mirage Road
Suite 320
Las Vegas, Nevada 89149
Phone: (702) 952-9533
Email: rpalmer@plflawyers.com
*Attorney for Plaintiff Brian Borenstein*

ROBERT S. MELCIC
Nevada Bar No. 14923
4930 Mar Vista Way
Las Vegas, Nevada 89121
Phone: (702) 526-4235
Fax: (702) 386-1946
Email: robertmelcic@gmail.com
*Attorney for Plaintiff Brian Borenstein*

The Palmer Law Firm P.C.
5550 Painted Mirage Road, Suite 320
Las Vegas, Nevada 89149
Phone (702) 952-9533

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

BRIAN BORENSTEIN, an individual,

               Plaintiff,

vs.

THE ANIMAL FOUNDATION, a domestic nonprofit corporation; COUNTY OF CLARK, *ex rel.* CLARK COUNTY ANIMAL CONTROL, a political subdivision of the State of Nevada; SUNRISE HOSPITAL AND MEDICAL CENTER, LLC, a foreign limited-liability company domiciled in Delaware; CARLY SCHOLTEN, an individual; VICTOR ZAVALA, an individual; ULRIKE PASTERNAK, an individual; and ROE BUSINESS ENTITIES 1-5; and DOE INDIVIDUALS 1-5,

               Defendants.

Case No.:  2:19-cv-00985-APG-DJA

**FIRST AMENDED COMPLAINT**

**JURY DEMAND**

COMES NOW Plaintiff BRIAN BORENSTEIN, by and through his counsel, Raelene K. Palmer, Esq. of THE PALMER LAW FIRM, P.C., and Robert S. Melcic, Esq., and hereby complains, alleges, and avers against Defendants THE ANIMAL FOUNDATION, a domestic nonprofit

1

corporation; COUNTY OF CLARK, *ex. rel.* CLARK COUNTY ANIMAL CONTROL, a political subdivision of the state of Nevada; SUNRISE HOSPITAL AND MEDICAL CENTER, LLC, a foreign limited-liability company domiciled in Delaware; CARLY SCHOLTEN, an individual; VICTOR ZAVALA, an individual; ULRIKE PASTERNAK, an individual; and ROE BUSINESS ENTITIES 1-5; and DOE INDIVIDUALS 1-5 (collectively "Defendants") as follows:

## I.

## STATEMENT OF THE CASE

This is a civil rights and disability discrimination case arising under the United States Constitution, the Americans with Disabilities Act, and Nevada law, as well as a property and personal injury case for state law claims, including those of negligence, intentional infliction of emotional distress, interference with the use of a service animal, and conversion.  On or about May 12, 2019, BRIAN BORENSTEIN (hereinafter, "BORENSTEIN"), accompanied by his service dog, Mana, drove himself to SUNRISE HOSPITAL AND MEDICAL CENTER, LLC (hereinafter, "SUNRISE HOSPITAL") in Las Vegas, Nevada, after experiencing symptoms consistent with a heart attack.  He parked his rental car near the emergency room entrance and went inside with Mana.  When Mana became anxious, BORENSTEIN took Mana back to his air-conditioned vehicle and returned inside the hospital, where BORENSTEIN learned that he would be admitted to SUNRISE HOSPITAL's intensive care unit.  BORENSTEIN informed SUNRISE HOSPITAL staff that his service dog was in his car and that he did not have family or friends who could care for the dog, who would need boarding while BORENSTEIN was hospitalized.

In response, SUNRISE HOSPITAL staff called CLARK COUNTY ANIMAL CONTROL (hereinafter, "CCAC") and advised the dispatch clerk that BORENSTEIN had been admitted to the hospital and that SUNRISE HOSPITAL security was standing by the emergency room entrance so that CCAC could take possession of Mana.  A CCAC officer arrived at the hospital and met with a SUNRISE HOSPITAL security officer and Registered Nurse ULRIKE PASTERNAK (hereinafter, "NURSE PASTERNAK"), who were standing nearby BORENSTEIN's car, where Mana was secured. The security officer and NURSE PASTERNAK advised the CCAC officer that BORENSTEIN was then sedated and that Mana was identified to them as a service dog.

The Palmer Law Firm P.C.
5550 Painted Mirage Road, Suite 320
Las Vegas, Nevada 89149
Phone (702) 952-9533

The CCAC officer obtained permission from CCAC Lieutenant VICTOR ZAVALA (hereinafter, "LT. ZAVALA") to remove Mana from the vehicle and place only a ten-day hold on him, and NURSE PASTERNAK, operating on behalf of patient BORENSTEIN, signed the impound card releasing Mana to CCAC under those conditions. The CCAC officer left a copy of the impound card with NURSE PASTERNAK to give to BORENSTEIN and then took Mana to The Animal Foundation (hereinafter, "TAF"), a non-profit entity receiving nearly five million dollars of public funding in 2020 to provide shelter services for local governments in the greater Las Vegas Valley.

BORENSTEIN was subsequently transferred from SUNRISE HOSPITAL to a hospital in California. On or about May 24, 2019, BORENSTEIN telephoned CCAC staff and advised them that he had a heart attack, and he gave them his room number at the hospital in California. He further requested to have the hold on Mana extended while BORENSTEIN was hospitalized and explained that he did not have access to a telephone to further then communicate. BORENSTEIN left similar voice messages at TAF. LT. ZAVALA sent an email to TAF regarding BORENSTEIN's request, and he documented the foregoing details in CCAC records, dated May 28, 2019.

TAF, which had begrudgingly cared for BORENSTEIN's service animals in the past, through its officers, directors, managers, supervisors, agents, and/or employees, including its Chief Operating Officer CARLY SCHOLTEN (hereinafter, "COO SCHOLTEN"), purportedly called several Las Vegas hospitals in a pretextual effort to document its efforts at reaching BORENSTEIN, even though TAF knew BORENSTEIN was not in Las Vegas and that he did not have access to a telephone.

On or about May 30, 2019, CCAC and/or TAF, through their officers, directors, managers, supervisors, agents, and/or employees, removed the hold placed on Mana and made him available for adoption on or about May 31, 2019. On the evening of June 1, 2019, Mana was adopted by ROE BUSINESS ENTITIES 1-5 and/or DOE INDIVIDUALS 1-5. Thirteen minutes later, BORENSTEIN telephoned CCAC and left a voice message advising CCAC staff that he was still in the hospital and wanted to reclaim Mana.

BORENSTEIN discharged from the hospital on or about June 1, 2019, after leaving the message at CCAC. On the morning of June 2, 2019, LT. ZAVALA spoke with BORENSTEIN and advised him that Mana had already been adopted from TAF. BORENSTEIN, who was overcome with

The Palmer Law Firm P.C.
5550 Painted Mirage Road, Suite 320
Las Vegas, Nevada 89149
Phone (702) 952-9533

3

grief, informed LT. ZAVALA that he was going to kill himself and hung up the telephone.

BORENSTEIN drove to TAF and begged them to return Mana to him.  COO SCHOLTEN told BORENSTEIN that Mana had already been adopted and stated that BORENSTEIN was "too sick to care for a dog."  BORENSTEIN presented TAF with a demand for Mana's return, but COO SCHOLTEN told BORENSTEIN that TAF would euthanize Mana before allowing BORENSTEIN to have possession of him.  BORENSTEIN was hospitalized later that day for suicidal ideations and other grief brought on by the exacerbation of his mental disabilities from the sudden loss of his service dog.

Later that afternoon, BORENSTEIN faxed legal documents to CCAC including a previous court finding documenting Mana as BORENSTEIN's service dog.  LT. ZAVALA documented in CCAC records that he sent an email to TAF advising that he had received a call from BORENSTEIN requesting his dog to be held.  LT. ZAVALA also documented that CCAC had received the court documents finding Mana was a service dog, but LT. ZAVALA saw that Mana had been adopted on June 1, 2019 and was not sure what TAF could do for BORENSTEIN.

BORENSTEIN initiated this litigation on June 10, 2019.  BORENSTEIN contacted elected public officials, community leaders, animal rights organizations, and others seeking assistance in having Mana returned to him.  The president of the Humane Network contacted COO SCHOLTEN to help BORENSTEIN, but no follow-up came.  BORENSTEIN sought injunctive relief on June 20, 2019.  BORENSTEIN was hospitalized several times thereafter, and his doctor gave him a prescription for a service or emotional support animal to help him.  When BORENSTEIN tried to adopt an animal from TAF, COO SCHOLTEN retaliated and refused to adopt to him.  BORENSTEIN then tried to adopt from the Henderson Animal Shelter but was told that someone from TAF had entered an electronic note in the database that animal organizations in Clark County use with a warning not to allow BORENSTEIN to adopt an animal from them and to contact TAF for more information.  BORENSTEIN later learned from LT. ZAVALA that the database warning had come from COO SCHOLTEN.

## II.

### JURISDICTION AND VENUE

1.     The federal claims of this *Complaint* are maintained pursuant to 28 U.S.C. § 1331

The Palmer Law Firm P.C.
5550 Painted Mirage Road, Suite 320
Las Vegas, Nevada 89149
Phone (702) 952-9533

The Palmer Law Firm P.C.
5550 Painted Mirage Road, Suite 320
Las Vegas, Nevada 89149
Phone (702) 952-9533

("[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States").  In particular, this case asserts federal civil rights claims, arising under the Constitution of the United States, actionable pursuant to 42 U.S.C. § 1983; discrimination claims, actionable pursuant to 42 U.S.C. § 12101 *et seq*. (the Americans with Disabilities Act and the Americans with Disabilities Act Amendment Act (collectively, "ADA")) and 29 U.S.C. § 794 (Section 504 of the Rehabilitation Act of 1973, as amended ("Rehabilitation Act")).   This Court has supplemental jurisdiction over the state-law claims, pursuant to 28 U.S.C. § 1367(a) ("the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution").

2.     Venue is proper in the U.S. District Court situated in Las Vegas, Nevada, under Local Rule IA 1-6 and 28 U.S.C. § 1391(b)(2), because this Court is located in the "unofficial Southern Division" embracing Clark County and because the parties conducted business and/or resided in Las Vegas, Nevada, where a substantial part of the events or omissions giving rise to the claims of the case occurred.

## III.

## PARTIES

3.     At all relevant times herein, Plaintiff, BRIAN BORENSTEIN ("BORENSTEIN"), was and is a citizen of the state of Nevada, residing in Las Vegas, Nevada, and he was a patient of Defendant SUNRISE HOSPITAL AND MEDICAL CENTER, LLC, which, through its officers, directors, managers, supervisors, agents, and/or employees, including Defendant ULRIKE PASTERNAK, entrusted Plaintiff BORENSTEIN's service animal, Mana, to the custody of Defendant COUNTY OF CLARK, *ex. rel.* CLARK COUNTY ANIMAL CONTROL.

4.     On information and belief, Defendant, THE ANIMAL FOUNDATION ("TAF"), is a domestic nonprofit corporation, authorized to do business in the state of Nevada and actually doing business as a corporation in the state of Nevada, operating, governing, managing, controlling, and/or overseeing The Lied Animal Shelter, which houses animals in Clark County, Nevada, including Plaintiff BORENSTEIN's service animal, Mana, on behalf of several political subdivisions of the state

The Palmer Law Firm P.C.
5550 Painted Mirage Road, Suite 320
Las Vegas, Nevada 89149
Phone (702) 952-9533

of Nevada, pursuant to contracts therewith, including a contract with Defendant, COUNTY OF CLARK, *ex. rel.* CLARK COUNTY ANIMAL CONTROL.   At all times relevant hereto, Defendant TAF acquiesced in and ratified the decisions and actions made by its officers, directors, managers, supervisors, agents, and/or employees, including Defendant CARLY SCHOLTEN, and was bound by them.

5.     On information and belief, Defendant, COUNTY OF CLARK, governs, manages, controls, operates, and/or oversees CLARK COUNTY ANIMAL CONTROL, a governmental agency situated in Clark County, Nevada.  Pursuant to Nev. Rev. Stat. §41.0305, Defendant, COUNTY OF CLARK, *ex. rel.* CLARK COUNTY ANIMAL CONTROL ("CCAC"), is a political subdivision of the state of Nevada to which Defendant SUNRISE HOSPITAL, through its officers, directors, managers, supervisors, agents, employees, and/or government contractors, including Defendant ULRIKE PASTERNAK, entrusted Plaintiff BORENSTEIN's service animal.  At all times relevant hereto, Defendant CCAC acquiesced in and ratified the decisions and actions made by its officers, directors, managers, supervisors, agents, employees, and/or government contractors, including Defendants VICTOR ZAVALA and TAF, through its officers, directors, managers, supervisors, agents, and employees, including Defendant CARLY SCHOLTEN, and was bound by them.

6.     On information and belief, Defendant SUNRISE HOSPITAL AND MEDICAL CENTER, LLC ("SUNRISE HOSPITAL"), is a foreign limited-liability company domiciled in Delaware, authorized to do business in the state of Nevada and actually doing business as a corporation in the state of Nevada, operating, governing, managing, controlling, and/or overseeing the hospital where Plaintiff BORENSTEIN was admitted as a patient, in Clark County, Nevada.  At all times relevant hereto, Defendant SUNRISE HOSPITAL acquiesced in and ratified the decisions and actions made by its officers, directors, managers, supervisors, agents, and/or employees, including Defendant ULRIKE PASTERNAK, and was bound by them.

7.     On information and belief, Defendant CARLY SCHOLTEN ("COO SCHOLTEN"), at all times relevant to this action, was a citizen of the state of Nevada, residing in the county of Clark, and she was employed as the chief operating officer of Defendant TAF, at its facility situated at 655 North Mojave Road, Las Vegas, Nevada 89101.  At all times relevant hereto, Defendant COO

SCHOLTEN was supervised by Defendants TAF and CCAC, which was responsible for overseeing its government contractors and their officers, directors, managers, supervisors, agents, and/or employees. Defendant COO SCHOLTEN is sued in her individual and official capacities.

8.     On information and belief, Defendant VICTOR ZAVALA ("LT. ZAVALA"), at all times relevant to this action, was a citizen of the state of Nevada, residing in the county of Clark, and he was employed as a lieutenant officer by Defendant CCAC, at its facility situated at 2911 East Sunset Road, Las Vegas, Nevada 89120.   At all times relevant hereto, Defendant LT. ZAVALA was supervised by Defendant CCAC.   Defendant LT. ZAVALA is sued in his individual and official capacities.

9.     On information belief, Defendant ULRIKE PASTERNAK ("NURSE PASTERNAK"), at all times relevant to this action, was a citizen of the state of Nevada, residing in the county of Clark, and she was employed as a registered nurse by Defendant SUNRISE HOSPITAL, at its facility situated at 3186 South Maryland Parkway, Las Vegas, Nevada 89109.  At all times relevant hereto, Defendant NURSE PASTERNAK was supervised by Defendant SUNRISE HOSPITAL.

10.     The true names and capacities of the Defendants sued herein as ROE BUSINESS ENTITIES 1-5, inclusive, are unknown to Plaintiff BORENSTEIN, who sues these Defendants by such fictitious names.  ROE BUSINESS ENTITIES 1-5, inclusive, are parties in contemplation at the time of the filing of this *First Amended Complaint*.  Plaintiff BORENSTEIN alleges, on information and belief, that each of the Defendants sued herein as ROE BUSINESS ENTITIES 1-5, inclusive, adopted Plaintiff BORENSTEIN's service animal, Mana, from Defendant TAF, while Mana was entrusted to Defendant TAF's temporary care and custody, or subsequently acquired possession of BORENSTEIN's service animal, Mana.   Upon information and belief, ROE BUSINESS ENTITIES 1-5, inclusive, have possession and control of Mana—property lawfully belonging to Plaintiff BORENSTEIN, over which the district court exercises *in rem* jurisdiction.   Plaintiff BORENSTEIN will seek leave of Court to amend this *First Amended Complaint* to state the true names and capacities of ROE BUSINESS ENTITIES 1-5, inclusive, when they have been ascertained.

11.     The true names and capacities of the Defendants sued herein as DOE INDIVIDUALS 1-5, inclusive, are unknown to Plaintiff BORENSTEIN, who sues these Defendants by such fictitious

The Palmer Law Firm P.C.
5550 Painted Mirage Road, Suite 320
Las Vegas, Nevada 89149
Phone (702) 952-9533

names.  DOE INDIVIDUALS 1-5, inclusive, are parties in contemplation at the time of the filing of this *First Amended Complaint*.  Plaintiff BORENSTEIN alleges, on information and belief, that each of the Defendants sued herein as DOE INDIVIDUALS 1-5, inclusive, adopted Plaintiff BORENSTEIN's service animal, Mana, from Defendant TAF, while Mana was entrusted to Defendant TAF's temporary care and custody, or subsequently acquired possession of BORENSTEIN's service animal, Mana.  Upon information and belief, DOE INDIVIDUALS 1-5, inclusive, have possession and control of Mana—property lawfully belonging to Plaintiff BORENSTEIN, over which the district court exercises *in rem* jurisdiction.  Plaintiff BORENSTEIN will seek leave of Court to amend this *First Amended Complaint* to state the true names and capacities of DOE INDIVIDUALS 1-5, inclusive, when they have been ascertained.

12.   On information and belief, at all relevant times herein, each Defendant was the employer, officer, director, manager, supervisor, agent, and/or employee of the other, and some or all of Defendants' acts and omissions occurred during the course and scope of such employment and agency, and such acts and omissions were taken at the instruction of, at the request of, at the behest of, and/or for the benefit of one or more of the other Defendants.

### IV.

### GENERAL ALLEGATIONS COMMON TO ALL CLAIMS

13.   BORENSTEIN is a disabled individual within the meaning of the Americans with Disabilities Act ("ADA") and the Americans with Disabilities Act Amendments Act ("ADAAA") (collectively hereinafter, "ADA"), Nevada Revised Statute § 41.1395 (hereinafter, "Vulnerable Persons Statute"), and Nevada Revised Statutes § 233.020(3), § 426.068, and § 651.050(1) (collectively, Titles 233, 426, and 651 of the Nevada Revised Statutes are hereinafter referred to as the "State Discrimination Statutes").

14.   BORENSTEIN's psychological record of impairments include, but are not limited to, bipolar disorder, manic depression, anxiety, and post-traumatic stress disorder, and his medical record includes, but is not limited to, cardiovascular impairments.

15.   BORENSTEIN uses a self-trained service dog to assist him with his disabilities.

16.   BORENSTEIN is indigent.

The Palmer Law Firm P.C.
5550 Painted Mirage Road, Suite 320
Las Vegas, Nevada 89149
Phone (702) 952-9533

17.     The Animal Foundation (hereinafter, "TAF") operates the Lied Animal Shelter, which is a facility designated by CLARK COUNTY ANIMAL CONTROL (hereinafter, "CCAC") for receiving and holding animals, as defined in Nevada Revised Statute § 574.240.

18.     TAF is a non-profit entity receiving millions of dollars annually, including nearly five million dollars in public funding in 2020, to provide shelter services for local governments in the greater Las Vegas Valley, including CCAC.

19.     In or about the fall of 2018, BORENSTEIN's former dog, Rambo, was held at the Lied Animal Shelter for weeks while BORENSTEIN was hospitalized.

20.     On or before fall 2018, TAF, through its officers, directors, managers, supervisors, agents, and/or employees, knew that BORENSTEIN was disabled and/or had a record of impairment, and/or they regarded him as being disabled.

21.     BORENSTEIN did not compensate TAF for the time Rambo was boarded.

22.     Upon information and belief, TAF Chief Operating Officer CARLY SCHOLTEN (hereinafter, "COO SCHOLTEN"), became aware of Rambo's hold at the Lied Animal Shelter and that BORENSTEIN was unable to pay for it.

23.     TAF, through its officers, directors, managers, supervisors, agents, and/or employees, including COO SCHOLTEN, was displeased by BORENSTEIN's failure to pay for Rambo's boarding.

24.     BORENSTEIN owned Rambo for many years before Rambo subsequently died later in 2018, which, upon information and belief, was unrelated to his hold or the care he received at the Lied Animal Shelter.

25.     Rambo was a service dog, as defined in 28 Code of Federal Regulation § 36.104 and Nevada Revised Statute § 426.097.

26.     BORENSTEIN adopted Mana in or about January 2019 from the Henderson Animal Shelter in Henderson, Nevada.

27.     Mana is a German Shepard that BORENSTEIN believes resembles Rambo in both mannerisms and characteristics.

28.     BORENSTEIN selected Mana, in part, because Mana reminds BORENSTEIN of Rambo.

The Palmer Law Firm P.C.
5550 Painted Mirage Road, Suite 320
Las Vegas, Nevada 89149
Phone (702) 952-9533

29.    BORENSTEIN trained Mana to assist him with his disabilities.

30.    CCAC through, upon information and belief, Lieutenant VICTOR ZAVALA, (hereinafter, "LT. ZAVALA"), vouched for BORENSTEIN before the Henderson Animal Shelter adopted Mana to him.

31.    Mana is a service dog, as defined in 28 Code of Federal Regulation § 36.104 and Nevada Revised Statute § 426.097.

32.    On or about April 15, 2019, Mana was picked up by CCAC, through one of its officers, directors, managers, supervisors, agents, and/or employees, and held overnight at the Lied Animal Shelter operated by TAF, when BORENSTEIN was transported to the hospital.

33.    BORENSTEIN did not compensate TAF for Mana's overnight boarding.

34.    Upon information and belief, COO SCHOLTEN was informed that Mana was sheltered, at the Lied Animal Shelter in April 2019.

35.    CCAC, through its officers, directors, managers, supervisors, agents, and/or employees, knew that BORENSTEIN was disabled and/or had a record of impairment, and/or regarded him as being disabled before May 2019.

36.    On or about May 12, 2019, BORENSTEIN was accompanied by Mana, when he drove himself to SUNRISE HOSPITAL, after experiencing symptoms consistent with a heart attack.

37.    BORENSTEIN parked his rental car near the emergency room entrance and went inside with Mana.

38.    Being very protective of BORENSTEIN, Mana became anxious inside the hospital emergency waiting room, and BORENSTEIN took Mana back to his air-conditioned vehicle and returned inside the hospital, where BORENSTEIN learned that he would be admitted to SUNRISE HOSPITAL's intensive care unit for cardiac care.

39.    BORENSTEIN informed SUNRISE HOSPITAL staff that his service dog was in his car and that he did not have family or friends who could care for the dog, who would need boarding while BORENSTEIN was incapacitated in the hospital; after providing this information, BORENSTEIN was sedated.

40.    At or about 1:58 p.m., on May 12, 2019, unidentified staff of SUNRISE HOSPITAL

10

called CCAC and advised the dispatch clerk that BORENSTEIN had been admitted to the hospital and that SUNRISE HOSPITAL security was standing by the emergency room entrance so that the CCAC officer could take possession of Mana.

41.   SUNRISE HOSPITAL, through its officers, directors, managers, supervisors, agents, and/or employees, knew that BORENSTEIN was disabled and/or had a record of impairment, and/or regarded him as being disabled before calling CCAC.

42.   Upon arrival at SUNRISE HOSPITAL, CCAC Officer "CE 171" met with SUNRISE HOSPITAL Security Officer Vallan, who advised the CCAC officer that BORENSTEIN's vehicle was in the emergency room drop-off driveway, that BORENSTEIN had been admitted as an inpatient, and that BORENSTEIN's dog was in the vehicle; Officer Vallan stated he thought the dog seemed "aggressive".

43.   Upon information and belief, CCAC Officer "CE 171" is Rachel Lund (hereinafter, "Officer Lund").

44.   After speaking with Security Officer Vallan, Officer Lund went to the vehicle, where she observed Mana inside, barking excessively, while SUNRISE HOSPITAL Security Officer Carrero and Registered Nurse ULRIKE PASTERNAK (hereinafter, "NURSE PASTERNAK") stood nearby.

45.   Security Officer Carrero and NURSE PASTERNAK advised Officer Lund that BORENSTEIN was then sedated.

46.   Prior to speaking with Officer Lund, NURSE PASTERNAK knew that BORENSTEIN was disabled and/or had a record of impairment, and/or she regarded him as being disabled.

47.   Officer Lund advised CCAC Officer "CE 139" of the information relayed to her by SUNRISE HOSPITAL staff, including that BORENSTEIN was sedated and claimed Mana as his service dog, and she obtained permission from CCAC Officer "CE 139" to remove Mana from the vehicle and place only a ten-day hold on him.

48.   Upon information and belief, CCAC Officer "CE 139" is LT. ZAVALA.

49.   LT. ZAVALA had prior interactions with BORENSTEIN, so he already knew that BORENSTEIN was disabled and/or had a record of impairment, and/or he regarded BORENSTEIN as being disabled, prior to speaking with Officer Lund.

The Palmer Law Firm P.C.
5550 Painted Mirage Road, Suite 320
Las Vegas, Nevada 89149
Phone (702) 952-9533

11

The Palmer Law Firm P.C.
5550 Painted Mirage Road, Suite 320
Las Vegas, Nevada 89149
Phone (702) 952-9533

50.     Despite his knowledge of the circumstances surrounding Mana's seizure from BORENSTEIN's vehicle, where Mana's presence was authorized, including his knowledge of BORENSTEIN's disabilities and current hospitalization, his knowledge of Mana's status as BORENSTEIN's claimed service animal, and his knowledge that Mana's recovery by BORENSTEIN was imminent following BORENSTEIN's hospitalization, LT. ZAVALA acted with deliberate indifference when he failed to ensure that a sufficient hold was placed on Mana so that BORENSTEIN could reclaim him at the end of his hospitalization.

51.     LT. ZAVALA's failure to ensure that a sufficient hold was placed on Mana for his recovery by BORENSTEIN, despite all of LT. ZAVALA's foregoing knowledge about the situation, frustrated BORENSTEIN's permanent possession of his service animal and made Mana vulnerable to adoption by someone else.

52.     NURSE PASTERNAK signed a CCAC impound card releasing Mana to Officer Lund.

53.     Officer Lund left a copy of the impound card with NURSE PASTERNAK for her to give to BORENSTEIN to advise him about the impound and of the hold placed on Mana when he regained consciousness.

54.     Security Officer Carrero and NURSE PASTERNAK reiterated to Officer Lund that BORENSTEIN had informed SUNRISE HOSPITAL staff that Mana was a service dog and that Mana was not acting right because BORENSTEIN and Mana had been involved in a physical altercation with BORENSTEIN's landlord, who evicted them, which is why, BORENSTEIN told them, he left Mana in the vehicle.

55.     Nevertheless, NURSE PASTERNAK, despite all of her foregoing knowledge about the situation, failed to ensure that CCAC, through its officers, directors, managers, supervisors, agents, and/or employees, including LT. ZAVALA, placed a proper and sufficient hold on Mana to ensure that BORENSTEIN was not deprived of his permanent possession of Mana while he was hospitalized.

56.     Officer Lund removed Mana from the vehicle using a control stick, and she documented all the foregoing details in CCAC records, describing Mana as bright, alert, and responsive, with no obvious injuries.

57.     Officer Lund and/or other officers, directors, managers, supervisors, agents, and/or

1   employees, at CCAC, acting under the direction and authority of LT. ZAVALA, took Mana to the Lied

2   Animal Shelter operated by TAF.

3       58.   TAF, through its officers, directors, managers, supervisors, agents, and/or employees,

4   received a copy of the CCAC Impound Card that Officer Lund left with NURSE PASTERNAK to be

5   given to BORENSTEIN, which stated, "Owner hospitalized / admitted and currently sedated."

6       59.   Upon information and belief, COO SCHOLTEN was informed that Mana was sheltered,

7   accordingly.

8       60.   BORENSTEIN was subsequently transferred from SUNRISE HOSPITAL to Loma

9   Linda University Medical Center in California.

10       61.   SUNRISE HOSPITAL, acting through its officers, directors, supervisors, agents, and/or

11   employees, failed to ensure that Mana was safely kept, even after learning of BORENSTEIN's transfer

12   to a hospital out of state, until BORENSTEIN could reclaim him.

13       62.   At or about 8:49 a.m., on May 13, 2019, an email was sent to BORENSTEIN's email

14   address by a person identifying herself as "Isaura Lopez-Casteneda" from TAF.  The email was titled

15   "Impounded Animal, ID#A1055232 1st Attempt 'Please read all information." [sic]

16       63.   An authorization letter for pick-up and a credit card charge authorization were both

17   attached to the email.

18       64.   The email stated that TAF had an animal in its shelter that was registered to someone

19   other than the person surrendering the animal and asked BORENSTEIN to call TAF.

20       65.   "Impounded Animal, ID#A1055232" referred to Mana.

21       66.   The email further stated that if BORENSTEIN did not contact TAF by 2:35 p.m., on

22   May 22, 2019, Mana would be evaluated by a veterinarian and by TAF's Behavioral Department, and if

23   Mana passed the evaluations, he might be sent to adoption or to a rescue organization, and if he did not

24   pass the evaluations, he might be humanely euthanized.

25       67.   The email instructed BORENSTEIN to contact TAF for a quote on fees, if he planned

26   on reclaiming Mana, and further, to contact two individuals whose email addresses were provided

27   along with a telephone number, if he wanted more time to claim Mana.  The email further instructed

28   that if BORENSTEIN received a recorded message when he called TAF, to leave a message no matter

The Palmer Law Firm P.C.
5550 Painted Mirage Road, Suite 320
Las Vegas, Nevada 89149
Phone (702) 952-9533

13

what TAF's recorded message said and to do so before the time expired on Mana's hold.

68.    The email also provided information about the "Keeping Every Person and Pet Together" ("KEPPT") program and a promise from TAF to help with barriers in finding pet-friendly housing; a telephone number for CCAC was also provided.

69.    The KEPPT program is an owner-surrender intervention program designed to keep pets out of the shelter.

70.    At or about 9:26 a.m., on May 14, 2019, another email was sent to BORENSTEIN's email address by a person identifying herself as "Isaura Lopez-Casteneda" from TAF. The email was titled "***Correct Impounded Animal, ID#A1055232 2nd Attempt 'Please read all information." [sic]

71.    The second email was substantially similar to the first email and included the same two attachments authorizing pick-up and credit card charges, except in the body of the email it directed BORENSTEIN to refer to "Animal ID#A1049211" when corresponding with TAF.

72.    "ID#A1049211" was not Mana's correct TAF identification number.

73.    TAF, through its officers, directors, managers, supervisors, agents, and/or employees, including, upon information and belief, COO SCHOLTEN, knew that BORENSTEIN had been hospitalized and sedated and was, therefore, unlikely to receive these emails, and/or TAF and COO SCHOLTEN were deliberately indifferent about ensuring that BORENSTEIN received actual notice and an opportunity to be heard regarding Mana's boarding and TAF's intentions with Mana.

74.    In fact, BORENSTEIN did not receive these emails on the dates they were sent, because BORENSTEIN was still in the hospital suffering from a serious medical condition and was unable to then access his email.

75.    While still in the hospital, however, BORENSTEIN subsequently contacted TAF several times before May 22, 2019, and he left voicemail messages at the inconsistently-monitored number listed in the emails informing TAF that he was in the hospital and wanted to reclaim Mana; despite his repeated efforts, BORENSTEIN was not able to speak with anyone directly.

76.    On or about May 24, 2019, BORENSTEIN telephoned a staff member at CCAC and explained that he had a heart attack, and he provided the room and bed number where he was staying at Loma Linda UMC.

The Palmer Law Firm P.C.
5550 Painted Mirage Road, Suite 320
Las Vegas, Nevada 89149
Phone (702) 952-9533

14

77. During the phone call with the staff member at CCAC, BORENSTEIN requested to have the hold on Mana extended and explained that he did not have access to a telephone to further communicate at that time.

78. BORENSTEIN's inquiries complied with the instructions provided in the emails from TAF and further amounted to requests for a reasonable accommodation to hold Mana longer, pursuant to the ADA and State Discrimination Statutes, so that BORENSTEIN could reclaim him, after he got out of the hospital.

79. Upon information and belief, COO SCHOLTEN was aware of BORENSTEIN's request to hold Mana longer but deliberately disregarded it.

80. LT. ZAVALA sent an email to TAF, through its officers, directors, managers, supervisors, agents, and/or employees, to advise TAF of BORENSTEIN's request, and he documented the foregoing details in CCAC records, dated May 28, 2019.

81. Upon information and belief, LT. ZAVALA's email was sent to COO SCHOLTEN.

82. After relaying this information, LT. ZAVALA acted with deliberate indifference when he failed to respond to BORENSTEIN's request for a reasonable accommodation by failing to ensure that Mana was held, in accordance with BORENSTEIN's request, or otherwise to ensure that Mana was safeguarded until BORENSTEIN received notice and an opportunity to be heard about his request for a reasonable accommodation.

83. Upon or before receiving LT. ZAVALA's email, COO SCHOLTEN knew that BORENSTEIN was disabled and/or had a record of impairment, and/or she regarded him as being disabled, including because of her past interactions with BORENSTEIN.

84. Upon information and belief, COO SCHOLTEN and/or other officers, directors, managers, supervisors, agents, and/or employees of TAF, acting under her direction and authority, purportedly called several Las Vegas hospitals in a pretextual effort to document additional efforts at reaching BORENSTEIN, even though they knew BORENSTEIN was not in Las Vegas and that he did not have access to a telephone.

85. Furthermore, COO SCHOLTEN acted with deliberate indifference and failed to reasonably accommodate BORENSTEIN by failing to ensure that Mana was held or otherwise

The Palmer Law Firm P.C.
5550 Painted Mirage Road, Suite 320
Las Vegas, Nevada 89149
Phone (702) 952-9533

safeguarded until BORENSTEIN received notice and an opportunity to be heard regarding Mana, even when BORENSTEIN's repeated attempts to contact TAF and CCAC made it clear to COO SCHOLTEN that BORENSTEIN had imminent intentions to recover his service animal at the first opportunity, once he had overcome the limitations of his temporarily incapacitating disabilities.

86.    On May 28, 2019, LT. ZAVALA documented in CCAC records that, upon learning that TAF was unable to reach BORENSTEIN at "UMC," LT. ZAVALA attempted to telephone BORENSTEIN at a hospital in Las Vegas, where LT. ZAVALA believed BORENSTEIN had previously stayed, and LT. ZAVALA purportedly left a message with a caseworker requesting BORENSTEIN to call him.

87.    After purportedly leaving this message, LT. ZAVALA acted with deliberate indifference and failed to reasonably accommodate BORENSTEIN by failing to ensure that Mana was held or otherwise safeguarded until BORENSTEIN received notice and an opportunity to be heard regarding Mana, even when LT. ZAVALA was aware of BORENSTEIN's repeated attempts to contact CCAC in order to convey his imminent intentions to recover his service animal at the first opportunity, once he had overcome the limitations of his temporarily incapacitating disabilities.

88.    According to LT. ZAVALA's documentation in CCAC records, on or about May 30, 2019, CCAC and/or TAF, acting on behalf of CCAC, through their respective officers, directors, managers, supervisors, agents, and/or employees, removed the hold placed on Mana and made him available for adoption on or about May 31, 2019.

89.    Upon information and belief, converting Mana to the ownership of TAF and then releasing him for adoption, as though he was unclaimed property, was done with the knowledge and approval of COO SCHOLTEN, in reckless disregard for BORENSTEIN's safety and well-being, in reckless disregard for BORENSTEIN's rightful property interests, in reckless disregard for the reasonable accommodation protections entitled to BORENSTEIN by law, and in reckless disregard for TAF's own KEPPT program, whose stated purpose is to facilitate animals staying with their rightful owners.

90.    At or about 6:25 p.m., on June 1, 2019, Mana was adopted from TAF by ROE BUSINESS ENTITIES 1-5 and/or DOE INDIVIDUALS 1-5.

The Palmer Law Firm P.C.
5550 Painted Mirage Road, Suite 320
Las Vegas, Nevada 89149
Phone (702) 952-9533

16

91.     Approximately thirteen minutes thereafter, at or about 6:38 p.m., on June 1, 2019, BORENSTEIN telephoned CCAC and left a voice message advising that he was still in the hospital and wanted to reclaim Mana.

92.     BORENSTEIN discharged from the hospital on or about June 1, 2019, shortly after placing the telephone call to CCAC, and he returned to Las Vegas, Nevada.

93.     At or about 10:59 a.m., on the morning of June 2, 2019, LT. ZAVALA spoke with BORENSTEIN and advised him that Mana had already been adopted from TAF.

94.     BORENSTEIN, who was overcome with grief, informed LT. ZAVALA that he was going to kill himself and hung up the telephone.

95.     BORENSTEIN drove to TAF, where he met with COO SCHOLTEN, and he begged her to return Mana to him, explaining that Mana was his service dog.

96.     COO SCHOLTEN told BORENSTEIN that Mana had already been adopted to someone else.

97.     BORENSTEIN presented COO SCHOLTEN with a written demand for Mana's return.

98.     COO SCHOLTEN told BORENSTEIN that TAF would euthanize Mana before allowing BORENSTEIN to have possession of him, stating that, in her opinion, BORENSTEIN was "too sick" to care for Mana.

99.     At no point did BORENSTEIN relinquish his legal ownership of Mana to SUNRISE HOSPITAL, to CCAC, and/or to TAF; instead, SUNRISE HOSPITAL asked CCAC, a publicly-funded, government agency, to act as a temporary steward of Mana's safety and well-being, because BORENSTEIN did not have family or friends he could rely upon to watch Mana while he was temporarily incapacitated by disability.

100.    Neither LT. ZAVALA nor COO SCHOLTEN made any effort to contact ROE BUSINESS ENTITIES 1-5 and/or DOE INDIVIDUALS 1-5 to reclaim Mana for return to BORENSTEIN or otherwise to advise them of the converted adoption.

101.    BORENSTEIN left TAF and was hospitalized shortly thereafter for suicidal ideations and other physical or mental impairments.

102.    While waiting to be admitted to the hospital, at or about 12:09 p.m., on the afternoon of

The Palmer Law Firm P.C.
5550 Painted Mirage Road, Suite 320
Las Vegas, Nevada 89149
Phone (702) 952-9533

June 2, 2019, BORENSTEIN faxed legal documents to CCAC, pertaining to BORENSTEIN's recent eviction proceedings, which included a written court finding that Mana is BORENSTEIN's service dog.

103.   Less than an hour later, at or about 1:02 p.m., LT. ZAVALA documented that LT. ZAVALA sent an email to an officer, director, manager, supervisor, agent, or employee of TAF, advising that he had received a call from BORENSTEIN requesting to hold Mana but noticed that Mana had been adopted on June 1, 2019.  LT. ZAVALA further wrote that he was not sure what TAF could do for BORENSTEIN but further advised that CCAC had received the aforementioned court documents finding that Mana was a service dog.

104.   Upon information and belief, LT. ZAVALA's email was sent to COO SCHOLTEN.

105.   The failures of CCAC, through its officers, directors, managers, supervisors, agents, and/or employees, including LT. ZAVALA, and TAF, through its officers, directors, managers, supervisors, agents, and/or employees, including COO SCHOLTEN, to act, in conscious disregard of BORENSTEIN's well-established Constitutional rights, caused BORENSTEIN to be deprived of his possessory interest in Mana and his ability to enjoy his life, liberty, and happiness, including because of Mana's trained assistance with BORENSTEIN's disabilities.

106.   BORENSTEIN filed the original *Complaint* commencing this action on June 10, 2019.

107.   BORENSTEIN contacted elected public officials, community leaders, animal rights organizations, including the Humane Network, and others, seeking assistance in having Mana returned to him.

108.   Bonney Brown, President of the Humane Network, contacted an officer, director, manager, supervisor, agent, and/or employee of TAF, after receiving BORENSTEIN's email seeking help, and on June 19, 2019, Ms. Brown advised BORENSTEIN that "the director" was "looking into it."

109.   Upon information and belief, when Ms. Brown referenced "the director" in her email, she was referring to COO SCHOLTEN, who also holds the title of "shelter operations director."

110.   On June 20, 2019, BORENSTEIN filed a motion for preliminary injunction in this matter, seeking the return of Mana.

111.   In the interim period between BORENSTEIN's separation from Mana and the filing of

18

this *First Amended Complaint*, (hereinafter, "*FAC*"), BORENSTEIN has suffered great mental anguish and other injuries due to his loss of Mana.

112.   BORENSTEIN has also been the victim of two violent crimes and has been hospitalized several times during this same period, including because he has not had Mana to protect him and to assist him with his disabilities.

113.   During one of BORENSTEIN's hospitalizations, a doctor provided BORENSTEIN with a written prescription for a psychiatric/emotional support animal, from which the doctor said BORENSTEIN would benefit.

114.   TAF, through its officers, directors, managers, supervisors, agents, and/or employees, including COO SCHOLTEN, became aware of BORENSTEIN's doctor's prescription but refused to allow BORENSTEIN to adopt an animal from TAF, when he attempted to do so.

115.   BORENSTEIN then tried to adopt an animal from the Henderson Animal Shelter but was unable to do so.

116.   The person BORENSTEIN spoke with at the Henderson Animal Shelter told him that there was an electronic warning from TAF in a database, accessible to the staff of the Henderson Animal Shelter, as well as animal law enforcement agencies and, upon information and belief, other animal shelters and/or rescue organizations, warning other animal agencies in Clark County not to adopt an animal to BORENSTEIN.

117.   When BORENSTEIN requested to have a copy of the warning, the person referred him to the Henderson Deputy Police Chief in charge of the shelter.

118.   BORENSTEIN telephoned the Henderson Deputy Police Chief, who confirmed that someone from TAF had entered an electronic note in the database with a warning not to adopt an animal to BORENSTEIN, but the Deputy Police Chief told BORENSTEIN that BORENSTEIN would have to get a copy of the record directly from TAF.

119.   BORENSTEIN also spoke with LT. ZAVALA, who confirmed the existence of the warning in the database, and he told BORENSTEIN that COO SCHOLTEN was responsible for it.  LT. ZAVALA also told BORENSTEIN that BORENSTEIN would have to obtain a copy of the record from TAF.

The Palmer Law Firm P.C.
5550 Painted Mirage Road, Suite 320
Las Vegas, Nevada 89149
Phone (702) 952-9533

120.    TAF, through its officers, directors, managers, supervisors, agents, and/or employees, including COO SCHOLTEN, did not respond to BORENSTEIN's public records request for information.

121.    TAF's actions, through COO SCHOLTEN and/or another officer, manager, supervisor, agent, or employee, in preventing BORENSTEIN from adopting another animal were done in retaliation for his having first communicated with elected public officials and other public and private leaders about his loss of Mana at the hands of CCAC and TAF, through their respective officers, directors, managers, supervisors, agents, and/or employees, and thereafter filing the instant legal action and request for immediate injunctive relief.

122.    CCAC, through LT. ZAVALA and/or another officer, manager, supervisor, agent, or employee, knew that TAF, through its officers, directors, managers, supervisors, agents, and/or employees, including COO SCHOLTEN, placed the warning not to adopt an animal to BORENSTEIN in the electronic files accessible to CCAC and other entities responsible for the adoption of animals, and CCAC, through LT ZAVALA and/or another officer, manager, supervisor, agent, or employee, failed to correct the records or otherwise ensure that BORENSTEIN was not subjected to further discrimination and retaliation.

123.    BORENSTEIN's inability to adopt another animal has caused him to suffer additional great mental anguish and other injuries.

—*FEDERAL CLAIMS*—

V.

FIRST CAUSE OF ACTION

42 U.S.C. § 1983 Violation of BORENSTEIN's Fourteenth Amendment Rights

-*SUBSTANTIVE DUE PROCESS*-
(Deprivation of BORENSTEIN's Constitutional Right to Property)

(Asserted against TAF, CCAC, COO SCHOLTEN, and LT. ZAVALA)

124.    BORENSTEIN incorporates by reference all prior allegations of this *FAC*, as though fully set forth herein.

125.    BORENSTEIN has a property interest in his ownership of Mana.

126.   CCAC, acting under its police powers and vested with authority under color of law, is responsible for the illegal actions and damages inflicted upon BORENSTEIN, through its officers, directors, managers, supervisors, agents, employees and/or government contractors who implemented and/or enforced relevant ordinances, policies, customs, and practices in an arbitrary and capricious manner, so as to violate BORENSTEIN's constitutional rights.

127.   TAF, as a publicly paid contractor and agent of CCAC, took actions of a governmental nature under the police powers of CCAC that are totally intertwined with government action and vested with government authority under color of law and, as such, is responsible for the illegal actions and damages inflicted upon BORENSTEIN, through its officers, directors, managers, supervisors, agents, and/or employees who implemented and/or enforced relevant ordinances, policies, customs, and practices in an arbitrary and capricious manner, so as to violate BORENSTEIN's constitutional rights.

128.   Such ordinances, policies, customs, and practices include the arbitrary and capricious enforcement of the Clark County Title 10 Animal Ordinance, the ADA, and the State Discrimination and Vulnerable Persons Statutes,  thereby resulting in a permanent, widespread, well-settled practice or custom constituting the standard operating procedures of CCAC and TAF, for which no follow-up investigations or disciplinary actions are taken against those officers, directors, managers, supervisors, agents, and/or employees who engage in improper enforcement and no corrective training or instructions are provided by CCAC or TAF to them.

129.   At all times relevant hereto, LT. ZAVALA and COO SCHOLTEN, acting in their individual and official capacities under color of law, were personally involved, as alleged herein, and acted intentionally and/or with callous and reckless disregard for BORENSTEIN's constitutional rights and engaged in conduct that shocks the conscience.

130.   In addition to LT. ZAVALA's and COO SCHOLTEN's direct personal actions adversely affecting BORENSTEIN's constitutional rights, relative to this cause of action, LT. ZAVALA and/or COO SCHOLTEN directed or knew of the misconduct by their respective subordinates, relative to this cause of action, and facilitated, approved, condoned, and/or turned a blind eye toward it.

131.   The intentional or deliberately indifferent actions in callous and reckless disregard for

The Palmer Law Firm P.C.
5550 Painted Mirage Road, Suite 320
Las Vegas, Nevada 89149
Phone (702) 952-9533

21

BORENSTEIN's constitutional rights were unjustifiable by any government interest.

132.   Such actions caused a loss and effect to BORENSTEIN's constitutional rights of being able to enjoy his life, liberty, property, and happiness in Mana and those services which Mana provided related to BORENSTEIN's disabilities, as secured, guaranteed, and incorporated by the Fourteenth Amendment to the Constitution of the United States Due Process Clause (substantive).

133.   Defendants should be enjoined from continued arbitrary and capricious enforcement of Clark County Title 10 Animal Ordinance, the ADA, and/or the State Discrimination and Vulnerable Person Statutes.

134.   As a direct and proximate result of the intentional, malicious, willful, deliberately indifferent, oppressive, and/or reckless conduct of Defendants, and each of them, for this cause of action, BORENSTEIN sustained injury, harm, suffering, mental anguish, and damages, entitling him to compensatory damages, punitive damages, and prospective injunctive and declaratory relief, as allowed by law, according to proof at trial.

135.   As a further, direct and proximate result of the intentional, malicious, willful, deliberately indifferent, oppressive, and/or reckless conduct of Defendants, and each of them, for this cause of action, BORENSTEIN has had to retain the services of attorneys in this matter, for which he seeks attorneys' fees and costs, including under 42 U.S.C. §§ 1983 and 1988 *et seq*.

### VI.

### SECOND CAUSE OF ACTION

**42 U.S.C. § 1983 Violation of BORENSTEIN's Fourteenth Amendment Rights**

***-EQUAL PROTECTION CLAIM-***
(Differential Treatment between BORENSTEIN and other Animal Owners)

**(Asserted against TAF, CCAC, COO SCHOLTEN, and LT. ZAVALA)**

136.   BORENSTEIN incorporates by reference all prior allegations of this *FAC*, as though fully set forth herein.

137.   BORENSTEIN has a property interest in his ownership of Mana.

138.   CCAC, including through its officers, directors, managers, supervisors, agents, employees, and/or government contractors, acting under its police powers and vested with authority

The Palmer Law Firm P.C.
5550 Painted Mirage Road, Suite 320
Las Vegas, Nevada 89149
Phone (702) 952-9533

under color of law, is responsible for the deprivation of BORENSTEIN's federal rights, including his right to equal protection of the laws as secured, guaranteed, and incorporated by the Fourteenth Amendment to the Constitution of the United States, by implementing and/or enforcing relevant ordinances, policies, customs, and practices in an arbitrary and capricious manner, so as to violate BORENSTEIN's constitutional rights.

139.   TAF, as a publicly paid contractor and agent of CCAC, including through TAF's officers, directors, managers, supervisors, agents, and/or employees, took actions of a governmental nature under the police powers of CCAC that are totally intertwined with government action and vested with government authority under color of law and, as such, is responsible for the deprivation of BORENSTEIN's federal rights, including his right to equal protection of the laws as secured, guaranteed, and incorporated by the Fourteenth Amendment to the Constitution of the United States, by implementing and/or enforcing relevant ordinances, policies, customs, and practices in an arbitrary and capricious manner, so as to violate BORENSTEIN's constitutional rights.

140.   BORENSTEIN is in a class of persons who was subjected to the Clark County Title 10 Animal Ordinance.

141.   CCAC and TAF, by and through its officers, directors, managers, supervisors, agents, and/or employees, including LT. ZAVALA and COO SCHOLTEN, and each of them, motivated by discriminatory purposes, including because of BORENSTEIN's disabilities and/or indigent status, and intending to so discriminate against PLAINTIFF, treated PLAINTIFF in a different manner as compared to other persons who were subjected to the Clark County Title 10 Animal Ordinance, such differential treatment included:

A.   Failing to place an adequate hold on Mana and failing to extend the hold on Mana sufficient to enable BORENSTEIN to reclaim him, after BORENSTEIN was released from the hospital;

B.   Failing to acknowledge and/or act upon telephone and/or email messages from BORENSTEIN, including those made in accordance with email instructions provided to BORENSTEIN by TAF;

C.   Failing to acknowledge and/or act upon those telephone and/or email messages

between CCAC and TAF concerning Mana or BORENSTEIN;

D.  Failing to follow-up on communications between CCAC and TAF to ensure appropriate actions were taken to ensure Mana's safekeeping for BORENSTEIN while he was incapacitated by disability in the hospital;

E.  Failing to make a genuine, rather than a pretextual, effort to locate BORENSTEIN while he was hospitalized before placing Mana for adoption;

F.  Failing to place or explore the possibility of placing Mana in the KEPPT program or a similar foster program until BORENSTEIN could reclaim him;

G.  Failing to provide adequate notice and an opportunity for BORENSTEIN to be heard before allowing Mana to be adopted;

H.  Failing to notify ROE BUSINESS ENTITIES 1-5 and/or DOE INDIVIDUALS 1-5 of Mana's converted adoption in a timely manner to ensure the preservation of BORENSTEIN's rights and Mana's status as a service animal at the time he was taken from BORENSTEIN; and

I.  Refusing to allow BORENSTEIN to adopt another animal from TAF, and/or thwarting his efforts to adopt from another shelter and/or rescue organization in Clark County, Nevada and/or elsewhere by placing a warning about him in the adoption database used by animal adoption facilities.

142.    However, CCAC and TAF, by and through its officers, directors, managers, supervisors, agents, and/or employees, including LT. ZAVALA and COO SCHOLTEN, and each of them, did not treat other persons who were subjected to the Clark County Title 10 Animal Ordinance in a similar manner, including by making a genuine effort to locate and provide notification to the animals' owners about their sheltered animals' whereabouts and the required actions from the owners; by placing adequate holds on their animals and holding them for extended periods when the animals' owners were identified and the circumstances made it difficult for the owners to claim them in the prescribed time periods; by communicating with the animals' owners and between each other to ensure that the animals were not prematurely and permanently separated from their owners who desired to maintain possession of their animals; by placing their animals in the KEPPT program or exploring alternative options for the

1  animals instead of adopting them out; by correcting and unwinding improper adoptions upon learning

2  of them; and/or by not retaliating and allowing owners to adopt other animals from TAF.

3  143.   Such differential treatment between BORENSTEIN and other animal owners was not

4  rationally related to a legitimate government purpose.

5  144.   At all times relevant hereto, LT. ZAVALA and COO SCHOLTEN, acting in their

6  individual and official capacities under color of law, were personally involved, as alleged herein, and

7  acted intentionally and/or with callous and reckless disregard for BORENSTEIN's constitutional rights.

8  145.   In addition to LT. ZAVALA's and COO SCHOLTEN's direct personal actions

9  adversely affecting BORENSTEIN's constitutional rights, relative to this cause of action, LT.

10  ZAVALA and COO SCHOLTEN directed or knew of the misconduct by their respective subordinates,

11  relative to this cause of action, and facilitated, approved, condoned, and/or turned a blind eye toward it.

12  146.   Defendants should be enjoined from continued discriminatory conduct.

13  147.   As a direct and proximate result of the intentional, malicious, willful, deliberately

14  indifferent, oppressive, and/or reckless conduct of Defendants, and each of them, for this cause of

15  action, BORENSTEIN sustained injury, harm, suffering, mental anguish, and damages, entitling him to

16  compensatory damages, punitive damages, and prospective injunctive and declaratory relief, as allowed

17  by law, according to proof at trial.

18  148.   As a further, direct and proximate result of the intentional, malicious, willful,

19  deliberately indifferent, oppressive, and/or reckless conduct of Defendants, and each of them, for this

20  cause of action, BORENSTEIN has had to retain the services of attorneys in this matter, for which he

21  seeks attorneys' fees and costs, including under 42 U.S.C. §§ 1983 and 1988 *et seq*.

## VII.

### THIRD CAUSE OF ACTION

### 42 U.S.C. § 1983 Violation of BORENSTEIN's Fourteenth Amendment Rights
### -*PROCEDURAL DUE PROCESS*-

### (Asserted against TAF, CCAC, COO SCHOLTEN, and LT. ZAVALA)

27  149.   BORENSTEIN incorporates by reference all prior allegations of this *FAC*, as though

28  fully set forth herein.

The Palmer Law Firm P.C.
5550 Painted Mirage Road, Suite 320
Las Vegas, Nevada 89149
Phone (702) 952-9533

150.    BORENSTEIN has a property interest in his ownership of Mana.

151.    As such, BORENSTEIN could not be divested of his ownership in Mana *before* receiving proper notice, including the notice required by the Clark County Title 10 Animal Ordinance and/or Nev. Rev. Stat. § 108.540, and after BORENSTEIN was separated from Mana, he did not receive an opportunity to be heard, including, but not limited to fair consideration of his request for a reasonable accommodation of his disabilities and/or for a practice modification, as required under the ADA and State Discrimination Statutes, as well as the fundamental due process afforded and incorporated by the Fourteenth Amendment to the Constitution of the United States.

152.    Nor was BORENSTEIN provided with any post-deprivation remedy *after* the confiscation of Mana, namely a notice requirement informing him of his right to challenge the government's conduct in divesting him of his ownership right to Mana.

153.    CCAC, acting under its police powers and vested with authority under color of law, is responsible for the illegal actions and damages inflicted upon BORENSTEIN through its officers, directors, managers, supervisors, agents, employees and/or government contractors, including LT. ZAVALA and those of TAF, who failed to provide BORENSTEIN with *pre*-deprivation remedies, prior to taking ownership of Mana, and/or *post*-deprivation remedies thereafter, thus violating BORENSTEIN's fundamental due process rights.

154.    TAF, as publicly paid contractor and agent of CCAC, took actions of a governmental nature under the police powers of CCAC that are totally intertwined with government action and vested with government authority under color of law and, as such, is responsible for the illegal actions and damages inflicted upon BORENSTEIN, through its officers, directors, managers, supervisors, agents, and/or employees, including COO SCHOLTEN, who failed to provide BORENSTEIN with *pre*-deprivation remedies, prior to taking ownership of Mana, and/or *post*-deprivation remedies thereafter, thus violating BORENSTEIN's fundamental due process rights.

155.    BORENSTEIN has a liberty interest in being able to adopt an animal to train to be his service animal and/or his emotional support animal, as prescribed by his doctor.

156.    The fundamental due process afforded and incorporated by the Fourteenth Amendment to the Constitution of the United States requires that BORENSTEIN not be denied the right to adopt an

The Palmer Law Firm P.C.
5550 Painted Mirage Road, Suite 320
Las Vegas, Nevada 89149
Phone (702) 952-9533

animal based on a stigmatization that he is unfit to adopt an animal *before* receiving proper notice and an opportunity to challenge the determination, which BORENSTEIN was denied.

157.   *After* TAF placed the warning in the electronic database accessible to animal adoption facilities stating or implying that BORENSTEIN was unfit to adopt an animal, BORENSTEIN was denied the fundamental due process afforded and incorporated by the Fourteenth Amendment to the Constitution of the United States when he was not provided with any *post*-deprivation remedy to challenge such stigmatization.

158.   CCAC, acting under its police powers and vested with authority under color of law, is responsible for the illegal actions and damages inflicted upon BORENSTEIN through its officers, directors, managers, supervisors, agents, employees and/or government contractors, including those of TAF, who failed to provide BORENSTEIN with *pre*-deprivation remedies, prior to entering a warning in the database not to adopt an animal to BORENSTEIN, and/or failed to provide BORENSTEIN with *post*-deprivation remedies thereafter, thus violating BORENSTEIN's fundamental due process rights.

159.   TAF, as publicly paid contractor and agent of CCAC, took actions of a governmental nature under the police powers of CCAC that are totally intertwined with government action and vested with government authority under color of law and, as such, is responsible for the illegal actions and damages inflicted upon BORENSTEIN, through its officers, directors, managers, supervisors, agents, and/or employees, including COO SCHOLTEN, who failed to provide BORENSTEIN with *pre*-deprivation remedies, prior to entering the warning in the database, and/or failed to provide BORENSTEIN with *post*-deprivation remedies thereafter, thus violating BORENSTEIN's fundamental due process rights.

160.   At all times relevant hereto, LT. ZAVALA and COO SCHOLTEN, acting in their individual and official capacities under color of law, were personally involved, as alleged herein, and acted intentionally and/or with callous and reckless disregard for BORENSTEIN's fundamental due process rights.

161.   In addition to LT. ZAVALA's and COO SCHOLTEN's direct personal actions adversely affecting BORENSTEIN's fundamental due process rights, LT. ZAVALA and COO SCHOLTEN directed or knew of the actions and omissions by their respective subordinates, relative to

The Palmer Law Firm P.C.
5550 Painted Mirage Road, Suite 320
Las Vegas, Nevada 89149
Phone (702) 952-9533

this cause of action, and facilitated, approved, condoned, and/or turned a blind eye toward them.

162.    Defendants should be enjoined from any contemplated action whereby an animal is taken from a hospitalized individual for subsequent adoption to a third party without a meaningful *pre*-deprivation remedy before the adoption occurs, and Defendants should be mandated to ensure that owners are notified of any *post*-deprivation remedies available to them.

163.    As a direct and proximate result of the intentional, malicious, willful, deliberately indifferent, oppressive, and/or reckless conduct of Defendants, and each of them, for this cause of action, BORENSTEIN sustained injury, harm, suffering, mental anguish, and damages, entitling him to compensatory damages, punitive damages, and prospective injunctive and declaratory relief, as allowed by law, according to proof at trial.

164.    As a further, direct and proximate result of the intentional, malicious, willful, deliberately indifferent, oppressive, and/or reckless conduct of Defendants, and each of them, for this cause of action, BORENSTEIN has had to retain the services of attorneys in this matter, for which he seeks attorneys' fees and costs, including under 42 U.S.C. §§ 1983 and 1988 *et seq*.

### VIII.

### FOURTH CAUSE OF ACTION

### 42 U.S.C. § 1983 Violation of BORENSTEIN's Fourth Amendment Rights

### -*UNREASONABLE SEIZURE*-

### (Asserted against TAF, CCAC, COO SCHOLTEN, and LT. ZAVALA)

165.    BORENSTEIN incorporates by reference all prior allegations of this *FAC*, as though fully set forth herein.

166.    BORENSTEIN has a possessory interest in Mana.

167.    CCAC, through its officers, directors, managers, supervisors, agents, and/or employees and those of its contractor, TAF, acting under its police powers and vested with authority under color of law, is responsible for the violation of BORENSTEIN's federal rights, by unreasonably infringing on his possessory interests protected by the Fourth Amendment's prohibition on unreasonable seizures, through the lawful possession of Mana for safekeeping while BORENSTEIN was hospitalized and then by unlawfully converting that temporary, authorized deprivation of BORENSTEIN's possessory

The Palmer Law Firm P.C.
5550 Painted Mirage Road, Suite 320
Las Vegas, Nevada 89149
Phone (702) 952-9533

interests into a permanent, unlawful deprivation, through the adoption of Mana to ROE BUSINESS ENTITIES 1-5 and/or DOE INDIVIDUALS 1-5 without BORENSTEIN's consent or other lawful authority.

168.   TAF, as a publicly paid contractor and agent of CCAC, including through TAF's officers, directors, managers, supervisors, agents, and/or employees, took actions of a governmental nature under the police powers of CCAC that are totally intertwined with government action and vested with government authority under color of law and, as such, is responsible for the violation of BORENSTEIN's federal rights, by unreasonably infringing on his possessory interests protected by the Fourth Amendment's prohibition on unreasonable seizures, through the lawful possession of Mana for safekeeping while BORENSTEIN was hospitalized and then by unlawfully converting that temporary, authorized deprivation of BORENSTEIN's possessory interests into a permanent, unlawful deprivation, and then adopting Mana to ROE BUSINESS ENTITIES 1-5 and/or DOE INDIVIDUALS 1-5, without BORENSTEIN's consent or other lawful authority.

169.   Such taking of Mana did not implicate any important governmental interest to justify the seizure.

170.   At all times relevant hereto, LT. ZAVALA and COO SCHOLTEN, acting in their individual and official capacities under color of law, were personally involved, as alleged herein, and acted intentionally and/or with callous and reckless disregard for BORENSTEIN's right to be free from such unreasonable seizures.

171.   In addition to LT. ZAVALA's and COO SCHOLTEN's direct personal actions adversely affecting BORENSTEIN's fourth amendment right, LT. ZAVALA and COO SCHOLTEN directed or knew of the actions and omissions by their respective subordinates, relative to this cause of action, and facilitated, approved, condoned, and/or turned a blind eye toward them.

172.   Defendants should be enjoined from any contemplated actions where, by decree or arbitrary action, hospitalized persons would be subject to such a flagrant seizure of their lawfully owned animals for subsequent adoption.

173.   As a direct and proximate result of the intentional, malicious, willful, deliberately indifferent, oppressive, and/or reckless conduct of Defendants, and each of them, for this cause of

The Palmer Law Firm P.C.
5550 Painted Mirage Road, Suite 320
Las Vegas, Nevada 89149
Phone (702) 952-9533

action, BORENSTEIN sustained injury, harm, suffering, mental anguish, and damages, entitling him to compensatory damages, punitive damages, and prospective injunctive and declaratory relief, as allowed by law, according to proof at trial.

174.    As a further, direct and proximate result of the intentional, malicious, willful, deliberately indifferent, oppressive, and/or reckless conduct of Defendants, and each of them, for this cause of action, BORENSTEIN has had to retain the services of attorneys in this matter, for which he seeks attorneys' fees and costs, including under 42 U.S.C. §§ 1983 and 1988 *et seq*.

## IX.

## FIFTH CAUSE OF ACTION

**42 U.S.C. § 1983 Violation of BORENSTEIN's Fourteenth Amendment Rights**

***-PRIVATE TAKING WITHOUT COMPENSATION -***

**(Asserted against CCAC and TAF for declaratory and injunctive relief)**

175.    BORENSTEIN incorporates by reference all prior allegations of this *FAC*, as though fully set forth herein.

176.    BORENSTEIN has a property interest in his ownership of Mana.

177.    CCAC, by and through its officers, directors, managers, supervisors, agents, employees and/or government contractors, acting under its police powers and vested with authority under color of law, is responsible for the violation of BORENSTEIN's federal rights, by taking Mana for public use without just compensation to BORENSTEIN in violation of the Fourteenth Amendment to the United States Constitution.

178.    TAF, as contractor and agent of CCAC, through its officers, directors, managers, supervisors, agents, and/or employees, took actions of a governmental nature under the police powers of CCAC that are totally intertwined with government action and vested with government authority under color of law and, as such, is responsible for the violation of BORENSTEIN's federal rights, by taking Mana for public use without just compensation to BORENSTEIN in violation of the Fourteenth Amendment to the United States Constitution.

179.    BORENSTEIN seeks a declaratory judgment finding such taking illegal, so as to prevent the repetition of such policies and practices in the future.

The Palmer Law Firm P.C.
5550 Painted Mirage Road, Suite 320
Las Vegas, Nevada 89149
Phone (702) 952-9533

180.    BORENSTEIN seeks an injunction for the return of Mana.

181.    BORENSTEIN has had to retain the services of attorneys in this matter, for which he seeks attorneys' fees and costs, including under 42 U.S.C. §§ 1983 and 1988 *et seq*.

**X.**

**SIXTH CAUSE OF ACTION**

**42 U.S.C. § 1983 Violation of BORENSTEIN's First Amendment Rights**

***-UNLAWFUL RETALIATION-***

**(Asserted against TAF and COO SCHOLTEN)**

182.    BORENSTEIN incorporates by reference all prior allegations of this *FAC*, as though fully set forth herein.

183.    After TAF allowed ROE BUSINESS ENTITIES 1-5 and/or DOE INDIVIDUALS 1-5 to adopt Mana, BORENSTEIN engaged in speech and activity that was critical of Defendants, including TAF and COO SCHOLTEN, who became aware of such speech and activity.

184.    That speech and activity was protected by the First Amendment to the United States Constitution because it addressed matters of political, social, or other concern to the community, including matters about inadequate oversight, misconduct, and violations of law infringing on the rights of a disabled person by a municipal agency and its government contractor, acting under color of law.

185.    BORENSTEIN's protected speech and activity occurred in his capacity as a private citizen.

186.    In response to BORENSTEIN's protected speech and activity, TAF, as contractor and agent of CCAC, including through COO SCHOLTEN and/or another of its officers, directors, managers, supervisors, agents, and/or employees, took adverse actions of a governmental nature under the police powers of CCAC that are totally intertwined with government action and vested with government authority under color of law against BORENSTEIN, by preventing him from adopting an animal from TAF and/or from effectively adopting an animal from another Clark County, Nevada shelter and/or rescue organization, in violation of his First Amendment rights.

187.    BORENSTEIN's protected speech and activity was a substantial or motivating factor in the adverse action taken against him, as alleged herein.

The Palmer Law Firm P.C.
5550 Painted Mirage Road, Suite 320
Las Vegas, Nevada 89149
Phone (702) 952-9533

188.   As a direct and proximate result of the intentional, malicious, willful, deliberately indifferent, oppressive, and/or reckless conduct of Defendants, and each of them, for this cause of action, BORENSTEIN sustained injury, harm, suffering, mental anguish, and damages, entitling him to compensatory damages, punitive damages, and prospective injunctive and declaratory relief, as allowed by law, according to proof at trial.

189.   As a further, direct and proximate result of the intentional, malicious, willful, deliberately indifferent, oppressive, and/or reckless conduct of Defendants, and each of them, for this cause of action, BORENSTEIN has had to retain the services of attorneys in this matter, for which he seeks attorneys' fees and costs, including under 42 U.S.C. §§ 1983 and 1988 *et seq*.

## XI.

## SEVENTH CAUSE OF ACTION

**42 U.S.C. § 12132 *et seq*. Violation of the Americans with Disabilities Act and Amendments Act; 29 U.S.C. § 794 Violation of Section 504 of the Rehabilitation Act of 1973, as amended**

### *-UNLAWFUL DISCRIMINATION BASED ON BORENSTEIN'S DISABILITIES-*

### (Asserted against CCAC)

190.   BORENSTEIN incorporates by reference all prior allegations of this *FAC*, as though fully set forth herein.

191.   CCAC is a public agency of a local government and a political subdivision of the state of Nevada subject to Title II of the ADA, as defined in 42 U.S.C. § 12131(1)(B).

192.   Upon information and belief, CCAC is subject to section 504 of the Rehabilitation Act, having received federal financial assistance that it uses to support the activities and services provided by TAF to CCAC, pursuant to a governmental contract between CCAC and TAF.

193.   TAF is subject to Title III of the ADA, as its operations affect commerce as a service establishment or social service establishment and is a public accommodation, as defined in 42 U.S.C. § 12181(7)(F) and/or (K).

194.   At all times relevant hereto, CCAC is required to ensure compliance with its obligations under Title II of the ADA, including those obligations arising from the contracted services provided by TAF, as an instrumentality of CCAC, pursuant to 42 U.S.C. § 12131(1)(A)-(B) and § 12132 and as

The Palmer Law Firm P.C.
5550 Painted Mirage Road, Suite 320
Las Vegas, Nevada 89149
Phone (702) 952-9533

codified at 28 C.F.R. § 35.130(b)(1).

195.   Under the ADA's anti-discrimination provision, codified at 42 U.S.C. § 12132, "[n]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

196.   CCAC, through its officers, directors, managers, supervisors, agents, and/or employees, including LT. ZAVALA, and through its contractor and agent, TAF, which provided shelter services for CCAC, through its officers, directors, managers, supervisors, agents, and/or employees, including COO SCHOLTEN, discriminated against BORENSTEIN on the basis of his disabilities, as follows:

A. When, by placing an insufficient hold on Mana, CCAC failed to ensure that BORENSTEIN's permanent possession of Mana was protected, thereby preventing BORENSTEIN from reclaiming Mana at the end of BORENSTEIN's hospitalization;

B. When CCAC failed to ensure that BORENSTEIN received actual notice regarding Mana's boarding and TAF's intentions to place Mana for adoption before BORENSTEIN could reclaim him;

C. When CCAC failed to consider and ensure that TAF considered BORENSTEIN's requests for a reasonable accommodation for additional time to hold Mana so that BORENSTEIN could reclaim him, after BORENSTEIN got out of the hospital;

D. When CCAC failed to ensure that Mana was safeguarded until BORENSTEIN received notice and an opportunity to be heard;

E. When CCAC failed to act upon learning that TAF purportedly called several Las Vegas hospitals in a pretextual effort to document attempts at reaching BORENSTEIN, even though BORENSTEIN was not in Las Vegas and did not have access to a telephone, and CCAC knew that BORENSTEIN was not in Las Vegas;

F. When CCAC failed to act upon learning that TAF failed to return Mana to BORENSTEIN, despite that BORENSTEIN had identified Mana as his service animal;

G. When CCAC failed to act upon learning TAF told BORENSTEIN that TAF would euthanize Mana before allowing BORENSTEIN to have possession of him;

The Palmer Law Firm P.C.
5550 Painted Mirage Road, Suite 320
Las Vegas, Nevada 89149
Phone (702) 952-9533

1

2

3

H.  When CCAC failed to act upon learning TAF failed to make any effort to contact ROE BUSINESS ENTITIES 1-5 and/or DOE INDIVIDUALS 1-5 to inquire whether they would surrender ownership of Mana voluntarily;

4

5

6

7

I.  When CCAC failed to act to mitigate BORENSTEIN's injuries, upon learning TAF failed to advise ROE BUSINESS ENTITIES 1-5 and/or DOE INDIVIDUALS 1-5 of the converted adoption and/or otherwise failed to take action to ensure Mana was returned;

8

9

10

J.  When CCAC abdicated their responsibility and authority to TAF to comply with the ADA and Rehabilitation Act, the State Discrimination Statutes, the Vulnerable Persons Statute, and other legal authorities; and

11

12

13

14

K.  When CCAC failed to correct the retaliatory electronic record that prevents BORENSTEIN from adopting another animal from a shelter or rescue organization or to otherwise ensure that BORENSTEIN is not subjected to further discrimination on the basis of his disabilities.

15

16

17

18

19

197.  As a result of this discrimination, BORENSTEIN was excluded from participating in the community animal shelter services while he was hospitalized without losing ownership of Mana; was prevented from obtaining a reasonable accommodation to hold Mana for a sufficient period of time while he was hospitalized; and was denied the benefits ordinarily provided to animal owners to recover Mana following a temporary hold.

20

21

198.  BORENSTEIN seeks a declaration that CCAC violated his rights under the ADA and Rehabilitation Act and that he is the rightful owner of Mana.

22

23

24

25

26

27

28

199.  BORENSTEIN seeks a permanent injunction requiring CCAC to comply with the ADA and Rehabilitation Act in the future, including by ensuring that its officers place a sufficient hold on a hospitalized persons' animal to enable their owners to reclaim their animals after the owners are discharged and by notifying its contracted animal shelter to hold the animal accordingly; by exercising sufficient oversight over its contracted shelter to ensure the shelter's compliance under the ADA and Rehabilitation Act; by ensuring that its contracted shelter engages in the interactive process when a reasonable accommodation is requested by a disabled person; by ensuring that, if an adoption is

The Palmer Law Firm P.C.
5550 Painted Mirage Road, Suite 320
Las Vegas, Nevada 89149
Phone (702) 952-9533

The Palmer Law Firm P.C.
5550 Painted Mirage Road, Suite 320
Las Vegas, Nevada 89149
Phone (702) 952-9533

completed in violation of the ADA, the adoptive party is notified of the error, and the contracted shelter makes reasonable efforts to reclaim the animal; and by taking effective efforts to ensure that Mana is returned to BORENSTEIN.

200.     As a direct and proximate result of the unlawful, intentional discrimination, for this cause of action, BORENSTEIN sustained injury, harm, suffering, mental anguish, and damages, entitling him to compensatory damages and any other appropriate equitable relief, as allowed by law, according to proof at trial.

201.     As a further, direct and proximate result of the unlawful, intentional discrimination, for this cause of action, BORENSTEIN has had to retain the services of attorneys in this matter, for which he seeks attorneys' fees and costs, including under 42 U.S.C. §§ 1983 and 1988 *et seq*.

## XII.

## EIGHTH CAUSE OF ACTION

**42 U.S.C. § 12182 *et seq*. Violation of the Americans with Disabilities Act and Amendments Act**

***-UNLAWFUL DISCRIMINATION BASED ON BORENSTEIN'S DISABILITIES-***

**(Asserted against SUNRISE HOSPITAL and TAF)**

202.     BORENSTEIN incorporates by reference all prior allegations of this *FAC*, as though fully set forth herein.

203.     SUNRISE HOSPITAL is subject to Title III of the ADA, as its operations affect commerce as a hospital and is a public accommodation, as defined in 42 U.S.C. § 12181(7)(F).

204.     TAF is subject to Title III of the ADA, as its operations affect commerce as a service establishment or social service establishment and is a public accommodation, as defined in 42 U.S.C. § 12181(7)(F) and/or (K).

205.     Under the ADA's anti-discrimination provision, codified at 42 U.S.C. § 12182(a), "[n]o individual shall be discriminated against on the basis of disability, in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."

206.     Before BORENSTEIN was sedated on May 12, 2019, BORENSTEIN informed

SUNRISE HOSPITAL, directly or indirectly, through its officers, directors, managers, supervisors, agents, and/or employees, including NURSE PASTERNAK, that his service animal was in his car and that he could not make arrangements for a family or friend to provide for Mana's care.

207.    In response, SUNRISE HOSPITAL assumed the duty of finding a provider to board Mana while their patient, BORENSTEIN, was hospitalized, as permitted in the recommendations regarding service animals, published by the United States Department of Justice.

208.    This duty of finding a provider to board Mana was part of SUNRISE HOSPITAL's care of patient BORENSTEIN, who was incapacitated after having been sedated, and SUNRISE HOSPITAL assumed this duty through a voluntary or involuntary bailment of valuable property.

209.    In the exercise of their duty of patient care, SUNRISE HOSPITAL failed to exercise a reasonable duty of care, *before* deciding to place and entrust Mana to CCAC for subsequent boarding at TAF's Lied Animal Shelter, without ensuring that Mana would be safeguarded for a period of time sufficient to enable BORENSTEIN to recover possession of Mana, once BORENSTEIN was discharged from hospital care and/or that BORENSTEIN was safeguarded against risk of abuse from theft and/or misappropriation of Mana.

210.    In the exercise of their duty of patient care, SUNRISE HOSPITAL failed to exercise a reasonable duty of care, *after* placing and entrusting Mana to CCAC, including after BORENSTEIN was transferred to another hospital, by communicating with CCAC and/or TAF, to ensure that Mana was safeguarded for a period of time sufficient to enable BORENSTEIN to recover possession of Mana, once BORENSTEIN was discharged from hospital care and/or that BORENSTEIN was safeguarded against risk of abuse from theft and/or misappropriation of Mana.

211.    As a result of these failures, SUNRISE HOSPITAL, through its officers, directors, managers, supervisors, agents, and/or employees, including NURSE PASTERNAK, discriminated against their patient, BORENSTEIN, on the basis of his disabilities, by failing to provide him with a reasonable accommodation for the sufficient hold of Mana, knowing that their patient was incapacitated, was in extremis, and was unable to act for himself.

212.     As a further result of this failure, BORENSTEIN was denied the full and equal enjoyment of the goods, services, facilities, privileges, and advantages provided to other patients at

The Palmer Law Firm P.C.
5550 Painted Mirage Road, Suite 320
Las Vegas, Nevada 89149
Phone (702) 952-9533

SUNRISE HOSPITAL.

213.    TAF, through its officers, directors, managers, supervisors, agents, and/or employees, including COO SCHOLTEN, discriminated against BORENSTEIN on the basis of his disabilities, including as follows:

A.  When TAF failed to ensure that BORENSTEIN received actual notice regarding Mana's boarding and TAF's intentions to place Mana for adoption before BORENSTEIN could reclaim him;

B.  When TAF failed to consider BORENSTEIN's requests for a reasonable accommodation for additional time to hold Mana so that BORENSTEIN could reclaim him, after he got out of the hospital;

C.  When TAF failed to ensure that Mana was safeguarded until BORENSTEIN received notice and an opportunity to be heard;

D.  When TAF purportedly called several Las Vegas hospitals in a pretextual effort to document attempts to reach BORENSTEIN, even though TAF knew that BORENSTEIN was not in Las Vegas, that he did not have access to a telephone, and that such attempts were inadequate to constitute actual or constructive notice;

E.  When TAF failed to return Mana to BORENSTEIN, including when he identified Mana as his service animal to TAF;

F.  When TAF told BORENSTEIN that TAF would euthanize Mana before allowing BORENSTEIN to have possession of him, because, in its non-medical opinion, BORENSTEIN was too sick to care for Mana;

G.  When TAF failed to make any effort to contact ROE BUSINESS ENTITIES 1-5 and/or DOE INDIVIDUALS 1-5 to inquire whether they would surrender ownership of Mana voluntarily;

H.  When TAF failed to mitigate the injuries to BORENSTEIN by not informing ROE BUSINESS ENTITIES 1-5 and/or DOE INDIVIDUALS 1-5 of the converted adoption and/or otherwise failed to take action to reclaim Mana; and

I.  When TAF failed to correct the retaliatory electronic record that prevents

The Palmer Law Firm P.C.
5550 Painted Mirage Road, Suite 320
Las Vegas, Nevada 89149
Phone (702) 952-9533

The Palmer Law Firm P.C.
5550 Painted Mirage Road, Suite 320
Las Vegas, Nevada 89149
Phone (702) 952-9533

BORENSTEIN from adopting another animal from a shelter or rescue organization or to otherwise ensure that BORENSTEIN is not subjected to further discrimination on the basis of his disabilities.

214. As a result of the discrimination, BORENSTEIN was excluded from participating in community animal shelter services while he was hospitalized without losing ownership of Mana; was prevented from obtaining a reasonable accommodation to hold Mana for a sufficient period of time while he was hospitalized; and was denied the benefits ordinarily provided to animal owners to recover Mana following a temporary hold, including temporary fostering by the KEPPT program.

215. BORENSTEIN seeks a declaration that SUNRISE HOSPITAL violated his rights under the ADA.

216. BORENSTEIN seeks a permanent injunction requiring SUNRISE HOSPITAL to comply with the ADA in the future, by ensuring that if he and/or similarly-situated disabled individuals are unable to care for their animals, SUNRISE HOSPITAL must exercise a reasonable duty of care to ensure that such animals are adequately boarded and safeguarded so as not to become converted property while the animal's owner is hospitalized.

217. BORENSTEIN seeks a declaration that TAF violated his rights under the ADA and that he is the rightful owner of Mana.

218. BORENSTEIN seeks a permanent injunction requiring TAF to comply with the ADA in the future, including by ensuring that hospitalized persons receive actual notice regarding their animals held at Lied Animal Shelter; that hospitalized persons' animals are held for a reasonable period of time to enable their owners to reclaim them when the owners are incapacitated; that TAF is required to engage in the interactive process when a reasonable accommodation is requested by such persons; that, if a converted adoption is completed in violation of the ADA, TAF notifies the adoptive part(ies) of the error and liability and takes reasonable efforts to reclaim the animal; and that Mana is returned to BORENSTEIN.

219. As a direct and proximate result of the unlawful, intentional discrimination, for this cause of action, BORENSTEIN sustained injury, harm, suffering, mental anguish, and damages, entitling him to equitable relief, as allowed by law, according to proof at trial.

The Palmer Law Firm P.C.
5550 Painted Mirage Road, Suite 320
Las Vegas, Nevada 89149
Phone (702) 952-9533

220.    As a further, direct and proximate result of the unlawful, intentional discrimination, for this cause of action, BORENSTEIN has had to retain the services of attorneys in this matter, for which he seeks attorneys' fees and costs, including under 42 U.S.C. §§ 1983 and 1988 *et seq*.

## XIII.

## NINTH CAUSE OF ACTION

**42 U.S.C. § 12203 *et seq*. Violation of the Americans with Disabilities Act and Amendment Act**

***-UNLAWFUL DISCRIMINATION, HARASSMENT, AND RETALIATION***
***BASED ON BORENSTEIN'S DISABILITIES-***

**(Asserted against COO SCHOLTEN, in her individual capacity,**
**and, for prospective injunctive and declaratory relief, against CCAC and TAF**
**and COO SCHOLTEN, in her official capacity)**

221.    BORENSTEIN incorporates by reference all prior allegations of this *FAC*, as though fully set forth herein.

222.    Under the ADA's anti-retaliation provision, codified at 42 U.S.C. § 12203(a), "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter . . . ."

223.    Unlike other provisions of the ADA, this anti-retaliation provision extends liability for retaliation to any "person," which is defined in 42 U.S.C. § 12111(7) and 42 U.S.C. § 2000e(a) to "include one or more individuals."[1]

224.    Accordingly, this claim for unlawful retaliation may properly be maintained against, and is maintained against, CCAC, as a public agency of a local government and a political subdivision of the state of Nevada subject to the ADA that is required to ensure compliance with its obligations under the ADA, including those arising from the contracted services provided by TAF, for which services CCAC receives federal funding, and TAF, but also against COO SCHOLTEN, individually.

225.    At all relevant times herein, BORENSTEIN engaged in conduct amounting to "protected

---

[1]    See also *Minkley v. Eureka City Sch.*, No. 17-cv-3241-PJH, 2017 U.S. Dist. LEXIS 161338, at *16 (N.D. Cal. Sep. 29, 2017) (individuals, not merely businesses, can be sued under the anti-retaliation provisions of the ADA).

activity" under the anti-retaliation provisions of the ADA, including:

A. In June 2019, when BORENSTEIN contacted elected public officials, community leaders, and animal rights organizations, including the Humane Network, seeking assistance in having Mana returned to him;

B. On June 10, 2019, when BORENSTEIN filed the *Complaint* commencing this action; and

C. On June 20, 2019, when BORENSTEIN filed a motion for preliminary injunction in this matter, seeking the return of Mana.

226.    Thereafter, BORENSTEIN suffered adverse actions by CCAC, TAF, and COO SCHOLTEN, such as:

A. When TAF and COO SCHOLTEN refused to allow BORENSTEIN to adopt an animal from TAF; and

B. When, upon information and belief, TAF, through COO SCHOLTEN and/or another officer, manager, supervisor, agent, or employee, without justification, placed a warning in the electronic files accessible by CCAC, and other shelters and/or rescue organizations not to allow BORENSTEIN to adopt an animal from them.

227.    There is a causal link between BORENSTEIN's protected activity and these adverse actions that he suffered.

228.    TAF's actions through COO SCHOLTEN and/or another officer, manager, supervisor, agent, or employee in preventing BORENSTEIN from adopting another animal were done in retaliation for his participation in such protected activities relating to his disabilities, when these defendants subjected him to the aforementioned adverse actions.

229.    CCAC, TAF, and COO SCHOLTEN unlawfully discriminated against BORENSTEIN by retaliating against him, a disabled individual, as described herein, and violated the anti-retaliation provisions of the ADA, including as codified at 42 U.S.C. § 12203.

230.    As a direct and proximate result of the unlawful, intentional discrimination and retaliation alleged in this cause of action, BORENSTEIN sustained injury, harm, suffering, mental anguish, and damages, entitling him to compensatory damages,  punitive damages, and prospective

The Palmer Law Firm P.C.
5550 Painted Mirage Road, Suite 320
Las Vegas, Nevada 89149
Phone (702) 952-9533

injunctive and declaratory relief, as allowed by law, according to proof at trial.

231.   As a further, direct and proximate result of the unlawful, intentional discrimination and retaliation, alleged in this cause of action, BORENSTEIN has had to retain the services of attorneys in this matter, for which he seeks attorneys' fees and costs, including under 42 U.S.C. §§ 1983 and 1988 *et seq.*

## —STATE CLAIMS—

## XIV.

## TENTH CAUSE OF ACTION

**Nevada Revised Statute § 426.790 *et seq*. Violation of the Persons with Disabilities Chapter**

*-UNLAWFUL INTERFERENCE WITH THE USE OF A SERVICE ANIMAL -*

**(Asserted against CCAC, TAF, LT. ZAVALA, and COO SCHOLTEN)**

232.   BORENSTEIN incorporates by reference all prior allegations of this *FAC*, as though fully set forth herein.

233.   The state of Nevada has a public policy to protect the welfare, prosperity, health and peace of all the people of the State and to foster the right of all persons reasonably to seek and be granted services in places of public accommodation without discrimination, distinction, or restriction because of disability, pursuant to Nevada Revised Statute § 233.010(2).

234.   The state of Nevada enacted legislation that shall be liberally construed to effect the objects and purposes for persons with disabilities, including to relieve such persons from the stress of poverty and to encourage and assist them in their efforts to render themselves more self-supporting, pursuant to Nevada Revised Statutes § 426.010 and § 426.020.

235.   LT. ZAVALA and CCAC, through its officers, managers, supervisors, agents, and/or employees, including LT. ZAVALA, violated Nevada Revised Statutes § 426.790 when, without legal justification, they failed to ensure that the ownership of BORENSTEIN's service dog was not converted by its government contractor, TAF, thereby interfering with BORENSTEIN's use of Mana to assist him with his disabilities and obstructing or otherwise jeopardizing BORENSTEIN's safety.

236.   COO SCHOLTEN and TAF, through its officers, managers, supervisors, agents, and/or employees, including COO SCHOLTEN, violated Nevada Revised Statutes § 426.790 when, without

The Palmer Law Firm P.C.
5550 Painted Mirage Road, Suite 320
Las Vegas, Nevada 89149
Phone (702) 952-9533

legal justification, they converted the ownership of Mana to TAF and then adopted Mana to ROE BUSINESS ENTITIES 1-5 and/or DOE INDIVIDUALS 1-5, thereby interfering with BORENSTEIN's use of Mana to assist him with his disabilities and obstructing or otherwise jeopardizing BORENSTEIN's safety.

237.   Thereafter, CCAC, TAF, LT. ZAVALA, and COO SCHOLTEN failed to correct the unlawful adoption or otherwise failed to make any effort to restore the ownership of Mana to BORENSTEIN.

238.   As a direct and proximate result of the unlawful, intentional discrimination alleged in this cause of action, CCAC, TAF, LT. ZAVALA, and COO SCHOLTEN are civilly liable to BORENSTEIN for sustained injury, harm, suffering, mental anguish, and other compensatory damages, for treble punitive damages in an amount equal to or greater than $750.00 to be decided by a jury, and for prospective injunctive and declaratory relief, as allowed by Nevada Revised Statute § 426.820, according to proof at trial.

239.   As a further, direct and proximate result of the unlawful, intentional discrimination alleged in this cause of action, BORENSTEIN has had to retain the services of attorneys in this matter, for which he seeks reasonable attorneys' fees, as allowed by Nevada Revised Statute § 426.820, as determined by the Court.

## XV.

### ELEVENTH CAUSE OF ACTION

**Nevada Revised Statute § 651.070 *et seq*. Violation of the Public Accommodations Chapter**

*- UNLAWFUL DEPRIVATION OF, INTERFERENCE WITH, AND PUNISHMENT FOR EXERCISING RIGHTS AND PRIVILEGES-*

**(Asserted against TAF and COO SCHOLTEN)**

240.   BORENSTEIN incorporates by reference all prior allegations of this *FAC*, as though fully set forth herein.

241.   The state of Nevada has a public policy to protect the welfare, prosperity, health and peace of all the people of the State and to foster the right of all persons reasonably to seek and be granted services in places of public accommodation without discrimination, distinction, or restriction

The Palmer Law Firm P.C.
5550 Painted Mirage Road, Suite 320
Las Vegas, Nevada 89149
Phone (702) 952-9533

1    because of disability, pursuant to Nevada Revised Statute § 233.010(2).

2        242.    The state of Nevada enacted legislation to ensure that all persons are entitled to the full

3    and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of

4    any place of public accommodation, without discrimination or segregation on the ground of disability,

5    pursuant to Nevada Revised Statutes § 651.070.

6        243.    COO SCHOLTEN and TAF, through its officers, managers, supervisors, agents, and/or

7    employees, including COO SCHOLTEN, violated Nevada Revised Statutes § 651.090(1)(b) when they

8    intimidated, threatened, coerced, or attempted to intimidate, threaten, or coerce BORENSTEIN from

9    exercising his right to pursue recovery of Mana through litigation and/or by seeking assistance from

10   private and public officials, including by threatening to have Mana euthanized rather than returning him

11   to BORENSTEIN.

12       244.    COO SCHOLTEN and TAF, through its officers, managers, supervisors, agents, and/or

13   employees, including COO SCHOLTEN, violated Nevada Revised Statutes § 651.090(1)(c) when they

14   punished or attempted to punish BORENSTEIN for exercising his right to pursue recovery of Mana

15   through litigation and/or by seeking assistance from private and public officials, including by placing a

16   warning about BORENSTEIN in a database accessible to other shelters, law enforcement, and, upon

17   information and belief, rescue organizations, encouraging them not to adopt an animal to

18   BORENSTEIN.

19       245.    As a direct and proximate result of the unlawful, intentional and retaliatory

20   discrimination alleged in this cause of action, TAF and COO SCHOLTEN are civilly liable to

21   BORENSTEIN for sustained injury, harm, suffering, mental anguish, and other compensatory damages

22   and for prospective injunctive and declaratory relief, as allowed by Nevada Revised Statute §

23   651.090(2)(a), according to proof at trial.

24       246.    As a further, direct and proximate result of the unlawful, intentional and retaliatory

25   discrimination alleged in this cause of action, BORENSTEIN has had to retain the services of attorneys

26   in this matter, for which he seeks costs and reasonable attorneys' fees, as allowed by Nevada Revised

27   Statute § 651.090(2)(b).

28   ///

The Palmer Law Firm P.C.
5550 Painted Mirage Road, Suite 320
Las Vegas, Nevada 89149
Phone (702) 952-9533

The Palmer Law Firm P.C.
5550 Painted Mirage Road, Suite 320
Las Vegas, Nevada 89149
Phone (702) 952-9533

## XVI.

### TWELFTH CAUSE OF ACTION

### Negligence and/or Gross Negligence

### (Asserted against SUNRISE HOSPITAL, CCAC, TAF, NURSE PASTERNAK, LT. ZAVALA, and COO SCHOLTEN)

247.    BORENSTEIN incorporates by reference all prior allegations of this *FAC*, as though fully set forth herein.

248.    Defendants and each of them owed a legal duty to exercise reasonable care and ordinary prudence that a reasonably prudent hospital, shelter and government contractor, government entity, and/or professional or government actor, respectively, would exercise under the same circumstances, while performing any acts that could foreseeably harm BORENSTEIN, including when undertaking to safeguard and board Mana, while BORENSTEIN was hospitalized and unable to care for Mana himself.

249.    Defendants and each of them failed to exercise that reasonable care, breaching that legal duty owed to BORENSTEIN, as described herein, which breaches were the legal cause of BORENSTEIN's injuries, and BORENSTEIN suffered resulting damages, in an amount to be proven at trial.

250.    NURSE PASTERNAK and SUNRISE HOSPITAL, through its officers, managers, supervisors, agents, and/or employees, including NURSE PASTERNAK, breached their legal duties to arrange for Mana's board by negligently failing to exercise the degree of care that an ordinarily careful and reasonably prudent professional and hospital, respectively, would exercise, under the same or similar circumstances, including by ensuring that CCAC would hold Mana for a period of time sufficient to enable their patient, BORENSTEIN, to reclaim Mana, after BORENSTEIN was released from the hospital, and to have follow-up communications with CCAC and/or TAF to ensure that BORENSTEIN's property remained safeguarded, during the time in which BORENSTEIN was hospitalized.

251.    LT. ZAVALA and CCAC, through its officers, managers, supervisors, agents, and/or employees, including LT. ZAVALA, breached their legal duties by negligently failing to exercise the

degree of care that an ordinarily careful and reasonably prudent government actor and government entity, respectively, would exercise, under the same or similar circumstances, including by placing a hold on Mana for a period of time sufficient to enable BORENSTEIN to reclaim Mana, after BORENSTEIN was released from the hospital, and to have follow-up communications with TAF to ensure that BORENSTEIN's property remained safeguarded, during the time in which BORENSTEIN was hospitalized.

252.   COO SCHOLTEN and TAF, through its officers, managers, supervisors, agents, and/or employees, including COO SCHOLTEN, breached their legal duties by failing to exercise the degree of care that an ordinarily careful and reasonably prudent professional and shelter and government contractor, respectively, would exercise, under the same or similar circumstances, including by holding Mana for a period of time sufficient to enable BORENSTEIN to reclaim Mana, after BORENSTEIN was released from the hospital, and to have and/or heed communications with CCAC to ensure that BORENSTEIN's property remained safeguarded, during the time in which BORENSTEIN was hospitalized.

253.   When engaging in their culpable conduct described herein, Defendants, and each of them, were not only negligent, but they were grossly negligent, as they failed to exercise even the slightest amount of care, with a conscious disregard of the rights or safety of BORENSTEIN.

254.   When engaging in their culpable conduct described herein, the Defendants sued in this cause of action, and each of them, acted with malice, express or implied, in that Defendants engaged in despicable conduct by virtue of the egregious nature of their failures to safeguard Mana for BORENSTEIN, and these Defendants had a conscious disregard of the rights or safety of BORENSTEIN and of vulnerable persons similarly situated to BORENSTEIN.

255.   Defendants exhibited a conscious disregard of BORENSTEIN's rights or safety when they knew of the probable harmful consequences of their wrongful acts of neglecting to safeguard Mana while BORENSTEIN was hospitalized, which probable harmful consequences included the loss of property and actual physical and mental injuries suffered by BORENSTEIN, which Defendants recklessly, willfully, and/or deliberately failed to act to avoid.

256.   Accordingly, BORENSTEIN is entitled to recover punitive and exemplary damages, as

The Palmer Law Firm P.C.
5550 Painted Mirage Road, Suite 320
Las Vegas, Nevada 89149
Phone (702) 952-9533

allowed by law, in an amount to be determined at trial.

257.   As a further result of the culpable conduct by Defendants, as alleged in this cause of action, BORENSTEIN has had to retain the services of attorneys in this matter, for which he seeks costs and reasonable attorneys' fees.

### XVII.

### THIRTEENTH CAUSE OF ACTION

### Negligent Training, Supervision, and Retention

### (Asserted against SUNRISE HOSPITAL, CCAC, and TAF)

258.   BORENSTEIN incorporates by reference all prior allegations of this *FAC*, as though fully set forth herein.

259.   On information and belief, at all times relevant hereto, SUNRISE HOSPITAL, through its officers, managers, supervisors, agents, and/or employees, was responsible for training, supervising, and retaining employees, and each of them, including training and supervision pertaining to NURSE PASTERNAK for:

A.   complying with standards and protocols of SUNRISE HOSPITAL, including its policies and procedures for safeguarding assets, the ADA, the State Discrimination Statutes, the Vulnerable Persons Statute, and other requirements; and

B.   protecting and otherwise not violating a patient's legal rights, including those rights of BORENSTEIN described herein.

260.   On information and belief, at all times relevant hereto, SUNRISE HOSPITAL, through its officers, managers, supervisors, agents, and/or employees, and each of them, owed a general duty to use reasonable care in the training, supervision, and retention of such employees, including NURSE PASTERNAK, to make sure that the employees are fit for their positions and to prevent harm to third parties, including BORENSTEIN, by the employees' tortious or wrongful conduct, of the type alleged herein.

261.   On information and belief, at all times relevant hereto, SUNRISE HOSPITAL, through its officers, managers, supervisors, agents, and/or employees, and each of them, breached this duty of care when they placed and retained NURSE PASTERNAK in the position of communicating with

The Palmer Law Firm P.C.
5550 Painted Mirage Road, Suite 320
Las Vegas, Nevada 89149
Phone (702) 952-9533

CCAC and giving custody of Mana to CCAC, without properly training and supervising NURSE PASTERNAK, whom they knew or should have known would fail to safeguard property, including Mana, and, in the position in which she was placed and retained, NURSE PASTERNAK could harm someone, including BORENSTEIN, as alleged herein.

262.   On information and belief, SUNRISE HOSPITAL, through its officers, managers, supervisors, agents, and/or employees, and each of them, were negligent in the training, supervision, and retention of NURSE PASTERNAK, including training in the area of safeguarding valuable assets the ADA, the State Discrimination Statutes, the Vulnerable Persons Statute, and other requirements, which negligence caused the harm and injuries to BORENSTEIN, as alleged herein.

263.   On information and belief, at all times relevant hereto, CCAC, through its officers, managers, supervisors, agents, and/or employees, was responsible for training, supervising, and retaining employees, and each of them, including training and supervision pertaining to LT. ZAVALA, and its government contractor, TAF, for:

A.   complying with standards and protocols of CCAC, including its policies and procedures for impounding and holding animals, the county ordinances pertaining to animals, the ADA, the State Discrimination Statutes, the Vulnerable Persons Statute, and other requirements; and

B.   protecting and otherwise not violating an animal owner's legal rights, including his constitutional rights, and including those rights of BORENSTEIN described herein.

264.   On information and belief, at all times relevant hereto, CCAC, through its officers, managers, supervisors, agents, and/or employees, and each of them, owed a general duty to use reasonable care in the training, supervision, and retention of such employees, including LT. ZAVALA, to make sure that the employees are fit for their positions and to prevent harm to third parties, including BORENSTEIN, by the employees' tortious or wrongful conduct, of the type alleged herein.

265.   On information and belief, at all times relevant hereto, CCAC, through its officers, managers, supervisors, agents, and/or employees, and each of them, breached this duty of care when they placed and retained LT. ZAVALA and TAF in the position of communicating with one another and placed Mana in the custody of TAF, without properly training and supervising LT. ZAVALA and

The Palmer Law Firm P.C.
5550 Painted Mirage Road, Suite 320
Las Vegas, Nevada 89149
Phone (702) 952-9533

TAF, whom they knew or should have known would fail to safeguard property, including Mana, and, in the position in which LT. ZAVALA and TAF were placed and retained, CCAC knew they could harm someone, including BORENSTEIN, as alleged herein.

266.    On information and belief, CCAC, through its officers, managers, supervisors, agents, and/or employees, and each of them, were negligent in the training, supervision, and retention of LT. ZAVALA and in the oversight of TAF, including training in the area of safeguarding assets, constitutional rights, the ADA, the State Discrimination Statutes, the Vulnerable Persons Statute, and other requirements, which negligence caused the harm and injuries to BORENSTEIN, as alleged herein.

267.    On information and belief, at all times relevant hereto, TAF, through its officers, managers, supervisors, agents, and/or employees, was responsible for training, supervising, and retaining employees, and each of them, including training and supervision pertaining to COO SCHOLTEN for:

   A. complying with standards and protocols of CCAC and TAF, including those policies and procedures for impounding and holding animals, the county ordinances pertaining to animals, the ADA, the State Discrimination Statutes, the Vulnerable Persons Statute, and other requirements; and

   B. protecting and otherwise not violating an animal owner's legal rights, including his constitutional rights, and including those rights of BORENSTEIN described herein.

268.    On information and belief, at all times relevant hereto, TAF, through its officers, managers, supervisors, agents, and/or employees, and each of them, owed a general duty to use reasonable care in the training, supervision, and retention of such employees, including COO SCHOLTEN, to make sure that the employees are fit for their positions and to prevent harm to third parties, including BORENSTEIN, by the employees' tortious or wrongful conduct, of the type alleged herein.

269.    On information and belief, at all times relevant hereto, TAF, through its officers, managers, supervisors, agents, and/or employees, and each of them, breached this duty of care when they placed and retained COO SCHOLTEN in the position of communicating or supervising

The Palmer Law Firm P.C.
5550 Painted Mirage Road, Suite 320
Las Vegas, Nevada 89149
Phone (702) 952-9533

communications with CCAC regarding Mana's placement in the custody of TAF, without properly training and supervising COO SCHOLTEN, whom they knew or should have known, would fail to safeguard property, including Mana, and would retaliate against an animal's owner, and, in the position she was placed in and retained, COO SCHOLTEN could harm someone, including BORENSTEIN, as alleged herein.

270.    On information and belief, TAF, through its officers, managers, supervisors, agents, and/or employees, and each of them, were negligent in the training, supervision, and retention of COO SCHOLTEN, including training in the area of safeguarding assets, constitutional rights, the ADA, the State Discrimination Statutes, the Vulnerable Persons Statute, and other requirements, which negligence caused the harm and injuries to BORENSTEIN, as alleged herein.

271.    When engaging in their culpable conduct described herein, Defendants sued in this cause of action, and each of them, acted with malice, express or implied, in that Defendants engaged in despicable conduct by virtue of the egregious nature of their failures to properly train, supervise, and retain the individuals responsible for safeguarding Mana and by their failures to ensure that BORENSTEIN's rights were not violated, and these Defendants had a conscious disregard of the rights or safety of BORENSTEIN and of vulnerable persons similarly situated to BORENSTEIN.

272.    Defendants exhibited a conscious disregard of BORENSTEIN's rights or safety when they knew of the probable harmful consequences of their wrongful acts of neglecting to properly train, supervise, and retain the individuals responsible for safeguarding Mana while BORENSTEIN was hospitalized and failing to ensure that BORENSTEIN's rights were not violated, the probable harmful consequences of which included the loss of property and actual physical and mental injuries suffered by BORENSTEIN that Defendants recklessly, willfully, and/or deliberately failed to act to avoid.

273.    Accordingly, BORENSTEIN is entitled to recover punitive and exemplary damages, as allowed by law, in an amount to be determined at trial.

274.    As a further result of the culpable conduct by Defendants, as alleged in this cause of action, BORENSTEIN has had to retain the services of attorneys in this matter, for which he seeks costs and reasonable attorneys' fees.

///

The Palmer Law Firm P.C.
5550 Painted Mirage Road, Suite 320
Las Vegas, Nevada 89149
Phone (702) 952-9533

The Palmer Law Firm P.C.
5550 Painted Mirage Road, Suite 320
Las Vegas, Nevada 89149
Phone (702) 952-9533

## XVIII.

## FOURTEENTH CAUSE OF ACTION

### Nevada Revised Statute § 41.1395 - Unlawful Injury or Loss Suffered by a Vulnerable Person

### *- NEGLECT OR ABUSE OF A VULNERABLE PERSON-*

#### (Asserted against SUNRISE HOSPITAL, CCAC, TAF,
#### NURSE PASTERNAK, LT. ZAVALA, and COO SCHOLTEN)

275.    BORENSTEIN incorporates by reference all prior allegations of this *FAC*, as though fully set forth herein.

276.    BORENSTEIN is a vulnerable person, within the meaning of Nevada Revised Statute § 41.1395(e).

277.    Beginning on May 12, 2019, NURSE PASTERNAK and SUNRISE HOSPITAL, through its officers, managers, supervisors, agents, and/or employees, including NURSE PASTERNAK, assumed a legal responsibility and/or a contractual obligation to care for BORENSTEIN, as their patient, including through a voluntary or involuntary bailment, requiring them to arrange for board of BORENSTEIN's service animal when BORENSTEIN was sedated, for the duration when BORENSTEIN was hospitalized and unable to care for Mana himself.

278.    Beginning on May 12, 2019,  LT. ZAVALA and CCAC, through its officers, managers, supervisors, agents, and/or employees, including LT. ZAVALA, assumed a legal responsibility and/or a contractual obligation, including through a voluntary or involuntary bailment, to care for BORENSTEIN by taking possession of BORENSTEIN's service animal from NURSE PASTERNAK and/or SUNRISE HOSPITAL, while presently knowing that BORENSTEIN was then hospitalized and sedated and, thus, a vulnerable person.

279.    Beginning on May 12, 2019,  COO SCHOLTEN and TAF, through its officers, managers, supervisors, agents, and/or employees, including COO SCHOLTEN, assumed a legal responsibility and/or a contractual obligation, including through a voluntary or involuntary bailment, to care for BORENSTEIN by taking possession of BORENSTEIN's service animal from officers, managers, supervisors, agents, and/or employees of CCAC, while presently knowing that BORENSTEIN was then hospitalized and sedated and, thus, a vulnerable person.

280.     NURSE PASTERNAK and SUNRISE HOSPITAL breached their legal responsibilities and/or contractual obligations to arrange for Mana's board by failing to exercise the degree of care that an ordinarily careful and reasonably prudent professional and hospital, respectively, would exercise, under the same or similar circumstances, including by failing to ensure that CCAC would hold Mana for a period of time sufficient to enable BORENSTEIN to reclaim Mana, after BORENSTEIN was released from the hospital, and to have follow-up communications with CCAC and/or TAF to ensure that BORENSTEIN's property remained safeguarded, during the time in which BORENSTEIN was hospitalized.

281.     LT. ZAVALA and CCAC breached their legal responsibilities and/or contractual obligations by failing to exercise the degree of care that an ordinarily careful and reasonably prudent government actor and government entity, respectively, would exercise, under the same or similar circumstances, including by placing a hold on Mana for a period of time sufficient to enable BORENSTEIN to reclaim Mana, after BORENSTEIN was released from the hospital, and to have follow-up communications with TAF to ensure that BORENSTEIN's property remained safeguarded, during the time in which BORENSTEIN was hospitalized.

282.     COO SCHOLTEN and TAF breached their legal responsibilities and/or contractual obligations by failing to exercise the degree of care that an ordinarily careful and reasonably prudent professional and shelter and government contractor, respectively, would exercise, under the same or similar circumstances, including by holding Mana for a period of time sufficient to enable BORENSTEIN to reclaim Mana, after BORENSTEIN was released from the hospital, and to have and/or heed communications with CCAC to ensure that BORENSTEIN's property remained safeguarded, during the time in which BORENSTEIN was hospitalized.

283.     Furthermore, COO SCHOLTEN and TAF, through its officers, managers, supervisors, agents, and/or employees, including COO SCHOLTEN, acted abusively by first knowingly depriving BORENSTEIN from the use of his service animal when allowing ROE BUSINESS ENTITIES 1-5 and/or DOE INDIVIDUALS 1-5 to adopt Mana and then by inflicting pain, injury, or mental anguish on BORENSTEIN by refusing to correct or attempt to correct the unlawful, converted adoption; by telling BORENSTEIN that Mana would be euthanized before he would regain possession of Mana,

The Palmer Law Firm P.C.
5550 Painted Mirage Road, Suite 320
Las Vegas, Nevada 89149
Phone (702) 952-9533

because he was, in their non-medical opinion(s), "too sick" to own an animal; and by subsequently thwarting BORENSTEIN's ability to adopt another animal from TAF, the Henderson Animal Shelter, and/or other entities that house animals for adoption, by placing a warning about BORENSTEIN in a database accessible to multiple agencies.

284.   Protecting BORENSTEIN's service dog was a service necessary to maintaining BORENSTEIN's physical and/or mental health, as defined under the Vulnerable Persons Statute.

285.   As a direct and proximate result of the Defendants' breaches and/or abuses, as alleged in this cause of action, BORENSTEIN suffered personal injuries of neglect and/or abuse for which Defendants are liable for double his actual damages, as allowed by Nevada Revised Statute § 41.1395(1).

286.   As a further result of COO SCHOLTEN's and TAF's reckless, oppressive, or malicious conduct, as alleged in this cause of action, BORENSTEIN has had to retain the services of attorneys in this matter, for which he seeks mandatory attorneys' fees and costs, as allowed by Nevada Revised Statute §41.1395(2).

## XIX.
## FIFTEENTH CAUSE OF ACTION
### Unlawful Conversion
### (Asserted against TAF and COO SCHOLTEN)

287.   BORENSTEIN incorporates by reference all prior allegations of this *FAC*, as though fully set forth herein.

288.   COO SCHOLTEN and TAF, through its officers, managers, supervisors, agents, and/or employees, including COO SCHOLTEN, intentionally exerted wrongful dominion over BORENSTEIN's personal property, Mana, by making an unjustified claim of title to Mana for itself.

289.   Thereafter, COO SCHOLTEN and TAF, through its officers, managers, supervisors, agents, and/or employees, including COO SCHOLTEN, adopted Mana to ROE BUSINESS ENTITIES 1-5 and/or DOE INDIVIDUALS 1-5, without disclosing to them BORENSTEIN's actual ownership interest in Mana, thereby interfering with BORENSTEIN's rights of possession.

290.   As a direct and proximate result of the Defendants' intentional actions, as alleged in this

The Palmer Law Firm P.C.
5550 Painted Mirage Road, Suite 320
Las Vegas, Nevada 89149
Phone (702) 952-9533

The Palmer Law Firm P.C.
5550 Painted Mirage Road, Suite 320
Las Vegas, Nevada 89149
Phone (702) 952-9533

cause of action, TAF and COO SCHOLTEN are civilly liable to BORENSTEIN for sustained injury, harm, suffering, mental anguish, and other compensatory damages, according to proof at trial.

291.    When engaging in their culpable conduct described herein, TAF and/or COO SCHOLTEN, acted with malice, express or implied, in that they engaged in despicable conduct by virtue of the egregious nature of their conversion of Mana to TAF, and they had a conscious disregard of the rights or safety of BORENSTEIN.

292.    Accordingly, BORENSTEIN is entitled to recover punitive and exemplary damages, as allowed by law, in an amount to be determined at trial.

293.    As a further result of the culpable conduct by TAF and/or COO SCHOLTEN, as alleged in this cause of action, BORENSTEIN has had to retain the services of attorneys in this matter, for which he seeks costs and reasonable attorneys' fees.

## XX.

### SIXTEENTH CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

### (Asserted against CCAC, TAF, LT. ZAVALA, and COO SCHOLTEN)

294.    BORENSTEIN incorporates by reference all prior allegations of this *FAC*, as though fully set forth herein.

295.    CCAC and TAF, through its respective officers, managers, supervisors, agents, and/or employees, including LT. ZAVALA and COO SCHOLTEN, engaged in extreme and outrageous conduct, through the following acts and omissions:

A. Taking possession of Mana for boarding, knowing that BORENSTEIN was hospitalized, sedated, incapacitated, and disabled, and failing to place a hold sufficient to ensure that BORENSTEIN would be able to recover possession of Mana when BORENSTEIN was discharged from the hospital, especially when Mana was identified as a service animal before he was boarded;

B. Sending a pretextual email to BORENSTEIN, less than a day after his hospitalization, with instructions for reclaiming Mana, knowing that BORENSTEIN was recently incapacitated, was unlikely to receive the email, and was most likely unable to

act on it;

C. Sending a second pretextual email to BORENSTEIN a day later, while he was still hospitalized, with an incorrect identification number for Mana, knowing that BORENSTEIN was unlikely to receive or act upon that email either;

D. Placing information in the emails that Mana might be sent to adoption, to a rescue organization, or to be euthanized, if BORENSTEIN failed to contact TAF by May 22, 2019;

E. Providing a telephone number in the emails with a recorded message and an ability for the caller to leave a message, without regularly monitoring the messages and/or providing any appropriate follow-up, including when BORENSTEIN left time-sensitive messages regarding his request to hold Mana until he was out of the hospital and could reclaim Mana;

F. Providing information in the emails about the KEPPT program but failing to fulfill the stated promise of that program to help with barriers in finding a temporary placement for a sheltered animal as an alternative boarding arrangement;

G. Failing to act to ensure that Mana was continuously safeguarded upon receipt of BORENSTEIN's telephone call to CCAC on May 24, 2019, wherein BORENSTEIN advised that he had been transported to a hospital in California and would need a reasonable accommodation to hold Mana longer;

H. Deliberately ignoring and/or failing to act on an email from CCAC, through LT. ZAVALA, to TAF, through COO SCHOLTEN and/or another of TAF's officers, managers, supervisors, agents, and/or employees, relaying BORENSTEIN's request for accommodation;

I. Purportedly calling several Las Vegas hospitals in a pretextual effort to document additional efforts at reaching BORENSTEIN, knowing BORENSTEIN was not in Las Vegas and did not have access to a telephone;

J. Removing the hold placed on Mana less than a week after BORENSTEIN's telephone call, resulting in the conversion of Mana to TAF, and then making Mana

1    available for adoption the very next day, on May 31, 2019;

2        K.  Allowing ROE BUSINESS ENTITIES 1-5 and/or DOE INDIVIDUALS 1-5 to

3    adopt Mana on June 1, 2019, just thirteen minutes before BORENSTEIN left a message

4    with CCAC advising that he would then soon be released from the hospital to reclaim

5    Mana;

6        L.  Informing BORENSTEIN on June 2, 2019, that Mana had been adopted by a third

7    party;

8        M. Telling BORENSTEIN that TAF would euthanize Mana before allowing

9    BORENSTEIN to have possession of him, because they had made a discriminatory

10    medical assessment that BORENSTEIN was "too sick" to care for Mana;

11        N.  Failing to act to contact ROE BUSINESS ENTITIES 1-5 and/or DOE

12    INDIVIDUALS 1-5 to reclaim Mana for return to BORENSTEIN or to otherwise advise

13    them of the illegal converted adoption, including, after receiving documentation of a

14    court proceeding containing a written finding that Mana was BORENSTEIN's service

15    dog and, upon knowing that BORENSTEIN had been hospitalized after telling LT.

16    ZAVALA that he was going to kill himself;

17        O.  Failing to act to contact ROE BUSINESS ENTITIES 1-5 and/or DOE

18    INDIVIDUALS 1-5 to reclaim Mana for return to BORENSTEIN or to otherwise advise

19    them of the illegal converted adoption, including, after receiving communications from

20    the president of the Humane Network, inquiring about Mana;

21        P.  Refusing to allow BORENSTEIN to adopt another animal from TAF, after he

22    filed a federal lawsuit against CCAC and TAF;

23        Q.  Warning other animal shelters, including the Henderson Animal Shelter, animal

24    law enforcement agencies, and/or rescue organizations not to adopt an animal to

25    BORENSTEIN;

26        R.  Failing to respond to BORENSTEIN's public records request for information

27    about not permitting BORENSTEIN to adopt an animal; and

28        S.  Failing to ensure that BORENSTEIN was not subjected to additional ongoing

The Palmer Law Firm P.C.
5550 Painted Mirage Road, Suite 320
Las Vegas, Nevada 89149
Phone (702) 952-9533

discrimination.

296.   CCAC and TAF, through its respective officers, managers, supervisors, agents, and/or employees, including LT. ZAVALA and COO SCHOLTEN, intended to cause emotional distress to BORENSTEIN or they had a reckless disregard for the risk their actions posed for causing emotional distress to BORENSTEIN.

297.   BORENSTEIN suffered such extreme and severe emotional distress, which was caused by Defendants as alleged in this cause of action, including but not limited to:

A. Emotional distress resulting in multiple hospitalizations due to the lack of stability that Mana provided for BORENSTEIN;

B. Emotional distress from becoming the victim of violent crimes, following his possessory loss of Mana, who also provided protection to BORENSTEIN;

C. Emotional distress from worrying whether Mana will still be able to perform the service tasks that Mana was trained to perform for BORENSTEIN;

D. Emotional distress from not knowing whether Mana is safe and whether Mana is receiving good care, including recurrent invasive thoughts that Mana may not be alive, which causes BORENSTEIN great anxiety;

E. Emotional distress from worrying that Mana has developed bonds with ROE BUSINESS ENTITIES 1-5 and/or DOE INDIVIDUALS 1-5 that will impact Mana's bond to BORENSTEIN and Mana's ability to act as BORENSTEIN's service animal, after BORENSTEIN recovers possession of Mana;

F. Emotional distress from needing the assistance of a service animal but being afraid that any replacement animal will jeopardize his ability to recover possession of Mana and to subsequently care for both animals;

G. Emotional distress due to his apparent inability to adopt another shelter animal in Clark County, Nevada; and

H. Emotional distress from worrying that he could lose possession of Mana and/or another service animal when he is hospitalized again and is forced to rely on government entities, such as CCAC, and its contractors, such as TAF.

The Palmer Law Firm P.C.
5550 Painted Mirage Road, Suite 320
Las Vegas, Nevada 89149
Phone (702) 952-9533

298.    As a direct and proximate result of the intentional, malicious, willful, deliberately indifferent, oppressive, and reckless conduct of Defendants, and each of them, named in this cause of action, BORENSTEIN sustained injury, harm, suffering, mental anguish, and damages, entitling BORENSTEIN to compensatory and punitive damages, as allowed by law, according to proof at trial.

299.    As a further, direct and proximate result of the intentional, malicious, willful, deliberately indifferent, oppressive, and reckless conduct of Defendants, and each of them, for this cause of action, BORENSTEIN has had to retain the services of attorneys in this matter, for which he seeks costs and reasonable attorneys' fees.

## XXI.

### RESPONDEAT SUPERIOR LIABILITY[2]
### For the State Claims

### *--VICARIOUS LIABILITY FOR CONDUCT OF EMPLOYEES OCCURRING IN THE COURSE AND SCOPE OF EMPLOYMENT -*

### (Asserted against SUNRISE HOSPITAL, CCAC, and TAF)

300.    BORENSTEIN incorporates by reference all prior allegations of this *FAC*, as though fully set forth herein.

301.    At all times relevant hereto, the acts and omissions of the respective officers, managers, supervisors, agents, and/or employees of SUNRISE HOSPITAL, CCAC, and TAF, including NURSE PASTERNAK, LT. ZAVALA, and COO SCHOLTEN, respectively, and each of them, were under the control of SUNRISE HOSPITAL, CCAC, and TAF, accordingly, and their acts and omissions complained of herein occurred within the scopes of their employment.

302.    Based on the foregoing, BORENSTEIN is entitled to invoke the doctrine of *Respondeat Superior* to impose vicarious liability on SUNRISE HOSPITAL, CCAC, and TAF as the employers of

---

[2]    *Respondeat Superior* is not considered to be a "cause of action" but a method of assigning liability to an employer for the conduct of its employees.  Accordingly, this section for *Respondeat Superior* is not labeled as a cause of action, but it seeks to assign liability to SUNRISE HOSPITAL, CCAC, and TAF, vicariously, for the acts of its employees.

The Palmer Law Firm P.C.
5550 Painted Mirage Road, Suite 320
Las Vegas, Nevada 89149
Phone (702) 952-9533

NURSE PASTERNAK, LT. ZAVALA, and COO SCHOLTEN, respectively, for their culpable conduct that occurred within the course and scope of their employment, as alleged herein.

## XXII.

### CLAIM AND DELIVERY AND REPLEVIN[3]

**(Asserted against TAF, ROE BUSINESS ENTITIES 1-5; and DOE INDIVIDUALS 1-5)**

303.    BORENSTEIN incorporates by reference all prior allegations of this *FAC*, as though fully set forth herein.

304.    TAF, through its officers, managers, supervisors, agents, and/or employees, including COO SCHOLTEN, intentionally exerted wrongful dominion over BORENSTEIN's personal property, Mana, by making an unjustified claim of title to Mana for itself.

305.    BORENSTEIN was denied the benefits of ownership of Mana from the moment TAF purported to be Mana's owner and converted Mana's ownership to itself.

306.    Thereafter, TAF, through its officers, managers, supervisors, agents, and/or employees, including COO SCHOLTEN, adopted Mana to ROE BUSINESS ENTITIES 1-5 and/or DOE INDIVIDUALS 1-5, without disclosing BORENSTEIN's actual ownership interest in Mana, thereby interfering with BORENSTEIN's rights of possession.

307.    TAF, ROE BUSINESS ENTITIES 1-5, and/or DOE INDIVIDUALS 1-5, have enjoyed the benefit of ownership of Mana during the period BORENSTEIN has been denied ownership.

308.    Mana has not been returned to BORENSTEIN.

309.    BORENSTEIN seeks to recover possession of Mana from the businesses or individuals in possession of Mana, including ROE BUSINESS ENTITIES 1-5 and/or DOE INDIVIDUALS 1-5, pursuant to Nev. Rev. Stat. § 31.840 and/or § 17.120.

310.    BORENSTEIN further seeks damages from TAF for the wrongful detention of Mana,

---

[3]    *Claim and Delivery* and *Replevin* are not considered to be "causes of action" but rather are Nevada State forms of relief, which are also available under Federal Rule of Civil Procedure 64 at the commencement of and throughout this litigation.  Accordingly, this section for *Claim and Delivery* and *Replevin* are not labeled as causes of action but seek to ensure that the procedures requisite to obtaining relief are set forth in detail.

The Palmer Law Firm P.C.
5550 Painted Mirage Road, Suite 320
Las Vegas, Nevada 89149
Phone (702) 952-9533

during the time period beginning June 2, 2019, when BORENSTEIN sought Mana's return, through such time when Mana is returned to him.

311.   As a result of the culpable conduct by TAF, as alleged in this cause of action, BORENSTEIN has had to retain the services of attorneys in this matter, for which he seeks costs and reasonable attorneys' fees.

## XVI.

### PRAYER FOR RELIEF

WHEREFORE, BORENSTEIN prays for judgment against Defendants, as follows:

1.   For the issuance of an Order to show cause, pursuant to Nev. Rev. Stat. 31.853 and/or Fed. R. Civ. P. 64, why Mana should not be taken from ROE BUSINESS ENTITIES 1-5 and/or DOE INDIVIDUALS 1-5 and delivered to BORENSTEIN.  See **Exhibit 1** – *Declaration of Brian Borenstein, pursuant to Nev. Rev. Stat. § 31.850 and § 53.045.*

2.   For general damages in an amount in excess of $10,000.00;

3.   For special damages in an amount in excess of $10,000.00;

4.   For past and future compensatory damages, and other expenses, including any retraining of Mana, incurred by reason of intentional misconduct, acts, omissions, carelessness, recklessness, negligence, gross negligence, deliberate indifference, and/or other culpable conduct, described herein, in an amount in excess of $10,000.00;

5.   For punitive and exemplary damages;

6.   For attorneys' fees, costs, and pre- and post-judgment interest;

7.   For experts' fees, costs as allowed by law, in an amount in an amount to be determined at trial;

8.   For declaratory relief, in the form of declarations that:

A.   BORENSTEIN is the legal owner of Mana.

B.   Defendants or any of them, jointly or individually, were negligent, grossly negligent, reckless, willful, malicious, and/or deliberately indifferent, causing injury to BORENSTEIN, and, further, that Defendants or any of them, jointly or individually, acted with actual intent or in reckless disregard of causing injury to BORENSTEIN;

The Palmer Law Firm P.C.
5550 Painted Mirage Road, Suite 320
Las Vegas, Nevada 89149
Phone (702) 952-9533

9.      For injunctive relief, as follows:

A.      Mandating the return of Mana to BORENSTEIN;

B.      Prohibiting CCAC, TAF, and their respective officers, managers, supervisors, agents, and/or employees, including LT. ZAVALA and COO SCHOLTEN, and each of them, from arbitrarily and capriciously enforcing Clark County Title 10 Animal Ordinance, the ADA, and the State Discrimination and Vulnerable Persons Statutes;

C.      Prohibiting CCAC and TAF, by and through its officers, directors, managers, supervisors, agents, and/or employees, including LT. ZAVALA and COO SCHOLTEN, and each of them, from discriminatorily enforcing Clark County Title 10 Animal Ordinance, the ADA, and the State Discrimination and Vulnerable Persons Statutes, including by requiring them to make a genuine effort to locate and provide notification to all animals' owners about their sheltered animals' whereabouts and the follow-up actions required from all owners; by placing adequate holds on sheltered animals, including extended holds when the animals' owners are identifiable and known circumstances make it difficult for the owners to claim their animals in the prescribed time periods; by communicating with all animals' owners who are known or discoverable to them and communicating between each other to ensure that animals are not prematurely and permanently separated from their owners who desire to maintain possession of their animals; by placing certain animals whose owners are known or identifiable in the KEPPT program or exploring alternative options for the animals instead of prematurely adopting them out; by correcting and unwinding improper adoptions upon learning of them; and by not retaliating or preventing people from adopting other animals from TAF;

D.      Prohibiting action whereby an animal is taken from a hospitalized individual for subsequent adoption to a third party without a meaningful *pre*-deprivation remedy before the adoption occurs and notification of any *post*-deprivation remedies available to such person;

E.      Prohibiting the unreasonable seizure of an animal through the lawful possession

The Palmer Law Firm P.C.
5550 Painted Mirage Road, Suite 320
Las Vegas, Nevada 89149
Phone (702) 952-9533

of the animal for safekeeping while the animal's owner is hospitalized and then by unlawfully converting that temporary, authorized deprivation of the animal owner's possessory interest into a permanent, unlawful ownership interest;

F.      Prohibiting the unlawful taking of an animal for public use, including for the purpose of adoptions, without just compensation to the animal's owner;

G.      Mandating the removal of all adverse information and records reflecting, arising from, and relating to BORENSTEIN's ability to adopt an animal from TAF and/or from another shelter and/or rescue organization;

H.      Mandating SUNRISE HOSPITAL and its respective officers, managers, supervisors, agents, and/or employees, including NURSE PASTERNAK, exercise a reasonable duty of care when placing a disabled individual's service animal for boarding and by engaging in follow-up communications with the boarding facility to ensure that such property is adequately safeguarded during the time in which such individual is hospitalized as an extension of the patient care and oversight of valuable property;

I.      Mandating TAF and its respective officers, managers, supervisors, agents, and/or employees, including COO SCHOLTEN, engage in the interactive process when a reasonable accommodation is requested by a disabled person, and if an adoption is completed in violation of the ADA, to notify an adoptive party of the error and take reasonable efforts to reclaim the animal;

J.      Mandating SUNRISE HOSPITAL, CCAC, and TAF properly train and supervise its respective officers, managers, supervisors, agents, and/or employees, including NURSE PASTERNAK,  LT. ZAVALA,  and COO SCHOLTEN, regarding the rights and obligations of individuals under the United States Constitution, the ADA, the Vulnerable Persons Statute, and State Discrimination Statutes;

10.      For such other relief as the Court may deem just and proper; and

///

///

///

The Palmer Law Firm P.C.
5550 Painted Mirage Road, Suite 320
Las Vegas, Nevada 89149
Phone (702) 952-9533

11.     Pursuant to the *Federal Rules of Civil Procedure*, Rule 38, Plaintiff demands a trial by jury on all issues triable by right of a jury.

Dated this 6th day of May 2020.          THE PALMER LAW FIRM, P.C.

_____
RAELENE K. PALMER, Esq.
Nevada Bar No. 8602
5550 Painted Mirage Road, Suite 320
Las Vegas, Nevada 89149
(702) 952-9533
*Attorney for Plaintiff Brian Borenstein*

Dated this 6th day of May 2020.          s/ Robert S. Melcic
ROBERT S. MELCIC, Esq.
Nevada Bar No. 8602
4930 Mar Vista Way
Las Vegas, Nevada 89121
(702) 526-4235
*Attorney for Plaintiff Brian Borenstein*

*EXHIBIT TO PLAINTIFF'S FIRST AMENDED COMPLAINT*

| EXH NO. | EXHIBIT | NO. OF PAGES |
|---------|---------|--------------|
| 1 | **Declaration of Brian Borenstein** | 3 |

The Palmer Law Firm P.C.
5550 Painted Mirage Road, Suite 320
Las Vegas, Nevada 89149
Phone (702) 952-9533