# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

BRIAN BORENSTEIN,

    Plaintiff

v.

THE ANIMAL FOUNDATION, et al.,

    Defendants

Case No.: 2:19-cv-00985-APG-DJA

**Order (1) Granting in Part Defendant The Animal Foundation's Motion to Dismiss; (2) Granting Defendants Sunrise Hospital and Pasternak's Motion to Dismiss; (3) Granting in Part Defendants Clark County and Zavala's Motion to Dismiss; (4) Granting in Part Defendant Scholten's Motion to Dismiss; (5) Granting Defendants The Animal Foundation and Scholten's Motion for Leave to File Supplemental Brief**

[ECF Nos. 54, 66, 68, 89, 133]

Plaintiff Brian Borenstein adopted a purported service dog, Mana, from a shelter and trained the dog to assist him with tasks that are difficult due to his disabilities. While Borenstein was hospitalized after a heart attack, Borenstein informed the staff at Sunrise Hospital and Medical Center, LLC (Sunrise Hospital) that he had left Mana in his car and that he had no one to take care of the dog. The Sunrise Hospital staff called Clark County Animal Control (CCAC) to pick up Mana, and the officers placed Mana at a shelter run by The Animal Foundation (TAF) for a ten-day hold. Borenstein alleges that while he was still hospitalized, he contacted CCAC and TAF numerous times to ask for a hold extension for Mana but they were unresponsive. After roughly 18 days, TAF lifted the hold on Mana and he was adopted shortly thereafter. When Borenstein tried to claim Mana after leaving the hospital, he was told it was too late.

Borenstein filed this lawsuit and contacted various public and private officials in the community for assistance in reclaiming Mana. TAF then refused to adopt a new animal to

Borenstein.  Henderson Animal Shelter[1] also refused to adopt to Borenstein, telling him that TAF created an electronic warning telling other shelters in Clark County not to adopt to him.

Borenstein's First Amended Complaint (FAC) asserts claims against Clark County, CCAC Lieutenant Victor Zavala, TAF, and TAF Chief Operating Officer Carly Scholten for constitutional violations, retaliation, Americans with Disabilities Act (ADA) violations, unlawful interference with a service animal, negligence, and intentional infliction of emotional distress (IIED).  He also sues Sunrise Hospital and nurse Ulrike Pasternak for ADA violations and negligence.  The defendants filed four motions to dismiss, with TAF including a special motion to dismiss based on Nevada's anti-Strategic Lawsuit Against Public Participation (anti-SLAPP) statute.  TAF and Scholten also move for leave to file supplemental briefs.

I grant Sunrise Hospital and Pasternak's motion to dismiss.  I grant in part and deny in part Clark County and Zavala's motion to dismiss.  I grant TAF and Scholten's motion for supplemental briefs and I consider those arguments and the attached electronic warning in this order.  I grant in part and deny in part TAF's motion to dismiss and deny its anti-SLAPP special motion.  I grant in part and deny in part Scholten's motion to dismiss.

## I.   **BACKGROUND**[2]

Borenstein alleges he is disabled, with several psychological disorders and cardiovascular impairments. ECF No. 41 at 8.  He uses a self-trained service dog to assist him with his disabilities. *Id.*  On May 12, 2019, Borenstein felt symptoms consistent with a heart attack, so he

---

[1] Borenstein's FAC refers to Henderson Animal Care and Control Facility as the "Henderson Animal Shelter," but TAF sometimes refers to it as "Henderson Animal Control." ECF Nos. 41 at 19; 45 at 15.  The Henderson Animal Care and Control Bureau consists of both animal control officers and shelter staff. City of Henderson, Animal Control, https://www.cityofhenderson.com/government/departments/animal-control (last visited Mar. 17, 2021).  For clarity, I refer to it as Henderson Animal Shelter throughout this order.

[2] Facts in this section are based on the allegations made in Borenstein's FAC.

drove to Sunrise Hospital with his service dog Mana. *Id.* at 9.  Borenstein brought Mana into the emergency room with him but the dog became anxious. *Id.* at 10.  Borenstein then took Mana out and left him in the car. *Id.* at 10.  When Borenstein returned, he learned he would be admitted to the intensive care unit. *Id.*  Borenstein "informed" hospital staff that Mana was unattended in his car, that he had no family or friends to care for the dog, and that the dog would need boarding while Borenstein was incapacitated at the hospital. *Id.*  "[A]fter providing this information, Borenstein was sedated." *Id.*

Later that day, a hospital staff member called CCAC about Mana. *Id.* at 11.  When CCAC officer Rachel Lund arrived, a Sunrise Hospital security officer and defendant nurse Pasternak informed Lund that Borenstein had been admitted as a patient, that his service dog was in his car, and that the dog seemed "aggressive." *Id.*  Lund relayed this information to CCAC Lieutenant Zavala, who has had prior interactions with Borenstein and was aware of his disabilities. *Id.* Zavala had Mana removed from Borenstein's car and placed a ten-day hold on him. *Id.*  Officer Lund had Pasternak sign the impound card for Mana and left a copy with her to give to Borenstein to advise him about the impound and the hold. *Id.* at 12.  The card stated: "Owner hospitalized / admitted and currently sedated." *Id.* at 13.

Mana was taken to the Lied Animal Shelter operated by TAF. *Id.* at 12-13.  TAF and Scholten (as TAF's COO) had prior interactions with Borenstein because TAF had cared for Mana overnight the month before and had cared for Borenstein's previous service dog in 2018. *Id.* at 9-10.  Borenstein, who is indigent, did not pay TAF for boarding his service dogs. *Id.* at 8-9.  TAF staff, including Scholten, were "displeased" by this. *Id.* at 9-10.

On May 13, 2019, a TAF staff member sent an email to Borenstein explaining that if he did not contact TAF by 2:35 p.m. on May 22, Mana could be adopted out. *Id.*  The email

instructed Borenstein to contact TAF for a quote on fees if he planned to reclaim Mana, and to contact them if he wanted more time to claim him. *Id.* The email explained that if Borenstein received a recorded message, to leave a message no matter what and to do so before the time expired on Mana's hold. *Id.* at 13-14. The email also included a phone number for CCAC. *Id.* at 14. On May 14, TAF sent another email to Borenstein with the same content. *Id.*

Borenstein did not receive the emails on the dates they were sent because he did not have access to his email in the hospital and he alleges TAF knew this. *Id.* However, Borenstein contacted TAF several times before the May 22, 2019 deadline, leaving messages indicating he was in the hospital and wanted to reclaim Mana. *Id.* Despite these efforts, Borenstein did not speak directly with anyone at TAF. *Id.* At some point, Borenstein was transferred to Loma Linda University Medical Center in California. *Id.* at 13.

On May 24th, Borenstein called CCAC. *Id.* He explained to the staff member on the phone that he had a heart attack and provided his room and bed number at Loma Linda. *Id.* He requested that the hold on Mana be extended and explained he did not have access to a phone to further communicate. *Id.* at 15. Zavala then sent an email to TAF advising them of Borenstein's request; Borenstein alleges the email was sent to Scholten. *Id.* Borenstein also alleges, without specifying a time frame, that Scholten, or other TAF staff acting under her direction, purportedly called several Las Vegas hospitals as a pretext for showing additional efforts to reach Borenstein even though they knew he was not in Las Vegas and could not access a telephone. *Id.* After learning that TAF could not reach Borenstein, Zavala tried to call Borenstein on May 28th at a hospital in Las Vegas where he believed Borenstein had previously stayed and left a message with a caseworker requesting that Borenstein call him. *Id.* at 16.

On May 30th, approximately 18 days after Mana was brought to the shelter, TAF staff removed the hold placed on Mana and made him available for adoption the following day. *Id.* At or around 6:25 p.m. on June 1st, Mana was adopted to new owners. *Id.* Around 13 minutes later, Borenstein left CCAC a voicemail explaining that he was still at the hospital and wanted to reclaim Mana. *Id.* at 17. Shortly after placing that call, Borenstein was released from the hospital and he returned to Las Vegas. *Id.* On June 2nd, Zavala informed Borenstein that Mana had already been adopted. *Id.* Borenstein was overcome with grief and told Zavala he was going to kill himself. *Id.* Borenstein subsequently met with Scholten and begged her to return Mana to him. *Id.* Scholten explained that Mana had already been adopted to someone else and that TAF "would euthanize Mana before allowing [Borenstein] to have possession of him, stating that, in her opinion, [Borenstein] was 'too sick' to care for Mana." *Id.* Borenstein was hospitalized shortly after that for suicidal ideation and other physical or mental impairments. *Id.*

On June 10, 2019, Borenstein filed the original complaint for this action. ECF No. 1-1. Borenstein also contacted public officials, community leaders, and animal rights organizations to help him reclaim Mana, some of whom contacted TAF. ECF No. 41 at 18. On June 20th, Borenstein filed a motion for a preliminary injunction to have Mana returned to him based on the ADA. ECF No. 3. I denied the request because I found Borenstein unlikely to succeed on the merits as Title III of the ADA does not permit the retroactive relief of returning Mana. ECF No. 19. On appeal, the Ninth Circuit agreed. ECF No. 51.

During the pendency of the litigation, Borenstein was hospitalized several times. ECF No. 41 at 19. During one of these hospitalizations, a doctor prescribed Borenstein a psychiatric/emotional support animal. *Id.* When Borenstein attempted to adopt a new dog from TAF based on this prescription, staff refused him. *Id.* Borenstein then went to Henderson

1  Animal Shelter but it also refused him. *Id.*  The Henderson staff told him there was an electronic

2  warning from TAF in a database accessible to animal law enforcement agencies and animal

3  shelters warning others not to adopt an animal to Borenstein. *Id.*  Borenstein attempted to obtain

4  a copy of the warning from multiple entities but they all told him he had to obtain it from TAF.

5  *Id.*  Zavala confirmed the existence of the electronic warning and told Borenstein that Scholten

6  was responsible for it. *Id.*

7  **II.   <u>ANALYSIS</u>**

8      Federal Rule of Civil Procedure 8(a)(2) requires a plaintiff to plead a "short and plain

9  statement of the claim showing that the pleader is entitled to relief."  For a motion to dismiss, I

10  must apply a two-step process in evaluating whether a party has stated a claim. *Bell Atl. Corp. v.*

11  *Twombly*, 550 U.S. 544, 555-56 (2007).  First, I must accept as true all the complaint's well-

12  pleaded allegations and draw all reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*,

13  556 U.S. 662, 678 (2009).  Legal conclusions and "mere conclusory statements" are not entitled

14  to an assumption of truth. *Id.* at 678-79.  Second, I must determine whether the complaint's

15  factual allegations put forward a plausible claim for relief. *Id.* at 679.  This is a context-specific

16  determination that requires drawing on my judicial experience and common sense. *Id.*

17      **A.  Application of Clark County Animal Ordinance**

18      Throughout the briefing on the motions to dismiss, the parties debate whether the Clark

19  County Code provision on impoundment properly governs Mana's hold and whether the ADA

20  preempts it.  As this issue impacts a variety of the claims, I address it first.

21      The Clark County Animal Ordinance (the Animal Ordinance) states that:

22       Every dog . . . found running at large . . . or in violation of any
         section of this title, shall be subject to impoundment by the animal
23       control officer at the animal shelter and, if impounded, shall be

1          kept at the animal shelter for a period of at least seventy-two hours
      if not sooner released to its owner.

2

3    Clark Cnty. Code § 10.24.010.  "At large" is defined to not include animals on property where

4    they are "permitted by the lawful occupant within an exclusive access enclosure structure, such

5    as a[n] . . . automobile." *Id.* § 10.04.100(b)(i).  The ordinance is violated when an animal is

6    "placed or confined or [remains] in a motor vehicle under such conditions or for such a period of

7    time as may endanger the health or well-being of such animal . . . ." *Id.* § 10.32.060.  When an

8    impounded animal is "unclaimed" after 72 hours, the animal "shall be released to and become

9    the property of the contracted animal shelter." *Id.* § 10.24.080(a).  But that "shall not be

10   construed to prevent the animal shelter from giving the animal to its prior owner" and the

11   director of the animal shelter will "make the final determination on the release of animals." *Id.*

12        Borenstein argues that the defendants are not entitled to rely on the Animal Ordinance's

13   hold time because Mana was not "at large" and Borenstein did "reclaim" Mana before the

14   deadline by calling CCAC and TAF.  In the alternative, Borenstein argues that the ordinance is

15   preempted because it violates the ADA.  The defendants argue that the ordinance applies because

16   Mana was left unattended in a vehicle while his owner was sedated and the dog was thereafter

17   impounded by CCAC pursuant to an impoundment card.  Mana became TAF's property when

18   Borenstein did not attempt to physically pick up Mana until after the hold period expired.  They

19   further contend there is no preemption because the ordinance does not conflict with the ADA.

20        Based on the facts alleged in Borenstein's FAC, Mana was impounded under the Animal

21   Ordinance and became TAF's property under the ordinance.  Even though Mana was not "at

22   large," CCAC was authorized to impound Mana as he was left in Borenstein's car in violation of

23   the vehicle confinement ordinance. ECF No. 41 at 10; *see* Clark Cnty. Code § 10.32.060.

Further, although "unclaimed" is not defined, the Animal Ordinance is premised on a physical pick up. Another part of the title states that "if an owner comes to reclaim his animal" but has no proof of ownership, they must leave a deposit to get additional time to prove ownership. Clark Cnty. Code § 10.24.010. The Animal Ordinance thus contemplates that "reclaiming" involves coming to the animal shelter. *See also* Black's Law Dictionary ("To get back (something lost or taken away)"). Therefore, the Animal Ordinance governs Mana's impoundment and Mana became TAF's property based upon it.

Borenstein's argument that the ADA preempts the Animal Ordinance also fails. There are three kinds of preemption: express preemption, field preemption, and conflict preemption. *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1022 (9th Cir. 2013). Relevant here is conflict preemption, which occurs when it is impossible for a party to comply with both state and federal law standards or when the state law creates an obstacle to accomplishing the federal law. *Id.* at 1023. The Animal Ordinance does not create such a conflict.

The ADA requires that certain entities make reasonable modifications to accommodate persons with disabilities. 42 U.S.C. §§ 12132, 12182(b)(2)(A). The Animal Ordinance does not prohibit reasonable modification requests. Although it sets a 72-hour hold before an animal becomes a shelter's property, it also states that the provision "shall not be construed to prevent the animal shelter from giving the animal to its prior owner." Clark Cnty. Code § 10.24.080. Therefore, the ADA can require an animal shelter like TAF to modify its procedures to allow a disabled owner to get more time on a hold. In fact, Borenstein was given more time here when CCAC set a ten-day hold, rather than the ordinance's three days, and Mana stayed at TAF for approximately 18 days. ECF No. 41 at 11, 17. Because it is possible for TAF to comply with

1  state and federal law, and because the Animal Ordinance does not create an obstacle to

2  accomplishing federal law, the ADA does not preempt the Animal Ordinance.

3      **B.  Sunrise Hospital and Pasternak**

4      Borenstein brings several claims against Sunrise Hospital and Pasternak (the "hospital

5  defendants").  He alleges that Sunrise Hospital violated Title III of the ADA by failing to ensure

6  that Mana was safeguarded long enough for Borenstein to reclaim him.  He also alleges that the

7  hospital defendants were negligent in failing to ensure Mana was held long enough for

8  Borenstein to get out of the hospital, and that Sunrise Hospital was negligent in the training,

9  supervision, and retention of Pasternak.  Borenstein further alleges that the hospital defendants

10  should be liable for double damages under Nevada's law for injury suffered by a vulnerable

11  person.  The hospital defendants move to dismiss all claims against them.

12      I grant this motion to dismiss because Sunrise Hospital is not required to care for a

13  service animal under the ADA, the hospital defendants had no duty to ensure a third party would

14  not adopt out Mana, and no claims remain to impose special damages.

15      *1.  ADA*

16      Title III of the ADA prohibits places of public accommodation from discriminating

17  against an individual "on the basis of disability in the full and equal enjoyment of the goods,

18  services, facilities, privileges, advantages, or accommodations[.]" 42 U.S.C. § 12182(a).  Sunrise

19  Hospital is considered a place of public accommodation. *Id.* § 12181(7)(F).  The statute defines

20  discrimination to include failure to make reasonable modifications. *Id.* § 12182(b)(2)(A).

21  Regarding service animals, the ADA provides that service animals must be permitted onto a

22  business's premises. 28 C.F.R. § 36.302(c).  But "a public accommodation is not responsible for

23  the care or supervision of a service animal." *Id.* § 36.302(c)(5).

Sunrise Hospital argues that it never denied Borenstein accommodation and that ADA regulations preclude it from being responsible for his service dog.  Borenstein responds that the ADA's guidance on service dogs imposes liability.  He also argues that regardless of the regulations, Sunrise Hospital had to reasonably accommodate his request.

The ADA regulations make it clear that a place of public accommodation is not required to care for or supervise a service animal. 28 C.F.R § 36.302(c)(5).  The ADA guidance on which Borenstein relies states: "If the patient is unable to care for the dog and is unable to arrange for someone else to care for the dog, the hospital may place the dog in a boarding facility until the patient is released, or make other appropriate arrangements." U.S. Dept. of Justice, Frequently Asked Questions About Service Animals and the ADA (ADA FAQ Guidance), at 3 (July 20, 2015).  The ADA FAQ Guidance does not confer on hospitals the responsibility of caring for service animals.  It states only that the hospital "may" arrange for boarding and that other appropriate arrangements are possible. ADA FAQ Guidance, at 3.  The word "may" is permissive, so it does not require a hospital to act. *See Haynes v. United States*, 891 F.2d 235, 239-40 (9th Cir. 1989).  Additionally, calling animal control to pick up Mana is an "other appropriate arrangement[]" for such a situation.  To the extent that the guidance could be interpreted to impose responsibility on the hospital, it would be inconsistent with the regulations and those take precedence. *Fortyune v. City of Lomita*, 766 F.3d 1098, 1104 (9th Cir. 2014).

The ADA unambiguously did not require Sunrise Hospital to care for or supervise Mana, so I dismiss the ADA claim against Sunrise Hospital.  Because amendment on this claim would be futile, I deny leave to amend.

/ / / /

/ / / /

10

### 2.  Negligence and Gross Negligence

In Nevada, a plaintiff must satisfy four elements for a negligence claim: "(1) an existing duty of care, (2) breach, (3) legal causation, and (4) damages." *Turner v. Mandalay Sports Entm't, LLC*, 180 P.3d 1172, 1175 (Nev. 2008).  Gross negligence is "substantially and appreciably higher in magnitude and more culpable than ordinary negligence" and "equivalent to the failure to exercise even a slight degree of care." *Hart v. Kline*, 116 P.2d 672, 674 (Nev. 1941) (internal quotations and citations omitted).  The question of duty is one of law to be determined by a court and the existence of a duty is not automatic. *Lee v. GNLV Corp.*, 22 P.3d 209, 212 (Nev. 2001).  Unless there is a special relationship, "strangers are generally under no duty to aid those in peril." *Id*.  Similarly, a duty is not owed to control the conduct of others unless: "(1) a special relationship exists between the parties or between the defendant and the identifiable victim, and (2) the harm created by the defendant's conduct is foreseeable." *Sanchez ex rel. Sanchez v. Wal-Mart Stores, Inc.*, 221 P.3d 1276, 1280-81 (Nev. 2009).

A duty may be established through bailment. *Donlan v. Clark*, 45 P. 1, 2 (Nev. 1896). "Where a bailee, either for hire or gratuitously, is entrusted with care and custody of goods, it becomes his duty . . .  to return the goods or show that their loss occurred without negligence on his part." *Kula v. Karat, Inc.*, 531 P.2d 1353, 1355 (Nev. 1975).  A bailment exists when there is a "delivery of personal property by one person (the bailor) to another (the bailee) who holds the property for a certain purpose under an express or implied-in-fact contract." *GCM Air Grp., LLC v. Chevron U.S.A., Inc.*, No. 3:07-cv-00168-BES-RAM, 2009 WL 10696479, at *6 (D. Nev. June 18, 2009), *aff'd in part, rev'd in part*, 386 F. App'x 717 (9th Cir. 2010).

Borenstein's FAC alleges that the hospital defendants breached their legal duty of arranging for Mana's boarding because they failed to ensure CCAC would hold Mana long

enough and did not communicate with CCAC and TAF while Borenstein was hospitalized. Borenstein asserts that the hospital defendants had a special relationship because Borenstein was their patient.  He further contends that a bailment was created.  The hospital defendants argue they had no duty to ensure that third parties would return Mana.

Although a hospital usually owes a special duty to its patients in relation to providing medical care, only normal negligence applies to a facility that acts in a role unrelated to the practice of medicine. *DeBoer v. Sr. Bridges of Sparks Fam. Hosp.*, 282 P.3d 727, 731 (Nev. 2012).  Here, the hospital defendants had no special duty to arrange for Mana's boarding even though Borenstein was their medical patient.  Further, Borenstein's FAC does not allege that the harm was foreseeable.  Borenstein does not allege that Sunrise Hospital or Pasternak knew how long Borenstein was likely to be in the hospital or that the ten days listed on the impoundment card would be insufficient.  He does not allege that they knew Borenstein would be unable to communicate with TAF and CCAC during his entire hospital stay.  In fact, Borenstein contacted TAF and CCAC.  Thus, the hospital defendants had no special duty.

Borenstein also has not sufficiently alleged the creation of a bailment.  Borenstein's FAC alleges that he "informed" Sunrise Hospital staff that his service dog was in his car, he did not have people to care for the dog, and Mana would need boarding while Borenstein was incapacitated in the hospital. ECF No. 41 at 10.  But he does not allege that hospital staff agreed to arrange for Mana's boarding, only that staff called CCAC. *Id.* at 11.  There was no arrangement for hospital staff to hold Mana for a certain purpose.  Even if the act of calling CCAC amounted to some tacit agreement, there was no delivery of the property to the hospital defendants.  Mana remained in Borenstein's car until CCAC picked him up.  There are no alleged facts to indicate that hospital staff were given control over Mana.  And CCAC, not

hospital staff, gave the order to remove Mana. ECF No. 41 at 11.  Because there was no

bailment, there was no duty.

Absent a special relationship or a duty through bailment, there is no affirmative duty to

assist someone in peril or to control the conduct of others. *Lee*, 22 P.3d at 212; *Wal-Mart Stores,*

*Inc.*, 221 P.3d at 1280-81.  Duty is a required element of Borenstein's negligence and gross

negligence claims, so I dismiss both.  Because it is possible that Borenstein could allege facts to

support a duty, I grant leave to amend on this claim.[3]

### 3.  Negligent Training, Supervision, and Retention

In Nevada, an "employer has a duty to use reasonable care in the training, supervision,

and retention of his or her employees to make sure that the employees are fit for their positions."

*Hall v. SSF, Inc.*, 930 P.2d 94, 99 (Nev. 1996).  An "employer should be liable when it places an

employee, who it knows or should have known behaves wrongfully, in a position in which the

employee can harm someone else." *Okeke.*, 927 F. Supp. 2d at 1028.  This claim requires more

than evidence of an employee's negligence, as there must also be evidence that the employer was

negligent in ensuring their fitness for the position. *Vinci v. Las Vegas Sands, Inc.*, 984 P.2d 750,

751 (Nev. 1999).

Borenstein alleges that Sunrise Hospital breached this duty by placing Pasternak in a

position of communicating with CCAC without training and supervising her on safeguarding

assets and relevant laws. ECF No. 41 at 47.  Sunrise Hospital argues there is no plausible claim

for negligence and Borenstein does not allege that Sunrise Hospital knew or should have known

staff would behave wrongfully.

---

[3] Under Rule 15, leave to amend "shall be freely given when justice so requires."  In general, dismissal of a complaint without leave to amend is proper only if amendment would be futile. *Albrecht v. Lund*, 845 F.2d 193, 195 (9th Cir. 1988).

1    Borenstein has not plausibly alleged that Pasternak or other hospital staff acted

2  wrongfully by calling CCAC to retrieve Mana.  I thus dismiss the negligent training, supervision,

3  and retention claim against Sunrise Hospital.  Because I am allowing amendment on the

4  negligence claim, negligence could establish wrongfulness.  I therefore grant leave to amend.

5                      *4.  Neglect or Abuse of a Vulnerable Person*

6    Nevada Revised Statutes (NRS) § 41.1395(1) provides that if a "vulnerable person

7  suffers a personal injury or death that is caused by abuse or neglect," then "the person who

8  caused the injury, death or loss is liable to the . . .  vulnerable person for two times the actual

9  damages incurred by the . . . vulnerable person."  As I have previously held and Borenstein

10  acknowledges, NRS § 41.1395(1) does not constitute an independent cause of action but rather is

11  a provision for special damages. *Doe v. Clark Cnty. Sch. Dist.*, No. 2:15-cv-00793-APG-GWF,

12  2016 WL 4432683, at *13 (D. Nev. Aug. 18, 2016); ECF Nos. 98 at 16; 111 at 23.  There are no

13  causes of action against the hospital defendants left, so I dismiss the request for special damages

14  as to them.  Because I am allowing leave to amend on the negligence claim, amendment may not

15  be futile.  I therefore grant leave to amend to request this form of relief.

16          **C.  Clark County and Zavala**

17    Borenstein alleges several claims against Clark County and Zavala in his official and

18  individual capacities (the "government defendants").  He asserts against both defendants § 1983

19  claims based on substantive due process, procedural due process, equal protection, and

20  unreasonable seizure.  He also asserts against Clark County a § 1983 claim for a taking without

21  compensation, an ADA and Rehabilitation Act claim for discrimination, and an ADA claim for

22  retaliation.  Borenstein further alleges state law violations for unlawful interference with the use

23

14

of a service animal; negligence; negligent training, supervision, and retention; neglect or abuse of a vulnerable person; and IIED.  The government defendants move to dismiss every claim.

I grant the government defendants' motion in part.  I dismiss the § 1983 claims against Zavala because he is entitled to qualified immunity in his individual capacity, and he is a redundant defendant in his official capacity.  I dismiss portions of Borenstein's claims against Clark County because he did not allege a municipal policy related to TAF preventing him from adopting a new dog.  Both defendants are entitled to state law immunity for the state law claims except for the IIED claim.  I dismiss the IIED claim against Zavala because his alleged conduct does not amount to extreme and outrageous behavior.  I deny the motion in all other respects. What remains are the § 1983, ADA, Rehabilitation Act, and IIED claims against Clark County to the extent that they are about Mana's hold and transfer of ownership to TAF.

*1. Section 1983 Claims Based on the ADA*

A plaintiff may sue under § 1983 to enforce rights that are defined by federal statutes or the Constitution. *Maine v. Thiboutot*, 448 U.S. 1, 4–8 (1980).  However, Congress may foreclose a plaintiff from bringing a § 1983 claim based on a federal statute by forbidding it in the statute or by providing a comprehensive remedial scheme. *Blessing v. Freestone*, 520 U.S. 329, 341 (1997); *Buckley v. City of Redding*, 66 F.3d 188, 190 (9th Cir. 1995).  Title II of the ADA and Section 504 of the Rehabilitation Act have comprehensive remedial schemes, so plaintiffs cannot bring § 1983 claims based on them. *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002).  In *Smith v. Barton*, the Ninth Circuit held that § 1983 claims are barred when they "could have been brought" under a comprehensive statute. 914 F.2d 1330, 1333 (9th Cir. 1990) (holding that a First Amendment claim could not be brought under the Rehabilitation Act).

1        The government defendants argue that all of Borenstein's § 1983 claims are predicated

2   on alleged disability discrimination and that this amounts to impermissibly seeking vindication

3   of his ADA claims through § 1983.  Borenstein responds that his § 1983 claims are not based on

4   the ADA but are instead based on various constitutional violations.  The government defendants

5   argue that the claims are still barred because constitutional claims that are "parallel" to ADA

6   claims are precluded by the ADA's comprehensive remedial scheme.

7        As a threshold matter, only one of Borenstein's § 1983 constitutional claims is based on

8   disability discrimination.  The due process, takings, and unreasonable seizure claims are based

9   on the process of Mana's hold, and do not allege facts based on discrimination. *See, e.g.*, ECF

10  No. 41 at 21, 26, 28, 30.  Because they are not based on discrimination, they cannot be

11  vindicated by the ADA and are not precluded by § 1983.  I thus deny the motion to dismiss as to

12  these claims.  The equal protection claim is a closer question.

13       In his equal protection claim, Borenstein alleges he was discriminated against "because

14  of [his] disabilities and/or indigent status." *Id.* at 23.  Although indigent status is not covered by

15  the ADA, disability discrimination is.  The government defendants rely on Eighth Circuit

16  precedent holding if a § 1983 claim does not allege separate or independent allegations from an

17  ADA claim, it is a parallel claim that should be barred even if the claim is "styled" like a

18  constitutional claim. *Grey v. Wilburn*, 270 F.3d 607, 610 (8th Cir. 2001).  Borenstein relies on a

19  Sixth Circuit decision coming to the opposite conclusion, that alleging a claim where the right is

20  based on the Constitution rather than the ADA is permitted under § 1983 notwithstanding its

21  similarities to an ADA claim. *Bullington v. Bedford Cnty*, 905 F.3d 467, 475–76 (6th Cir. 2018).

22       The Ninth Circuit does not appear to have directly addressed whether a plaintiff can

23  pursue constitutional claims that are parallel to ADA claims, but it has dealt with the issue in the

context of the Age Discrimination in Employment Act (ADEA).  The court held that a plaintiff could not bring § 1983 employment age discrimination claims, "even those seeking to vindicate constitutional rights," because of the ADEA's comprehensive remedial scheme. *Ahlmeyer v. Nev. Sys. of Higher Educ.*, 555 F.3d 1051, 1057-58 (9th Cir. 2009) ("We are unable to perceive, and counsel have not pointed us to, a constitutional claim for age discrimination that is not vindicated fully by the ADEA.").

Borenstein cannot bring his equal protection claim for disability discrimination under § 1983.  Just as in *Ahlmeyer*, I cannot perceive how Borenstein's constitutional claim would not be fully vindicated by the ADA.  I therefore dismiss Borenstein's disability equal protection claim.  Because the § 1983 claim is precluded, amendment would be futile so I deny leave to amend.  However, Borenstein can maintain an equal protection claim to the extent it is based on indigency because the ADA does not cover that.  The indigency part of his equal protection claim thus survives dismissal.

### 2.  Municipal Liability for § 1983 Claims

A local government may be sued under § 1983 under certain circumstances. *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  To establish municipal liability, Borenstein must plausibly allege that "(1) he was deprived of a constitutional right; (2) the municipality had a policy; (3) the policy amounted to deliberate indifference to [Borenstein's] constitutional right; and (4) the policy was the moving force behind the constitutional violation." *Lockett v. Cnty. of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020).  The policy can be an official policy, a "pervasive practice or custom," a failure to train or supervise, or an "act by a final policymaker." *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 602-03 (9th Cir. 2019).  Respondeat superior liability is not sufficient to confer § 1983 municipal liability. *Id.* at 603.

17

Clark County argues that Borenstein has not alleged a longstanding practice or custom, nor has he alleged that the policy was the proximate cause of the constitutional deprivation. Borenstein responds that the case is predicated on CCAC following the Animal Ordinance and its policy and procedures.  Clark County replies that there is no alleged policy or custom that instructs personnel not to extend a hold in the case of disabled owners.

Borenstein has alleged enough facts to state § 1983 municipal liability claims to the extent they involve Mana's hold and transfer of ownership to TAF.  Borenstein has plausibly alleged that it was Clark County's policy that its employees follow the Animal Ordinance.

Borenstein has not, however, alleged an official policy to the extent that the § 1983 claims deal with TAF blocking Borenstein from getting a new dog.  While Borenstein alleges CCAC employed TAF as a public contractor for shelter services, that alone is not enough to impose liability on Clark County for all of TAF's actions regarding its adoption decisions and warnings on prospective adopters.  Borenstein's FAC points to no policy, practice, or custom of Clark County that would make it responsible for TAF's actions in these areas.  Because there is no alleged policy related to TAF's adoption procedures of dogs it owns, I dismiss the parts of the § 1983 claims against Clark County that are based on TAF's actions related to Borenstein not getting a new dog.  Because it is not clear that amendment would be futile, I grant leave to amend.

### 3.  Zavala's Liability for Federal Claims

Borenstein sues Zavala in both his individual and official capacities under § 1983 for substantive due process, procedural due process, equal protection, and unreasonable seizure. Zavala argues that he is entitled to qualified immunity for these claims against him in his

1  individual capacity and that the official capacity claims are redundant because Clark County is a

2  party to this suit.

3      An official is entitled to qualified immunity in their individual capacity unless the

4  violation of a constitutional right was "clearly established" at the time of the defendant's alleged

5  misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing *Saucier v. Katz*, 533 U.S.

6  194, 198 (2001)).  To be clearly established, "[t]he contours of the right must be sufficiently

7  clear that a reasonable official would understand that what [the official] is doing violates that

8  right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  The existence of an ordinance

9  authorizing the conduct "militates in favor of the conclusion that a reasonable officer would find

10 the conduct constitutional" unless it "is patently violative of fundamental constitutional

11 principles[.]" *Grossman v. City of Portland*, 33 F.3d 1200, 1209 (9th Cir. 1994).

12     Based on the allegations in the FAC, Zavala is entitled to qualified immunity because he

13 acted under the Animal Ordinance and there is no clearly established law for the alleged

14 constitutional violations.  Borenstein alleges Zavala violated the Constitution by failing to stop

15 TAF from seizing Mana and depriving Borenstein of his ownership rights.  He also alleges that

16 more procedure was required before such a deprivation, and that Zavala enforced the relevant

17 laws and policies arbitrarily.  There are few cases that deal with constitutional issues related to a

18 local government taking animals, and they do not reveal any consensus or clear application to

19 this case. *See, e.g., Recchia v. City of Los Angeles Dep't of Animal Servs.*, 889 F.3d 553 (9th Cir.

20 2018) (seizure and due process claims for euthanized birds); *Porter v. DiBlasio*, 93 F.3d 301,

21 305 (7th Cir. 1996) (seizure and due process claims for horses).  Borenstein's only argument

22 against qualified immunity is that the ADA and Rehabilitation Act amount to clearly established

23 law.  But those statutes are not relevant to the law of the constitutional claims at issue.  Because

1   Zavala acted under the Animal Ordinance and there is no clearly established law, Zavala is

2   entitled to qualified immunity.  I therefore dismiss the § 1983 individual capacity claims against

3   Zavala.[4]

4          I also dismiss the official capacity claims against Zavala.  An official capacity suit

5   against a municipal officer is "equivalent to a suit against the entity." *Kentucky v. Graham*, 473

6   U.S. 159, 165-66 (1985).  When the "officer is named only in an official capacity, the court may

7   dismiss the officer as a redundant defendant." *Ctr. for Bio-Ethical Reform, Inc. v. Los Angeles*

8   *Cnty. Sheriff Dep't*, 533 F.3d 780, 799 (9th Cir. 2008).  Because all the claims against Zavala are

9   also against Clark County, the claims against Zavala in his official capacity are redundant.  I

10  deny leave to amend because it would be futile.

11                          *4.  Substantive Due Process*

12         The only § 1983 claim that Clark County challenges on its merits is the substantive due

13  process claim.  Borenstein alleges that Clark County enforced the Animal Ordinance, the ADA,

14  state statues, and policies in an arbitrary and capricious manner. ECF No. 41 at 21.  Substantive

15  due process "does not entail a body of constitutional law imposing liability whenever someone

16  cloaked with state authority causes harm." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 848

17  (1998).  When evaluating executive action, "only the most egregious official conduct" that

18  "shocks the conscience" can be considered arbitrary and capricious. *Id.* at 846-47.  Mere

19  negligence is "categorically beneath the threshold of constitutional due process" but behavior

20  between negligence and intentional conduct is "a matter of closer calls." *Id.* at 849.

21

22  _____

23  [4] Dismissal based on an affirmative defense is appropriate when the facts of the complaint
    establish the defense. *U.S. Commodity Futures Trading Comm'n v. Monex Credit Co.*, 931 F.3d
    966, 973 (9th Cir. 2019), *cert. denied sub nom. Monex Deposit Co. v. Commodity Futures
    Trading Comm'n*, 141 S. Ct. 158 (2020).

Clark County argues that there are no allegations that meet this "shocks the conscience" standard because it simply complied with the ordinance. Borenstein argues that its conduct shocks the conscience because Clark County "engaged in a scheme" to deprive him of his service dog, including ignoring his messages and requests to hold Mana.

Viewing the facts in the light most favorable to Borenstein, he has sufficiently stated a claim for conduct that shocks the conscience. He alleges that Clark County "acted intentionally and/or with callous and reckless disregard" through its actions and TAF's actions as its agent regarding Mana's hold. Borenstein alleges Clark County did nothing in response to his requests to hold his service dog longer while he was still in the hospital even though he had been told he could request extensions, it allowed TAF to ignore his requests and make pretextual phone calls to Las Vegas hospitals where it knew he was not staying, and it allowed Scholten to tell Borenstein she would rather euthanize Mana than return him to Borenstein because he was "too sick." ECF No. 41 at 21. Taken together, this conduct[5] could shock the conscience. I deny the motion to dismiss the substantive due process claim.

### 5. ADA and Rehabilitation Act

Title II of the ADA prohibits public entities from discriminating against an individual "by reason of [their] disability" from "participat[ing] in or be[ing] denied the benefits of the services, programs, or activities of a public entity." 42 U.S.C. § 12132. Clark County is a "public entity" subject to Title II. *Id.* § 12131(1)(A) (local government). Clark County is also obligated to ensure its contractors comply with the ADA in providing government services. *Castle v. Eurofresh, Inc.*, 731 F.3d 901, 910 (9th Cir. 2013). To state a claim, Borenstein must allege:

---

[5] In analyzing this claim, I did not consider any allegations related to TAF preventing Borenstein from getting a new dog because, as determined above, Borenstein has not established municipal liability for any of the § 1983 claims based on that conduct.

> (1) he is an individual with a disability; (2) he is otherwise
> qualified to participate in or receive the benefit of [Clark County's]
> services, programs, or activities; (3) he was either excluded from
> participation in or denied the benefits of [Clark County's] services,
> programs, or activities, or was otherwise discriminated against by
> [Clark County]; and (4) such exclusion, denial of benefits, or
> discrimination was by reason of [his] disability.

*McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004) (internal citations and quotations omitted).[6]  The federal regulations list seven actions a public entity may not do on the basis of disability, including denying an opportunity to participate in a service and not making reasonable modifications. 28 C.F.R. §§ 35.130(b)(1), (7).

Clark County argues that Borenstein failed to allege the specific ADA provisions that Clark County allegedly violated.  It also argues that the claim is just a list of legal conclusions couched as factual allegations and that there are more plausible explanations for the conduct.  Borenstein responds that he is not required to plead in the FAC the specific subsection of the regulations and that he sufficiently alleges the basis for discrimination.

Borenstein has stated a claim under Title II of the ADA and the Rehabilitation Act for the allegations that relate to holding Mana.  Although Borenstein did not point out the specific subdivisions of the ADA that he contends Clark County violated, he has alleged sufficient information to provide Clark County notice of the basis of the allegations.  Borenstein alleges several facts that resulted in him being "excluded from participating in the community animal shelter services" and denied "reasonable accommodation" to hold Mana until he was out of the hospital. ECF No. 41 at 34.

---

[6] Section 504 of the Rehabilitation Act is similar.  Borenstein must show: "(1) he is an individual with a disability; (2) he is otherwise qualified to receive the benefit; (3) he was denied the benefits of the program solely by reason of his disability; and (4) the program receives federal financial assistance." *Weinreich v. Los Angeles Cnty. Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997); 29 U.S.C. § 794.

However, Borenstein has not stated a claim based on the allegations that Clark County is responsible for TAF's actions in preventing him from adopting a new animal. ECF No. 41 at 34. Just as for municipal policy, Borenstein has not alleged how Clark County can be liable for TAF's alleged ADA violations not related to the holding of impounded animals.  Because it is not clear that amendment would be futile, I grant leave to amend.

### 6. Retaliation Under the ADA

In addition to prohibiting disability discrimination, the ADA prohibits retaliation for an individual opposing any act or practice made unlawful by the ADA. 42 U.S.C. § 12203(a). Borenstein alleges Clark County retaliated against him by preventing him from being able to adopt a new dog and by deterring others from adopting to him after he contacted public and private leaders and filed this lawsuit.  Clark County argues Borenstein fails to allege it had a part in TAF refusing to adopt to Borenstein or issuing the electronic warning.  Borenstein responds that CCAC ratified TAF's placement of the warning in the database and that the Henderson Animal Shelter was acting under Clark County's authority.

As discussed above, Borenstein has not alleged that Clark County is involved in TAF adopting animals or creating electronic warnings.  There are no allegations that Clark County has control over the database contents submitted by others and it is not enough to allege only that it had access.  Borenstein's FAC also does not allege that CCAC ratified the electronic warning or that it has any part in the Henderson Animal Shelter's adoption decisions.  Borenstein has not stated a claim that Clark County retaliated under the ADA, so I dismiss the claim.  Because it is not clear that amendment would be futile, I grant leave to amend.

/ / / /

/ / / /

*7. State Law Immunity for Clark County and Zavala*

Under Nevada law, there are two circumstances in which immunity protects "an officer or employee of the State or any of its agencies or political subdivisions." NRS § 41.032. Subsection 1 confers immunity when the action is "[b]ased upon an act or omission of an officer [or] employee . . . exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation is valid" so long as the statute or regulation has not yet been declared invalid. NRS § 41.032(1). Subsection 2 confers immunity when the action is based on the "exercise or performance or the failure to exercise or perform a discretionary function or duty . . . whether or not the discretion involved is abused." NRS § 41.032(2). The Supreme Court of Nevada has adopted the federal test for determining when discretionary immunity under subsection 2 applies. *Martinez v. Maruszczak*, 168 P.3d 720, 728 (Nev. 2007). The government defendants must show that the acts involve (1) an "element of judgment or choice" and (2) are "based on considerations of social, economic, or political policy." *Id.* at 729. The inquiry is not about the employee's subjective intent but rather "the nature of the actions taken and on whether they are susceptible to policy analysis." *Id.* at 728.

The government defendants argue all the state law claims should be dismissed against them under subsection 1 because the allegations are based on their execution of the Animal Ordinance, which has not been declared invalid. They also argue that, to the extent any of the allegations can constitute discretionary actions, subsection 2 confers immunity because the actions were based on considerations of social, economic, or political policy. Borenstein argues that neither provision applies because he has alleged that the government defendants did not act with "due care" in executing the Animal Ordinance and because discretionary immunity does not grant officials discretion to ignore federal statutes and the Constitution.

24

Based on the allegations in the FAC, the government defendants are entitled to state law immunity under subsection 1 for the claims of unlawful interference with a service animal, negligence, and abuse or neglect of a vulnerable person.  The thrust of these claims is that CCAC should have made TAF hold Mana longer and answer his calls.  But the Animal Ordinance states that an impounded animal unclaimed after the statutory period of 72 hours "shall" become the shelter's property. Clark Cnty. Code §§ 10.04.080; 10.24.010.  Regardless of any constitutional defects the ordinance may have, and regardless of other obligations the ADA may impose, the Animal Ordinance has not been declared invalid and CCAC and Zavala acted under it in having Mana become TAF's property.  There are no allegations that the government defendants failed to exercise due care in the execution of the ordinance.[7]  CCAC held Mana for "at least 72 hours" and then Mana became TAF's property thereafter.  While the ADA may impose requirements about fielding calls and providing reasonable accommodations, that does not mean those same requirements form the basis of state law claims or deprive the government defendants of immunity from state law claims for implementing the Animal Ordinance.  The government defendants are therefore immune from these state law claims. NRS § 41.032(1).

Subsection 1 does not apply to the negligent training, supervision, and retention claim because that is not based on Mana's transfer but rather upon the sufficiency of Clark County's training and supervision.  However, § 41.032(2)'s discretionary immunity applies.  The "hiring, training, and supervision of employees usually involve policy judgment of the type Congress intended the discretionary function exception to shield." *Paulos v. FCH1, LLC*, 456 P.3d 589, 595 (Nev. 2020) (citing *Vickers v. United States*, 228 F.3d 944, 950 (9th Cir. 2000)).

---

[7] Part of Borenstein's negligence claim is based on the notion that there was a bailment relationship for CCAC to care for Mana until he could pick Mana up.  But there is no alleged factual basis for a bailment.  CCAC impounded Mana under the Animal Ordinance.

1    Borenstein's argument that the government defendants do not have discretion to violate federal

2    law is unavailing here.  This claim is about whether Clark County sufficiently trained and

3    supervised its staff.  Borenstein has not pointed to any federal or constitutional mandate that

4    Clark County train its staff on certain laws, so he has not plausibly alleged that Clark County

5    used its discretion to violate federal law.

6          Neither subsection, however, grants the government defendants immunity from

7    Borenstein's IIED claim.  That claim involves allegations that CCAC and Zavala intentionally

8    (or with reckless disregard) inflicted emotional distress through their inaction on his hold

9    extension requests and through TAF's conduct, as their agent, related to pretextual calls and the

10   comment about euthanizing Mana. ECF No. 41 at 56.  Subsection 1 does not apply because

11   Borenstein has plausibly alleged that these actions were not taken under the Animal Ordinance.

12   Subsection 2 does not apply because the discretionary immunity provision does not cover

13   intentional torts. *Franchise Tax Bd. of Cal. v. Hyatt*, 407 P.3d 717, 733 (Nev. 2017), *rev'd on*

14   *other grounds*, 139 S. Ct. 1485 (2019).  And Borenstein has plausibly alleged that the subject

15   actions were not done for discretionary policy reasons.  Therefore, the IIED claim is not

16   dismissed on this basis.

17          I dismiss all state law claims against the government defendants, except the IIED claim,

18   because of state law immunity.  Borenstein may amend the state law claims dismissed under

19   subsection 1 if he has facts to show the government defendants were not acting based on the

20   ordinance.  He may also amend his negligent training, supervision, and retention claim if he has

21   facts to show the training or supervision was done in a way that cannot be based on policy

22   considerations.

23   / / / /

26

*8. IIED*

To prevail on an IIED claim, a plaintiff must show "(1) extreme and outrageous conduct on the part of the defendant; (2) intent to cause emotional distress or reckless disregard for causing emotional distress; (3) that the plaintiff actually suffered extreme or severe emotional distress; and (4) causation." *Miller v. Jones*, 970 P.2d 571, 577 (Nev. 1998).  Extreme and outrageous conduct is "that which is outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community." *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998) (internal quotations and citations omitted).

The government defendants argue the alleged conduct is not "extreme and outrageous" and that there was no alleged intent to cause extreme emotional distress.  Borenstein argues that it was extreme and outrageous for them to take away an animal that he depended on for dealing with his disabilities, and he points to a statute protecting animal ownership rights of inmates. *See* NRS § 171.1539.  He further contends they knew of his situation and did nothing to stop it.

Compliance with the Animal Code is not extreme and outrageous, but Borenstein has alleged other factual circumstances that state a claim of IIED against Clark County.  He alleges pretextual communications, a lack of response or action related to his hold requests even though he was told he could request a longer hold, and the statement about euthanizing Mana. ECF No. 41 at 56.  Borenstein alleges these actions were done intentionally because TAF and CCAC had past interactions with him and that TAF staff were not happy that Borenstein had not paid for previous boarding. *Id.* at 9.  Although most of these actions were taken by TAF, Borenstein has alleged the existence of a shelter services contract, and Mana was brought to TAF on a Clark County-imposed hold/impoundment.  So he has plausibly alleged Clark County can fairly be

1  held liable for TAF's interactions related to Mana.  Taken together, Borenstein has stated an

2  IIED claim against Clark County.

3  Borenstein has not, however, sufficiently alleged that Zavala engaged in extreme and

4  outrageous behavior.  Borenstein discusses very little about Zavala's personal involvement.

5  Borenstein alleges that Zavala knew about Borenstein's disability, that he gave permission for a

6  ten-day hold, that he communicated with TAF about Borenstein's requests, that he attempted to

7  call Borenstein at the hospital where he believed Borenstein had been previously, and that he

8  generally acted with deliberate indifference in failing to make TAF hold Mana longer. ECF No.

9  41 at 11, 15.  None of these facts is extreme and outrageous and there is no plausible allegation

10  that TAF is Zavala's agent such that he would be personally responsible for TAF's conduct.  I

11  therefore dismiss this claim against Zavala.  Because it is not clear amendment is futile, I grant

12  leave to amend.

13  **D.  TAF and Scholten[8]**

14  Borenstein brings several claims against TAF and Scholten (the "animal shelter

15  defendants") for allowing Mana to be adopted to new owners and blocking him from adopting a

16  new dog.  He brings § 1983 claims against TAF and Scholten in her individual and official

17  capacities for due process, equal protection, unreasonable seizure, and First Amendment

18  retaliation. ECF No. 41 at 20-32.  He also brings a § 1983 claim for a taking without

19  compensation and an ADA claim for disability discrimination against TAF, as well as an ADA

20  retaliation claim against both animal shelter defendants.  *Id.* at 30-31, 35-41.  Borenstein further

21

22

23

---

[8] TAF and Scholten are represented by the same attorneys but Scholten filed her motion separately because Scholten was served after TAF and the parties could not agree on extending TAF's deadline. ECF Nos. 89 at 7 n.4; 107 at 11; 107-2.  Scholten incorporated TAF's arguments in her motion. ECF No. 88 at 9 n.4.

asserts state law violations against the animal shelter defendants for unlawful interference with the use of a service animal; violation of Nevada's public accommodations statute; negligence; negligent training, supervision, and retention; neglect or abuse of a vulnerable person; unlawful conversion; and IIED. *Id.* at 41-57.

I grant the animal defendants' motion for leave to file supplemental briefs. I deny TAF's anti-SLAPP motion because it failed to meet its initial burden on good faith. I grant TAF and Scholten's motions to dismiss in part. The portions of the § 1983 claims about preventing Borenstein from adopting new animals are dismissed because Borenstein has not plausibly alleged that the animal shelter defendants were acting under color of law when preventing Borenstein from adopting new animals. I dismiss all the official capacity claims against Scholten because they are redundant. I dismiss the remaining § 1983 claims against Scholten in her individual capacity as they relate to Mana's hold and transfer to TAF because of the good faith defense. I dismiss the claims for unlawful interference with a service animal and conversion because the defendants acted with legal justification. I dismiss the negligence claim and the abuse or neglect of a vulnerable person claim because Borenstein has not alleged a basis for a legal duty TAF or Scholten allegedly owed him. I deny the motion in all other respects. What remains are the § 1983 claims against TAF related to the hold and transfer of Mana to TAF; both ADA claims against TAF and Scholten; Nevada's public accommodation law claim against TAF and Scholten; the negligent training, supervision, and retention claim against TAF; and the IIED claim against TAF and Scholten.

### 1. Leave to File Supplemental Brief

The animal shelter defendants request leave to file a supplemental brief so they can include the text from the electronic warning and supplement their arguments based on it. This

motion arises from a discovery dispute.  Previously, Borenstein attempted to obtain the

electronic warning through record requests to CCAC and discovery. *See* ECF No. 137 at 4-6.

CCAC denied the requests because the record was TAF's property, not Clark County's. ECF No.

52-3.  Magistrate Judge Albregts denied Borenstein's requests for early production of the

electronic warning as premature prior to the Rule 26(f) conference. ECF Nos. 46; 84.  On

October 13, 2020, I granted the defendants' motion to stay discovery until I resolved the four

pending motions to dismiss. ECF No. 110.  The next day, Borenstein submitted another public

records request to CCAC, and this time CCAC provided the warning to Borenstein. ECF No. 137

at 5.  Borenstein then personally filed motions that included screenshots of the electronic

warning and a memo from Henderson Animal Shelter about its refusal to adopt to Borenstein.

ECF Nos. 129; 131; 132.[9]

  The animal shelter defendants argue that good cause exists to allow the supplemental

brief because they previously did not produce the electronic warning to avoid waiving future

discovery objections.  After Borenstein obtained it and attempted to use it, this concern no longer

mattered.  Borenstein argues that there is no good cause because the animal shelter defendants

had the electronic warning in their possession the entire time and could have used it in their

initial motions but chose not to for strategic litigation reasons.

  "A party may not file supplemental pleadings, briefs, authorities, or evidence without

leave of court granted for good cause." LR 7-2(g).  Good cause usually exists if "there is a

showing that the party seeking good cause was reasonably diligent." *Mallia v. Drybar Holdings,*

*LLC*, No. 2-19-cv-00179-RFB-DJA, 2020 WL 1250817, at *4 (D. Nev. Mar. 16, 2020).  Good

---

[9] I denied these motions because Borenstein personally filed them even though he is represented
by counsel. ECF No. 142.

cause exists here to allow supplementation.  While the animal shelter defendants possessed the

warning the whole time, they had valid discovery-based concerns to withhold it.  Now that

Borenstein has obtained it through extrajudicial means, there is good cause for them to now

include it.  I will therefore consider the text of the electronic warning and the supplemental legal

arguments in resolving the motions.

Although I typically cannot consider exhibits outside of a complaint at the motion to

dismiss stage without converting it to a summary judgment motion, the incorporation by

reference doctrine allows me to treat certain documents as if they were originally attached to the

complaint. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).  The

doctrine applies when a plaintiff's complaint discusses the contents of a document without

attaching it. *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1117 (9th Cir. 2018).  The electronic

warning falls under this doctrine because Borenstein mentions it several times in his FAC and it

forms the basis of some of his claims.[10] *See, e.g.,* ECF No. 41 at 19, 43, 52, 55.

### 2. Anti-SLAPP Motion

TAF filed a special anti-SLAPP motion to dismiss and a supplemental brief because three

of the state law claims are based in part on the electronic warning. ECF Nos. 54 at 15-16; 133 at

8-10.  Under Nevada's anti-SLAPP statute, a "person who engages in a good faith

communication in furtherance of the right to petition or the right to free speech in direct

connection with an issue of public concern is immune from any civil action for claims based

upon the communication." NRS § 41.650.  A defendant may file a special motion to dismiss if

---

[10] The animal shelter defendants also rely on the contents of a note from Henderson Animal Shelter that discusses why that shelter refused to adopt to Borenstein. ECF No. 140 at 8, 10. However, they never argued that there is good cause to supplement their briefs with this note or that I can consider it on a motion to dismiss.  I thus do not consider the note.

the defendant can show "by a preponderance of the evidence, that the claim is based upon a good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern." *Id.* § 41.660(3)(a). If the defendant makes this showing, the burden shifts to the plaintiff to show "with prima facie evidence a probability of prevailing on the claim." *Id.* § 41.660(3)(b).

As relevant here, "a good faith communication in furtherance of the right to petition" is defined as a "[c]ommunication of information or a complaint to a Legislator, officer or employee of the Federal Government, this state or a political subdivision of this state, regarding a matter reasonably of concern to the respective governmental entity" that "is truthful or is made without knowledge of its falsehood." NRS § 41.637(2).

TAF argues that the electronic warning is a communication to law enforcement regarding a matter of reasonable concern to animal control law enforcement. In its supplemental brief, TAF points to the warning's text, which states that Borenstein "had dogs here on police holds twice in the past three months. [H]e is combative when not given the answer he wants and will often call Metro PD to attempt to get his way." ECF No. 133 at 6. Borenstein argues that TAF failed to offer evidence that the communication was made in good faith.

TAF has not met its initial burden of showing that the electronic warning was truthful or made without knowledge of its falsehood. Aside from assertions in its unsworn briefs, TAF provides no evidence that the electronic warning was based on truthful information. For TAF to establish this element by a preponderance of evidence, it needed to provide a declaration or other evidence of good faith. *Compare P6 LA MF Holdings SPE, LLC v. Shekhter*, 738 F. App'x 563, 565 (9th Cir. 2018) (affirming denial of a California anti-SLAPP motion where the defendants "failed to submit any declarations supporting an honest belief that they had a viable legal claim

1   or that they were seriously contemplating litigation against [those] to whom they sent

2   communications"), *with Smith v. Zilverberg*, --- P.3d ----, No. 80154 & 80348, 2021 WL 834031,

3   at *4 (Nev. Mar. 4, 2021) (holding that the defendant met his burden by providing a declaration

4   and other evidence that the statement was made in good faith).  Because TAF has not met its

5   initial burden,[11] I deny its special anti-SLAPP motion without prejudice.  I do not find TAF's

6   special anti-SLAPP motion "frivolous or vexatious," so Borenstein is not entitled to attorneys'

7   fees under NRS § 41.670(2).

8                   *3.  Section 1983 Claims Based on the ADA*

9        Like the government defendants, the animal shelter defendants argue that Borenstein's

10   § 1983 claims should be dismissed because his constitutional claims are parallel to his ADA

11   claims.  As I determined above, Borenstein's § 1983 claims are not dismissed on this basis

12   except to the extent that the equal protection claim is based on disability discrimination.

13                      *4.  Government Action*

14        Section 1983 and the Fourteenth Amendment are directed at the states, so claims

15   thereunder must be based on "state action" rather than a private actor's conduct. *Lugar v.*

16   *Edmondson Oil Co.*, 457 U.S. 922, 936 (1982); *Rendell-Baker v. Kohn*, 457 U.S. 830, 83 (1982)

17   (explaining that § 1983's "under color of law" is the "same thing" as the state action doctrine).

18   Although there is no specific formula for what conduct constitutes government action, courts

19   use, as relevant here, the public function test, the joint action test, and the governmental nexus

20   test. *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003).  The public function test is satisfied

21

22

23

[11] In a footnote of its reply brief, TAF requests leave to submit a declaration speaking to good faith if I determine it was required. ECF No. 88 at 9.  I deny this request because TAF bore the burden of establishing good faith as part of its initial motion, yet it requested this relief for the first time in a footnote in a reply brief.

only upon showing that the function is "both traditionally and exclusively governmental." *Id.* at 1093. The joint action test examines whether the state has "insinuated itself into a position of interdependence with the private entity," and the governmental nexus test asks whether there is a close nexus between the state and the action such that it may be fairly treated as state action. *Id.* at 1093, 1095.

It is usually not enough for the private actor to be heavily regulated by the government and provided with significant state funds. *See Blum v. Yaretsky*, 457 U.S. 991, 1005-11 (1982) (holding that a nursing home providing Medicaid benefits is not a state actor). The existence of a government contract does not automatically establish state action. *See Scott v. Eversole Mortuary*, 522 F.2d 1110, 1115 (9th Cir. 1975). But the work of government contractors is state action when the government is "deeply intertwined" in the process. *Jensen v. Lane Cnty.*, 222 F.3d 570, 575 (9th Cir. 2000) (finding state action when a private hospital contracted with the county to provide medical services and the county employees initiated the evaluation process, involved other county workers, and developed the mental health plans).

Scholten argues that Borenstein has not sufficiently alleged that she and TAF[12] are state actors because the existence of a government contract is not enough to impose liability for the constitutional claims. Borenstein responds that TAF is performing a government function in receiving and holding animals as defined by state statute, it receives government funding, and CCAC and TAF's work is intertwined in delivering these services.

---

[12] TAF did not raise the state action argument in its motion to dismiss. But I will consider the argument for both Scholten and TAF because Scholten is being sued in her official capacity, which is treated as a suit against TAF. Additionally, Borenstein had a fair opportunity to respond to the argument. ECF No. 107 at 10-11.

Borenstein has sufficiently alleged that the animal shelter defendants' handling of Mana's hold and transfer of ownership to TAF constituted state action.  The close nexus between CCAC and TAF's holding procedures is like that of the hospital and county in *Jensen*.  The Animal Ordinance defines these animal shelters as "designated by a local government for receiving and holding animals." Clark Cnty. Code § 10.04.085.  Further, Clark County is intertwined in the process.  CCAC initiates the impoundment of animals under the Animal Ordinance, provides an impoundment card that sets a hold time, and brings the animals to TAF to facilitate that hold. ECF No. 41 at 11-13.  After that, TAF provides email notices containing the information on the holds and includes the contact information for CCAC. *Id.* at 13-14.  Additionally, the Animal Ordinance determines the point an impounded animal becomes shelter property but delegates the "final determination on the release of animals" to the director of the contracted animal shelter. Clark Cnty. Code § 10.24.080(a).  Taken together, Clark County and TAF are "deeply intertwined" in the process.

This same logic, however, does not apply to TAF's adoption procedures.  TAF is a non-profit entity and there is no allegation that its adoption procedures are governed or controlled by Clark County. *See Shell v. Ferry Cnty.*, No. 2:16-CV-00021-SAB, 2017 WL 579898, at *4 (E.D. Wash. Feb. 13, 2017).  Borenstein's briefs suggest that animal shelters perform a traditional government function, but he has not shown that adopting out animals is the traditional and exclusive domain of the government.  While animal control might be a traditional public function, private actors have been involved in dog adoptions, from rescues to breeding.

Because there is no state action for TAF's refusal to adopt a new dog to Borenstein or its placement of the warning, I dismiss the parts of the § 1983 claims that rely on those actions.  It

35

may be possible for Borenstein to allege facts that establish state action for these acts, so I grant him leave to amend.

### 5. *Scholten's Liability*[13]

Scholten offers various reasons why she should not be liable for the claims against her. She argues that she is a redundant defendant with TAF so all the official capacity claims against her should be dismissed. Borenstein responds that the claims are not redundant because the official capacity claims are for prospective injunctive relief and thus are not treated as actions against the state. As discussed previously, an official capacity suit against a municipal officer is "equivalent to a suit against the entity" and therefore an official capacity claim against an officer is redundant. *Graham*, 473 U.S. at 165-66; *Ctr. for Bio-Ethical Reform, Inc*, 533 F.3d at 799. Borenstein's argument regarding prospective injunctive relief confuses issues not relevant in this case.[14] I dismiss the official capacity claims against Scholten because they are redundant. As amendment would be futile, I deny leave to amend.[15]

---

[13] Scholten contends that she is sued in her individual capacity for only one of the 12 claims against her and that the rest are only in her official capacity. However, the complaint alleges all claims against Scholten in both her individual and official capacities. ECF No. 41 at 7.

[14] That distinction deals with Eleventh Amendment issues that prevent state officials from being sued in their official capacities unless they are being sued for prospective injunctive relief. *Doe v. Lawrence Livermore Nat. Lab'y*, 131 F.3d 836, 839 (9th Cir. 1997). These sovereign immunity issues are not implicated here because the claims are against TAF, not the state.

[15] In her reply, Scholten contends that all claims against her should be dismissed because they are duplicative of the claims against TAF and there is "no purpose to her inclusion in this litigation." ECF No. 119 at 5. I do not ordinarily consider arguments raised for the first time in a reply brief. But to the extent she is arguing there are no allegations she personally participated in the alleged violations, I disagree. Borenstein alleges that Scholten knew of his requests and his location, she told him she would rather euthanize Mana than give Mana to him, and she allegedly created or instructed others to create the electronic warning. ECF No. 41 at 14-15, 17, 19. Scholten argues in her supplemental brief that she cannot be held personally liable for the creation of the electronic warning because the text of the warning indicates she did not create it. The text states that if anyone sees Borenstein try to adopt an animal, they should contact "ZK"

As for the claims against her in her individual capacity, Scholten contends that she cannot be held personally liable for following the Animal Ordinance, which is presumed to be constitutional until judicially declared otherwise.  Borenstein argues that the Animal Ordinance does not apply, that the ADA requires reasonable accommodation notwithstanding whether the Animal Ordinance is constitutional, and that the Animal Ordinance does not protect her from the claims related to the refusal to adopt to him and the electronic warning.

Under federal law, officers are entitled to enforce statutes that they reasonably believe to be valid even if the statutes are later determined to be unconstitutional. *Michigan v. DeFillippo*, 443 U.S. 31, 38 (1979).  This concept is part of both a qualified immunity analysis and a good faith defense. *Id.*; *Pierson v. Ray*, 386 U.S. 547, 556 (1967).  Qualified immunity is not automatically available for private actors that have undertaken state action and Scholten has not established why it should apply to her. *See Danielson v. Inslee*, 945 F.3d 1096, 1099 (9th Cir. 2019), *cert. denied*, No. 19-1130, 2021 WL 231555 (Jan. 25, 2021); *see also Richardson v. McKnight*, 521 U.S. 399, 412 (1997); *Clement v. City of Glendale*, 518 F.3d 1090, 1097 (9th Cir. 2008).  However, a private actor may invoke the good faith defense for § 1983 claims. *Danielson*, 945 F.3d at 1099.  The good faith exception applies when the action was authorized by the government and "appeared permissible under local ordinance and state law." *Clement*, 518 F.3d at 1097 (applying the good faith exception to a tow company).

Based on the allegations in the FAC, the good faith defense applies to the § 1983 claims against Scholten related to Mana's hold and transfer to TAF because Scholten acted pursuant to

---

and the note is signed "zk." ECF No. 133 at 6.  That does not dispositively refute the notion that Scholten created or played a role in creating the warning.

1   CCAC's impoundment notice and the Animal Ordinance.  I therefore dismiss the § 1983 claims

2   against Scholten[16] to the extent they relate to Mana's hold and transfer to TAF.

3        However, Scholten has not provided any Nevada case law or argument why the good

4   faith defense bars the state law claims.  Further, following the Animal Ordinance does not

5   address the parts of the claims that allege Scholten kept Borenstein from getting a new dog and

6   placed an electronic warning in the system.  I therefore deny the motion to the extent it rests on

7   the good faith defense to those allegations.

8        I dismiss the official capacity claims against Scholten as redundant.  I also dismiss the

9   remaining § 1983 individual capacity claims against Scholten to the extent that they deal with

10  Mana's hold and transfer to TAF because of the good faith defense.  Borenstein may amend the

11  § 1983 claims based on Mana's hold if he has facts to show Scholten was not acting based on the

12  notice and ordinance.

13              *6. ADA*

14       As discussed previously, Title III of the ADA prohibits places of public accommodations

15  from discriminating against an individual "on the basis of disability in the full and equal

16  enjoyment of the goods, services, facilities, privileges, advantages, or accommodations[.]" 42

17  U.S.C. § 12182(a).  Title III applies to TAF because it is a social service agency or service

18  establishment. 42 U.S.C. § 12181(7)(F), (K).  The statute defines discrimination "because of"

19  disability in several ways, including creating eligibility criteria that tends to screen out

20  individuals with disabilities and failing to make reasonable modifications. *Id.* § 12182(b)(2)(A).

21

22

23

[16] TAF did not argue that the good faith defense applies to it and neither did Scholten on TAF's behalf.  I therefore do not consider its application to TAF at this time.

Although other forms of discrimination require showing some level of intent to discriminate, the failure to reasonably accommodate a person with a disability can violate the ADA even when the policies are otherwise facially neutral and consistently enforced. *McGary*, 386 F.3d at 1265.

TAF argues that most of Borenstein's claims are legal conclusions and what remains is a series of conclusory statements that impute ill-intent or unlawful activity. Further, TAF argues that Borenstein cannot request the retroactive relief of getting Mana back under Title III of the ADA. Borenstein responds that TAF failed to identify which statements are legal conclusions or what elements are missing from his factual allegations. He further contends that intent is not required under Title III so long as the failure to reasonably accommodate is "because of" his disability. He argues that even if intent to discriminate was required, he has alleged intent by describing the pretextual calls and the statement about euthanizing Mana.

Borenstein has stated a claim under Title III of the ADA for TAF's actions. Borenstein alleges several facts that resulted in him being "excluded from participating in the community animal shelter services," denied the "reasonable accommodation" of holding Mana until he was out of the hospital, and "denied the benefits ordinarily provided to animal owners to recover" their animals after a temporary hold. ECF No. 41 at 38. Borenstein's statements are supported by factual allegations. I thus deny the motion to dismiss this claim.

However, Borenstein may not request the permanent injunctive relief of having Mana returned to him under Title III of the ADA. The Ninth Circuit in this case held that "a mandatory injunction undoing an alleged past act of discrimination . . .is not the type of preventative relief authorized by Title III." ECF No. 51 at 3 (quoting 42 U.S.C. § 2000a-3, which limits the Title III remedies to "preventative relief"). I therefore dismiss that requested relief.

### 7.  Retaliation Under the ADA

Although I have dismissed the § 1983 First Amendment retaliation claim against the animal shelter defendants as lacking government action, the retaliation claim based on the ADA remains against TAF and Scholten.[17] 42 U.S.C. § 12203(a).  I apply the Title VII burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 11 U.S. 792 (1973) for ADA retaliation claims.  Borenstein thus must make out a prima facie case: "(a) that [he] was engaged in protected activity, (b) that [he] suffered an adverse action, and (c) that there was a causal link between the two." *T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.*, 806 F.3d 451, 473 (9th Cir. 2015) (internal quotations and citations omitted).  The retaliatory motive or causal link can be established by showing "evidence of proximity in time between the protected speech and the allegedly retaliatory decision." *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 771 n.21 (9th Cir. 2006) (applying the same test in the First Amendment context).

The animal shelter defendants argue that it is not plausible that TAF refused to adopt another dog to Borenstein and created the warning in response to him engaging in protected activities because there are more plausible reasons, such as him being combative.  Borenstein responds that a plausible alternative is not enough to defeat a claim at dismissal and facts must be construed in his favor.

Borenstein states a claim for retaliation.  He alleges he engaged in the protected activity of contacting officials and community leaders and filing this lawsuit. ECF No. 41 at 40.  He also alleges that the animal shelter defendants caused Borenstein to suffer adverse actions by refusing to allow him to adopt a new animal and by placing the electronic warning. *Id.*  He alleges a

---

[17] Scholten did not address whether the good faith defense applies to an ADA retaliation claim.  I therefore decline to apply it to this claim at this time.

temporal causal connection by alleging that these adverse actions occurred shortly after he contacted the officials and community leaders in June 2019, filed the lawsuit on June 10, and filed a motion for preliminary injunction on June 20. *Id.*  Indeed, the text of the electronic warning shows it was entered five days after the preliminary injunction motion. ECF No. 133 at 6.  This temporal relationship is enough of a causal link to establish the prima facie elements of retaliation.  I therefore deny the motion to dismiss this claim.

### 8.  Unlawful Interference with a Service Animal

Under Nevada law, a person cannot "interfere" with the use of a service animal by "obstructing, intimidating or otherwise jeopardizing the safety of the service animal . . . or the person using the service animal" without legal justification. NRS § 426.790(1).  Borenstein alleges that the animal shelter defendants are liable under this statute because they converted the ownership of Mana, which constitutes an interference with Borenstein's use. ECF No. 41 at 42.

The animal shelter defendants argue that the statute does not apply because Mana became TAF's property after Borenstein left Mana in his car and at TAF for weeks.  They contend this does not constitute obstruction or intimidation and that Borenstein was not "using" Mana at the time the dog was taken, so they did not jeopardize his safety.  The animal shelter defendants further argue that TAF acted with legal justification because it complied with the Animal Ordinance and the ADA does not permit the retrospective relief of nullifying an adoption.  Borenstein responds that seizing Mana counts as an obstruction because that seizure prevents him access, and he rejects the notion that a dog needs to be in active use.  He further argues that TAF acted without legal justification because it took Mana under bailment, the Animal Ordinance does not apply, and Nevada's public accommodation law requires reasonable accommodation.

The unlawful interference with a service animal statute does not apply to the animal shelter defendants' actions. As I have already stated elsewhere in this order, Mana was impounded under the Animal Ordinance, rather than under a bailment arrangement, so the transfer of Mana to TAF was done pursuant to that ordinance. To be actionable, § 426.790(1) requires the interference to be "without legal justification," but that phrase is not defined and no court appears to have interpreted its meaning before. I predict[18] that the Supreme Court of Nevada would hold that a defendant acts with "legal justification" within the meaning of NRS § 426.790(1)(a) when the defendant is executing a presumptively valid ordinance that has not been ruled unconstitutional at the time the defendant acted. *See Sustainable Growth Initiative Comm. v. Jumpers, LLC*, 128 P.3d 452, 465 (Nev. 2006); *Askew v. Clark Cnty,* No. 2:18-cv-02026-APG-BNW, 2021 WL 601606, at *9 (D. Nev. Feb. 12, 2021). No court has yet invalidated the Animal Ordinance for constitutional deficiencies. Therefore, I dismiss Borenstein's unlawful interference with a service animal claim. Borenstein may amend this claim if he has facts that show the transfer of Mana was not based on the Animal Ordinance.

### *9. Conversion*

"Conversion is a distinct act of dominion wrongfully exerted over another's personal property in denial of, or inconsistent with his title or rights therein or in derogation, exclusion, or defiance of such title or rights." *Evans v. Dean Witter Reynolds, Inc.*, 5 P.3d 1043, 1048 (Nev. 2000) (en banc) (quotation omitted). Conversion "is an act of general intent, which does not

---

[18] When a federal court interprets state law, it is bound by the decisions of the state's highest court. *Assurance Co. of Am. v. Wall & Assocs. LLC of Olympia*, 379 F.3d 557, 560 (9th Cir. 2004). Where the state's highest court has not decided the issue, a federal court must predict how that court would decide. *Orkin v. Taylor*, 487 F.3d 734, 741 (9th Cir. 2007). I may use "decisions from other jurisdictions, statutes, treatises, and restatements as guidance." *Assurance Co.*, 379 F.3d at 560 (quotation omitted).

require wrongful intent and is not excused by care, good faith, or lack of knowledge." *Id.*
However, "a conversion imports an unlawful act, or an act which cannot be justified or excused
in law." *Wantz v. Redfield*, 326 P.2d 413, 414 (Nev. 1958). "Whether a conversion has occurred
is generally a question of fact for the jury." *Evans*, 5 P.3d at 1048.

The animal shelter defendants argue that Borenstein cannot bring a conversion claim
because he lost ownership interests in Mana by operation of law. Borenstein argues that TAF
took Mana under bailment, that the Animal Ordinance does not apply, and that it was not a
lawful transfer because it violated Borenstein's rights under state, federal, and constitutional law.

As I have already stated, no bailment relationship was created, and the Animal Ordinance
applies. Similar to the unlawful interference with a service animal claim, a conversion claim
under Nevada law is an act of "wrongful" dominion such that it "cannot be justified or excused
in law." *Wantz*, 326 P.2d at 414. I predict that the Supreme Court of Nevada would hold that a
conversion is not wrongful, or can be justified in law, if it is done based upon a presumptively
valid ordinance that has not been ruled unconstitutional or preempted at the time the defendant
acted. *See Jumpers, LLC*, 128 P.3d at 465; *Askew*, No. 2:18-cv-02026-APG-BNW, 2021 WL
601606, at *9. I therefore dismiss the conversion claim. Borenstein may amend this claim if he
has facts that show the transfer of Mana was not based on the Animal Ordinance.

### 10. Nevada's Public Accommodation Law

Like the ADA, Nevada's public accommodation law protects individuals from
intimidation, threats, coercion, or punishment "for the purpose of interfering with any right or
privilege secured by NRS 651.070." NRS § 651.090(1)(b)-(c); NRS § 651.070 (entitling all
persons the "full and equal enjoyment off the goods, services, facilities, privileges, advantages,
and accommodations of any place of public accommodation, without discrimination . . . on the

grounds of . . . disability").  TAF argues that the alleged actions were not based on disability

discrimination and that the right to file a lawsuit or contact officials is not a right or privilege

secured by NRS § 657.070.  Borenstein responds that he has alleged that the electronic warning

and the refusal to adopt to him were done because he pursued his rights.

For the same reasons I have explained for ADA retaliation, Borenstein has stated a claim

under NRS § 651.090.  He adequately alleged a temporal connection between the adverse actions

and his attempts to vindicate his disability rights.  I deny the motion to dismiss this claim.

### 11. Negligence and Negligent Training, Supervision, and Retention

Borenstein argues that TAF had a duty to hold Mana until he could reclaim the dog.  He

also argues TAF had a duty to heed his communications by virtue of their bailment relationship

and as a reasonable animal shelter.  TAF responds that there is no basis for that legal duty and

that it complied with the Animal Ordinance.

Borenstein has not demonstrated a basis for this legal duty.  An animal shelter is not

obligated to hold animals for as long as owners wish, and there is no bailment relationship.

Borenstein also has not identified a basis for a duty to respond to patrons' calls.  I thus dismiss

this negligence claim.  I grant leave to amend because it is not clear amendment would be futile.

An employer has a duty not to be negligent in the training, supervision, or retention of

its employees when it knows or should have known its employee would behave wrongfully and

puts them in a position to harm someone else. *Okeke v. Biomat USA, Inc.*, 927 F. Supp. 2d 1021,

1028 (D. Nev. 2013).  There must be facts beyond evidence of employee negligence, such as the

employer failing to "conduct[] a reasonable background check of its employees, or . . .  to use

reasonable care in the training, supervision, and retention of its employees, to ensure their fitness

for their respective positions." *Vinci*, 984 P.2d at 751.

Borenstein alleges that TAF failed to use reasonable care by placing Scholten in the position of communicating with CCAC over Mana's placement when it knew or should have known she would retaliate against Borenstein. ECF No. 41 at 49. He further alleges TAF failed to properly train and supervise Scholten and staff about the ADA, the county ordinances, state discrimination statutes, and safeguarding others' property. *Id.* TAF argues that Borenstein has not shown that TAF owed a duty to protect him from the harm alleged.

At this stage and viewing allegations in a light most favorable to Borenstein, he has stated a claim for negligent training, supervision, or retention. TAF owes a duty to not negligently place its employees in positions that result in harm to others. Borenstein has alleged Scholten or TAF staff acted with a retaliatory motive and that TAF had reason to know of all the factual circumstances related to this because of Borenstein's prior failure to pay for boarding. ECF No. 9-10. The text of the electronic warning also suggests staff frustration with Borenstein calling police when interacting with them. ECF No. 133 at 6. Thus, TAF's alleged knowing placement of Scholten and staff in positions where they could harm Borenstein through retaliation and emotional distress states a claim. I deny the motion to dismiss this claim.

### 12. Abuse or Neglect of a Vulnerable Person

As discussed previously, NRS § 41.1395(1) protects vulnerable persons from "abuse or neglect." Neglect is defined as a failure of a person legally responsible for the care of a vulnerable person. NRS § 41.1395(c). Abuse is defined as "willful and unjustified . . . [i]nfliction of pain, injury or mental anguish; or . . . deprivation of . . . services which are necessary to maintain the physical or mental health of an older person or a vulnerable person." NRS § 41.1395(4)(a)(1)-(2).

Borenstein alleges TAF assumed a legal responsibility to care for him by taking possession of his service animal while knowing he was hospitalized, and that it acted abusively by knowingly depriving him of his service animal that was necessary for his health. ECF No. 41 at 51. TAF argues it does not owe a duty of care or legal responsibility to care for Borenstein so it has no duty related to Mana under this statute.

As discussed above, Borenstein has not established a legal duty related to the care of Mana such that TAF's actions can be characterized as "neglect." There is no factual basis alleged from which to conclude that TAF assumed (voluntarily or otherwise) a duty to care for Borenstein because it only cared for his dog. Further, there is no basis for "abuse" because Mana's transfer was done under the Animal Ordinance, so it was not "unjustified." I thus dismiss this request for relief. Because it is not clear amendment is futile, I grant leave to amend.

### 13.  IIED

Like Clark County, the animal shelter defendants argue that the alleged actions do not constitute extreme and outrageous conduct sufficient for an IIED claim. But as I determined regarding Clark County, Borenstein's allegations state a claim for IIED. I deny the motion to dismiss this claim.

### III.   CONCLUSION

I THEREFORE ORDER that defendants Sunrise Hospital and Medical Center, LLC and Ulrike Pasternak's motion to dismiss **(ECF No. 66) is GRANTED.**

I FURTHER ORDER that Clark County and Victor Zavala's motion to dismiss **(ECF No. 68) is GRANTED IN PART.**

1      I FURTHER ORDER that defendants the Animal Foundation and Carly Scholten's

2 motion for leave to file a supplemental brief **(ECF No. 133) is GRANTED.**

3      I FURTHER ORDER that defendant The Animal Foundation's motion to dismiss **(ECF**

4 **No. 54) is GRANTED IN PART.**

5      I FURTHER ORDER that Defendant Carly Scholten's motion to dismiss **(ECF No. 89)**

6 **is GRANTED IN PART.**

7      I FURTHER ORDER that plaintiff Brian Borenstein may file an amended complaint as

8 allowed by this order by April 16, 2021.  If he fails to file an amended complaint by that date,

9 only the claims that survive this order will proceed.  This order grants Borenstein leave to amend

10 only the claims as set forth in this order and does not grant leave to add new claims.

11      DATED this 17th day of March, 2021.

12

13                             _____

                                 ANDREW P. GORDON

14                                  UNITED STATES DISTRICT JUDGE

15

16

17

18

19

20

21

22

23