UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| BRIAN BORENSTEIN,<br><br>    Plaintiff<br><br>v.<br><br>THE ANIMAL FOUNDATION, et al.,<br><br>    Defendants | Case No.: 2:19-cv-00985-APG-DJA<br><br>**Order**<br><br>[ECF Nos. 158, 170, 174, 175, 185] |

    Plaintiff Brian Borenstein sues several defendants for their roles in allowing his service animal, Mana, to be adopted out to new owners while he was hospitalized. In my March 17, 2021 Order (Order), I determined that the Clark County Animal Ordinance (the Animal Ordinance) governed Mana's hold, which impacted several claims that I dismissed. ECF No. 143 at 6-9. I also dismissed all claims against defendants Sunrise Hospital and Medical Center, LLC and nurse Ulrike Pasternak (collectively, the hospital defendants). *Id.* at 9-14. Borenstein now moves for reconsideration of my interpretation of the Animal Ordinance and the dismissal of the claims against the hospital defendants. He argues that I misapplied the law, that I overlooked facts, and that new evidence should change my analysis. ECF No. 158.

    The hospital defendants' response to the motion for reconsideration included Borenstein's medical records, which they had produced to Borenstein in response to a subpoena duces tecum. The hospital defendants move to file a redacted version of their response, to seal an unredacted version of their response, and to permit them to serve on the other defendants the unredacted version under Local Rule IA 10-5(d). ECF No. 170. Borenstein separately moves to strike some of those medical records because they are irrelevant or prejudicial. ECF No. 185.

The parties are familiar with the facts so I repeat them here only where necessary to resolve the motion. I deny Borenstein's motion for reconsideration because he has not presented law or facts sufficient to cause me to change my mind.[1] I strike all the medical records attached to the hospital defendants' response and the unredacted response because they are not relevant to resolving the motion for reconsideration, and striking the records will prevent the docket from being burdened by premature discovery and protective order disputes. I grant the motion to file a redacted response, but I deny as moot the requests to file an unredacted version under seal and to allow the hospital defendants to serve the other defendants with an unredacted version.

**I. MOTIONS TO EXTEND TIME (ECF Nos. 174, 175)**

Borenstein filed two requests for extensions of time to reply to defendants' responses to the motion for reconsideration. ECF Nos. 174, 175. Under Federal Rule of Civil Procedure 6(b)(1)(A), I may extend a filing deadline for good cause if the request is made "before the original time or its extension expires." The motion to extend time to respond to the hospital defendants' response (ECF No. 174) is moot because I granted a subsequent extension request. ECF No. 181. I grant the motion to extend by three days the deadline to respond to Clark County's response (ECF No. 175) because good cause exists to extend the time. *See* Fed. R. Civ. P. 6(b)(1)(A). I have thus considered all of Borenstein's replies in deciding the motion for reconsideration.

**II. MOTION FOR RECONSIDERATION (ECF No. 158)**

A court "possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient," so long as it has jurisdiction. *City of L.A., Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) (quotation and

---

[1] I decline the defendants' requests for sanctions against Borenstein at this time.

emphasis omitted); *see also* LR 59-1(a).  Reconsideration may be appropriate "if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).  A district court may also reconsider its decision if "other, highly unusual, circumstances" warrant it.  *Id.*  As the movant, Borenstein "must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *United States v. Westlands Water Dist.*, 134 F. Supp. 2d 1111, 1131 (E.D. Cal. 2001).  A motion for reconsideration "must not repeat arguments already presented unless (and only to the extent) necessary to explain controlling, intervening law or to argue new facts." LR 59-1(b); *see also Backlund v. Barnhart*, 778 F.2d 1386, 1388 (9th Cir. 1985).

### A. Motion for Reconsideration Based on New Evidence

First, Borenstein's attempt to present new evidence in this situation is improper.  New evidence in a motion for reconsideration is permitted only if it is likely to change the outcome of the decision. *Jones v. Aero/Chem Corp.*, 921 F.2d 875, 878 (9th Cir. 1990).  I dismissed some of Borenstein's claims because he failed to allege facts in his first amended complaint (FAC) that were sufficient to state claims for which relief could be granted. *See* Fed. R. Civ. P. 12(b)(6). New evidence that was not part of the allegations in the FAC will not change my determination that the FAC was not sufficiently pleaded. *McKinnon v. Onewest Bank, FSB*, No. 2:12-CV-00329-JCM-VCF, 2012 WL 3860737, at *2 (D. Nev. Sept. 5, 2012) ("To the extent that plaintiffs argue that newly discovered evidence warrants relief from this court's judgment, evidence is neither relevant nor admissible for a motion to dismiss.").  Borenstein was given an

opportunity to amend his complaint with this new evidence but did not.[2]  Although Borenstein contends he proceeded in this manner because I dismissed some of his claims with prejudice, he still could have sought leave to amend those claims based on the new evidence and attached the proposed amended complaint.  I therefore decline to consider the new evidence in assessing whether I should reconsider my dismissal of some of his claims.[3]

To the extent that Borenstein relies on this new evidence in his motion, I will construe it as a motion for leave to amend the dismissed claims to include this new evidence.  Under Federal Rule of Civil Procedure 15, leave to amend "shall be freely given when justice so requires."  However a motion for leave to amend should be denied if amendment would be futile. *Albrecht v. Lund*, 845 F.2d 193, 195 (9th Cir. 1988).

**B.  The Animal Ordinance**

Under the Animal Ordinance, "any animal impounded, as provided in this title, shall be kept a minimum term provided for by Sections 10.24.010 and 10.24.020 and, if unclaimed by the owner within such term, the animal shall be released to and become the property of the contracted animal shelter." Clark Cnty. Code § 10.24.080(a).  Section 10.24.010 states that every

---

[2] Borenstein argues that the defendants withheld or misconstrued information in their motions to dismiss because they did not correct facts alleged in the FAC.  But at the motion to dismiss stage, the defendants must assume the truth of the allegations in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (quotation omitted)).  The burden is on Borenstein to provide a complaint that meets the pleading standard.

[3] I also decline Borenstein's requests to convert the motions to dismiss into motions for partial summary judgment to consider this new evidence. *Williams v. Cnty. of Alameda*, 26 F. Supp. 3d 925, 935 (N.D. Cal. 2014) (indicating that judges have discretion as to whether they will convert a motion to dismiss into one for summary judgment).  Borenstein made this request for the first time in replies and the defendants have therefore not had an opportunity to respond. *Rimini St., Inc. v. Oracle Int'l Corp.*, 473 F. Supp. 3d 1158, 1227 (D. Nev. 2020) (declining to consider arguments raised for the first time in a reply brief).  Further, I have already ruled on the motions to dismiss, and trying to get in the new evidence in this manner is procedurally improper.

dog "running at large . . . or in violation of any section of this title, shall be subject to impoundment by the animal control officer at the animal shelter and, if impounded," must be kept at the animal shelter for at least 72 hours.  In my Order, I determined that Clark County Animal Control (CCAC) impounded Mana under § 10.24.010 because of a violation of the vehicle confinement section, which states that an animal shall not be placed in a car "under such conditions or for such period of time as may endanger the health or well-being of such animal due to heat, cold, lack of food or drink, or such other circumstances as may be reasonably expected to cause suffering, disability or death." Clark Cnty. Code § 10.32.060; ECF No. 143 at 7.  I further determined that Mana was "unclaimed" because Borenstein did not physically go to pick Mana up at The Animal Foundation's (TAF) shelter before the ten-day hold on the impoundment expired. ECF No. 143 at 8.  I thus concluded that Mana became TAF's property under § 10.24.080(a). *Id.*

Borenstein argues that I improperly concluded that Mana was impounded under the vehicle confinement provision because I overlooked evidence that Mana was left in the car with the air conditioning on and that I misconstrued the allegations in the FAC to suggest that Mana had been left in the car for a long time and that he had been unattended.  Borenstein contends that new evidence shows Mana was in the car for only 15 to 17 minutes, that hospital staff were outside the car for the entire time Mana was in there, and that TAF staff treated Mana as a voluntary surrender.  He also argues that I misinterpreted the word "unclaimed" to mean that a dog is not claimed unless the dog is physically picked up by the deadline and that TAF has allowed other owners to claim their animals remotely.  In light of his contention that I misapplied the Animal Ordinance, he argues that I should "reexamine any dismissed claims based on that determination." ECF No. 158 at 16; *see also id.* at 9 (arguing that the purported "misapplication"

of the Animal Ordinance impacted my findings and conclusions on "a variety of claims and defenses, including the defenses of good faith and qualified and discretionary act immunity. . . .").[4]

As a threshold matter, Borenstein asks me to reexamine dismissed claims without any analysis as to how my application of the Animal Ordinance ultimately impacted my rulings. Thus, he has not sufficiently set out the law or facts in a manner that strongly convinces me to change my rulings. *See Westlands Water Dist.*, 134 F. Supp. 2d at 1131.

Even if Borenstein had explained how a different interpretation of the Animal Ordinance would have impacted my Order, I decline to reconsider that Order. Borenstein has not shown any error in my determination that Mana was impounded under the Animal Ordinance. I considered the fact that Mana was left in a car that was running with the air conditioning on and I did not misconstrue the facts alleged in the FAC. Borenstein left Mana in his car even though he knew he would be "incapacitated" at the hospital and that he had no friends or family to pick Mana up. ECF No. 41 at 10. The Animal Ordinance does not require CCAC to wait for an animal to actually suffer before it can rescue and impound an animal, only that the animal is in "circumstances as may be reasonably expected to cause suffering, disability or death." Clark Cnty. Code § 10.32.060. Mana being left in the car while Borenstein checked into the hospital for an unforeseen amount of time could reasonably be interpreted as a circumstance where Mana would suffer without CCAC intervention. The new evidence does not change this conclusion.

---

[4] Borenstein alternatively argues that Nevada Revised Statute (NRS) § 171.1539, governing impounded animals owned by arrested and detained persons, should apply to him because of the new evidence that he was involuntarily committed while at the hospital. This statute applies only to "lawfully arrested and detained" persons and is therefore not applicable here. Nev. Rev. Stat. § 171.1539(1).

Even if CCAC picked up Mana as a voluntary surrender,[5] Mana was still impounded under the Animal Ordinance and thereafter became TAF's property when the hold expired. Under the voluntary surrender section, an animal shelter is required to hold a dog for "not less than twenty-four hours after impoundment and before disposition." Clark Cnty. Code § 10.24.040. This hold time that is even shorter than if Mana had been impounded for a different reason. *Id.* And once the hold time expires, a shelter can "dispos[e]" of the animal, which necessarily encompasses allowing the shelter to adopt the animal out, in addition to "destroy[ing]" it. *Id.* And if Mana came to TAF under the voluntary surrender provision, Mana would be considered impounded "as provided in this title" and would therefore still become TAF's property when "unclaimed" under § 10.24.080(a). Regardless of which provision applies, Mana was impounded under the Animal Ordinance and became TAF's property. Borenstein's attempts to construe Mana's pick up as CCAC or TAF agreeing to a special dog-sitting arrangement outside the bounds of the Animal Ordinance is not supported by the allegations in the FAC, the new evidence, or the law.

Borenstein also has not shown that I erred in interpreting the Animal Ordinance to mean an animal must be physically "claimed" before ownership transfers to a shelter. Borenstein largely repeats the same arguments he made throughout his briefs for the motions to dismiss. I interpreted the statute to require a physical pick-up because another provision suggests the Animal Ordinance was meant to require an owner to physically come to the shelter to "claim" an animal. ECF No. 143 at 8 (citing Clark Cnty. Code § 10.24.010, which discusses what happens when an owner "comes to reclaim" his animal but does not have proof of ownership). And as

---

[5] Borenstein did not argue that Mana was a "voluntary surrender" in his responses to the motions to dismiss, but now states that voluntary surrender "is the applicable section of the ordinance under which Mana came under TAF's control." ECF No. 158 at 7.

defendant Clark County points out, § 10.24.010 contemplates a physical pick-up because it states that an animal shall be kept for the statutory period "if not sooner released to its owner." Borenstein's statutory interpretation of "claim" is neither persuasive nor consistent with the other provisions of the Animal Ordinance.

I also am not moved by the evidence that TAF held onto another animal longer than Mana and that TAF returned that animal to its original owners without a physical pick-up. *See* ECF No. 158 at 5 n.2. My analysis of when a shelter becomes the owner of an impounded animal is not impacted by whatever agreements TAF makes after it has become the legal owner.

Further, I did not overlook the allegation that Borenstein was told he could extend the hold on Mana by contacting CCAC or TAF and that he made those requests. A request to extend a hold is not the same thing as claiming an animal, and regardless, Borenstein had to physically reclaim Mana before the hold was up under my interpretation of "unclaimed." I also did not overlook that Borenstein physically came to the shelter a day after Mana was adopted. That was not relevant to the question of whether TAF became Mana's owner under the Animal Ordinance because the hold had expired by then. *See* ECF No. 41 at 17.

Because Mana was impounded under the Animal Ordinance and not picked up before the ten-day hold expired, TAF became Mana's owner by operation of law.[6] I therefore deny the motion for reconsideration based on the Animal Ordinance. And because none of the proposed

---

[6] The conclusion that TAF became Mana's owner under the Animal Ordinance does not preclude Borenstein's contentions that CCAC or TAF violated other laws by not being responsive to his requests to hold Mana longer. I did not dismiss Borenstein's 42 U.S.C. § 1983, ADA, Rehabilitation Act, or intentional infliction of emotional distress (IIED) claims against CCAC based on Mana's hold and transfer of ownership to TAF. ECF No. 143 at 15. I also did not dismiss the § 1983 claims related to Mana's hold and transfer; the ADA claims; Nevada's public accommodations law; negligent training supervision, and retention; and the IIED claims against TAF. *Id.* at 29.

new evidence would impact this determination, amending the complaint to allege those new facts would be futile in resurrecting the claims I dismissed because of the Animal Ordinance.

### C. The Americans with Disabilities Act (ADA) Claim Against Sunrise Hospital

I dismissed Borenstein's ADA claim against Sunrise Hospital with prejudice because 28 C.F.R. § 36.302(c)(5) specifically excludes hospitals from responsibility for the care of service animals under the ADA. ECF No. 143 at 10. On reconsideration, Borenstein repeats his prior argument that an ADA guidance document stating that hospitals "may" arrange for a service animal's boarding imposes liability under the ADA. *See* U.S. Dept. of Justice, Frequently Asked Questions About Service Animals and the ADA (ADA FAQ Guidance), at 3 (July 20, 2015).

I decline to reconsider my decision. The ADA regulation specifically excludes hospitals from liability under the ADA for the care of service animals. 28 C.F.R § 36.302(c)(5). As I explained in my Order, the ADA FAQ Guidance does not impose liability, and even if it did the ADA regulation would take precedent. ECF No. 143 at 10. Borenstein contends that I overlooked his argument that, notwithstanding the ADA regulation, the hospital was required to consider his reasonable accommodation request. This argument has no merit. The ADA regulation would have no meaning if it stated that hospitals are not responsible for the care of service animals but then have the ADA still impose liability because of a reasonable accommodation request. The regulation governs how public accommodations must modify their policies, practices, and procedures and it states that public accommodations are "not responsible" for the care or supervision of a service animal within that section. 28 C.F.R § 36.302(c)(1), (5).[7]

---

[7] Additionally, it is unclear what "reasonable accommodation" allegedly went unanswered. The new evidence suggests Borenstein asked hospital staff to call CCAC to pick up Mana. Hospital staff then called CCAC, which picked up Mana. A required element of a reasonable accommodation ADA claim is that the accommodation was actually requested. *See Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1082 (9th Cir. 2004) (listing an element of the claim as a public accommodation "failing to make a requested reasonable modification"). There are no

9

Even if I credit the new evidence that Borenstein requested Sunrise Hospital to call CCAC to pick up Mana, that does not change the fact that Sunrise Hospital is not liable to care for service animals under the ADA. It would thus be futile to amend the complaint with this new evidence because Borenstein would still fail to allege a viable ADA claim against the hospital defendants.

### D. The Negligence Claims Against the Hospital Defendants

I dismissed Borenstein's negligence and gross negligence claims against the hospital defendants because they had no duty to ensure that Mana was kept by third parties until Borenstein got out of the hospital. ECF No. 143 at 13. I explained that there was no bailment relationship between the hospital defendants and Borenstein because there was no arrangement for hospital staff to hold Mana for a certain purpose. *Id.* at 12. I further explained that Mana was not "delivered" to the hospital defendants because there were no allegations in the FAC that hospital staff were given control over Mana. ECF No. 143 at 12-13.

Borenstein argues that I erred in dismissing these claims because I did not consider that the hospital defendants affirmatively acted to help Borenstein by calling CCAC and that they thus had a duty to act reasonably in carrying out that act by ensuring that Mana was held until Borenstein was out of the hospital. He also argues that new evidence shows that the hospital defendants called CCAC because he asked them to, that Borenstein gave hospital staff his car keys, and that hospital security was with Mana while they waited for CCAC to arrive.

As I explained in the Order, no bailment relationship was created because the FAC never alleges that Borenstein affirmatively requested that the hospital call CCAC to pick up Mana and

---

allegations that Borenstein asked hospital staff to care for Mana until he got out of the hospital or to ensure that CCAC held Mana long enough for him to get out of the hospital.

10

there was no delivery. And there is no other legal basis, based on the facts alleged in the FAC, for the argument that the hospital defendants had a legal duty to ensure that third parties returned Mana to Borenstein. I therefore deny Borenstein's motion to reconsider.

Even if I consider the new evidence that Borenstein asked the hospital defendants to call CCAC to pick up Mana and that Sunrise Hospital staff had the car keys, that does not support the expansive duty Borenstein proposes. If Borenstein asked the hospital defendants to call CCAC to pick up Mana, at most the hospital defendants may have had a duty to ensure that CCAC picked up Mana per Borenstein's request.[8] There is still no legal or factual support for the notion that the hospital defendants had an additional duty of ensuring that CCAC or TAF would hold Mana long enough for Borenstein to be discharged from the hospital. Amendment with this new evidence would thus be futile because it would still fail to state a negligence claim.

### E. Extending the Leave to Amend Deadline

Because Borenstein filed this motion instead of filing a second amended complaint as I had previously allowed, he missed the deadline to amend, which had been extended to June 18, 2021. ECF No. 156. Although I have determined that amendment with the new evidence presented in this motion would be futile for the claims I dismissed, it is not clear that every possible amendment would be futile. I will therefore give Borenstein one more opportunity to amend his complaint consistent with my instructions in my March 17, 2021 order and this order, so long as facts exist to support such amendment.

/ / / /

/ / / /

---

[8] By Borenstein's own allegations and evidence, the hospital defendants promptly called CCAC, Mana was successfully taken to a shelter, and Borenstein was informed about the ten-day hold. ECF Nos. 41 at 2-3; 159-1 at 7.

### III. MOTION TO STRIKE MEDICAL RECORDS (ECF No. 185)

I have the inherent power to strike briefs and pleadings that are "scandalous, impertinent, scurrilous, and/or without relevancy." *Carrigan v. Cal. State Legislature*, 263 F.2d 560, 564 (9th Cir. 1959); *see also Ready Transp., Inc. v. AAR Mfg., Inc.*, 627 F.3d 402, 404 (9th Cir. 2010) (holding that district courts may grant motions to strike pursuant to their inherent powers). Borenstein moves to strike 64 of the 70 documents containing his protected health information on various grounds including because they are irrelevant, unfairly prejudicial, or cumulative. ECF No. 185 at 9. Borenstein notes that he did not address the hospital defendants' service question because the hospital defendants "had not yet overcome the first hurdle to carte blanche use any of [his protected health information] that they had previously provided to [him], pursuant to his HIPAA request." *Id.* at 2. Borenstein also requests a protective order "before further medical records are used or disclosed in this litigation." *Id.*

I grant Borenstein's motion and strike all the medical records included in the hospital defendants' response because they are not relevant to resolving the motion for reconsideration. As I explained above, none of the new evidence is relevant to assessing whether I should reconsider my determination that Borenstein did not sufficiently plead certain claims in the FAC. For this reason, I also did not consider any of the medical records or arguments about them. Such evidence was also not relevant to whether leave to amend would be futile because that inquiry does not involve evidence from opposing parties. *See Albrecht*, 845 F.2d at 195.

While I can usually disregard irrelevant exhibits, striking the medical records is appropriate here because their inclusion raises discovery and confidentiality questions that do not need to be resolved within the context of this motion for reconsideration. These issues are more

appropriately addressed through the discovery process and by protective order. I therefore strike ECF Nos. 171 and 171-3.

**IV. Motion to Redact, Seal, and Authorize Service (ECF No. 170)**

Under Local Rule IA 10-5(a), documents filed under seal must be accompanied by a motion to file those documents under seal. Documents filed under seal must be served on the opposing attorneys, or the party must provide an affidavit showing good cause as to why they have not been served. LR IA 10-5(c), (d). When the hospital defendants filed their response to the motion for reconsideration, they filed a redacted version (ECF No. 169) and a sealed, unredacted version that included Borenstein's medical records (ECF No. 171). Their accompanying motion requests an order permitting them to file the redacted response, sealing their unredacted version and the medical records contained in Exhibit 2, and allowing them to serve on the other defendants the unredacted response so that they can comply with LR IA 10-5(d).

I grant the motion in part, to the extent that it seeks leave to file a redacted response. Because I have stricken the medical records and the unredacted response, the motion to seal and to allow service on the other defendants is denied as moot.

**V. CONCLUSION**

I THEREFORE ORDER that Brian Borenstein's second request for an extension of time **(ECF No. 175) is GRANTED.**

I FURTHER ORDER that Brian Borenstein's first request for an extension of time **(ECF No. 174) is DENIED AS MOOT.**

I FURTHER ORDER that Brian Borenstein's motion for reconsideration **(ECF No. 158) is DENIED.**

I FURTHER ORDER that the deadline for filing a second amended complaint is extended to August 23, 2021.

I FURTHER ORDER that Brian Borenstein's motion to strike **(ECF No. 185) is GRANTED. I order the clerk of the court to strike ECF Nos. 171 and 171-3.**

I FURTHER ORDER that Sunrise Hospital and Medical Center, LLC and Ulrike Pasternak's motion to redact their response, seal Exhibit 2 of their response, and authorize compliance with LR IA 10-5(d) **(ECF No. 170) is GRANTED IN PART**. I grant the motion to redact but I deny as moot the requests to seal and to authorize service of the unredacted response to the other defendants.

DATED this 5th day of August, 2021.

                                                                                      ANDREW P. GORDON
                                                                                      UNITED STATES DISTRICT JUDGE