1

2

3

4                          **UNITED STATES DISTRICT COURT**

5                                **DISTRICT OF NEVADA**

6   BRIAN BORENSTEIN,

7            Plaintiff(s),                              Case No. 2:19-cv-00985-CDS-NJK

8   v.                                                              **Order**

9   THE ANIMAL FOUNDATION, et al.,                        [Docket Nos. 257, 258]

10           Defendant(s).

11          Pending before the Court are Plaintiff Brian Borenstein's motion to compel discovery and

12  motion for attorneys' fees.  Docket No. 257; Docket No. 258.  Defendant The Animal Foundation

13  (TAF) filed responses in opposition.  Docket No. 261;[1] Docket No. 265.  Plaintiff filed replies.

14  Docket No. 264; Docket No. 267.  The motions are properly resolved without a hearing.  *See* Local

15  Rule 78-1.  For the reasons discussed more fully below, the motion to compel and the motion for

16  attorneys' fees are both **DENIED**.

17  **I.       BACKGROUND**

18          Plaintiff adopted a purported service dog, Mana, from a shelter and trained the dog to assist

19  him with tasks that are difficult due to his disabilities.[2]  While Plaintiff was hospitalized after a

20  heart attack, Plaintiff informed the staff at Sunrise Hospital and Medical Center, LLC (Sunrise

21  Hospital) that he had left Mana in his car and that he had no one to take care of the dog.  The

22  Sunrise Hospital staff called Clark County Animal Control (CCAC) to pick up Mana, and the

23

24          [1] Plaintiff invites the Court to reject this opposition in its entirety because it was filed at
25  12:05 a.m. on August 2, 2022, as opposed to 11:59 p.m. on August 1, 2022.  *See* Docket No. 264
    at 2-3.  Counsel must strive to meet clear deadlines, but the Court will not adjudicate this motion
26  on a technicality based on a six-minute delay in filing this brief.  *Cf. V5 Techs. v. Switch, Ltd.*,
    2018 WL 5291853, at *1 n.2 (D. Nev. July 19, 2018).

27          [2] The Court provides a relatively brief background derived from the prior recitation of the
    facts by United States District Judge Andrew P. Gordon.  *See Borenstein v. Animal Found.*, 526
28  F. Supp. 3d 820, 832-35 (D. Nev. 2021), *recon. denied*, 2021 WL 3472190 (D. Nev. Aug. 5, 2021).

1   officers placed Mana at a shelter run by TAF for a ten-day hold.  Plaintiff alleges that while he

2   was still hospitalized, he contacted CCAC and TAF numerous times to ask for a hold extension

3   for Mana but they were unresponsive.  After roughly 18 days, TAF lifted the hold on Mana and he

4   was adopted shortly thereafter.  When Plaintiff tried to claim Mana after leaving the hospital, he

5   was told it was too late.

6       Plaintiff filed this lawsuit and contacted various public and private officials in the

7   community for assistance in reclaiming Mana.  TAF then refused to adopt a new animal to Plaintiff.

8   Henderson Animal Shelter also refused to adopt to Plaintiff, telling him that TAF created an

9   electronic warning telling other shelters in Clark County not to adopt to him.

10      The parties are currently before the Court on Plaintiff's motion to compel TAF to provide

11  discovery responses that identify Mana's new adopter(s).  Docket No. 257.

12  **II.      MOTION TO COMPEL**

13      A.      STANDARDS

14      "The discovery process in theory should be cooperative and largely unsupervised by the

15  district court."  *Sali v. Corona Reg'l Med. Ctr.*, 884 F.3d 1218, 1219 (9th Cir. 2018).  When an

16  amicable resolution to a discovery dispute cannot be attained, however, a party seeking discovery

17  may move the Court to issue an order compelling that discovery.  Fed. R. Civ. P. 37(a).  The party

18  seeking to avoid discovery bears the burden of showing why that discovery should not be

19  permitted.  *V5 Techs. v. Switch, Ltd.*, 334 F.R.D. 306, 309 (D. Nev. 2019).  "If the motion [to

20  compel] is denied, the court may issue any protective order authorized under Rule 26(c)."  Fed. R.

21  Civ. P. 37(a)(5)(B).[3]

22      "[B]road discretion is vested in the trial court to permit or deny discovery."  *Hallett v.*

23  *Morgan*, 296 F.3d 732, 751 (9th Cir. 2002).  "Rule 26 vests the [district court] with broad discretion

24  to tailor discovery narrowly."  *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998).

25  _____

26      [3] Plaintiff argues that TAF cannot seek a protective order in response to Plaintiff's motion
    to compel.  Docket No. 264 at 5.  The rules expressly contemplate otherwise.  Fed. R. Civ. P.
27  37(a)(5)(B) ("If the motion [to compel] is denied, the court may issue any protective order
    authorized under Rule 26(c)"); *see also* Fed. R. Civ. P. 26(c)(1)(A) (a court may enter a protective
    order "forbidding the disclosure or discovery"); Fed. R. Civ. P. 26(c)(1)(C) ( a court may enter a
28  protective order "forbidding inquiry into certain matters").

1    B.    ANALYSIS

2        The parties are before the Court on a discovery dispute.  Plaintiff served discovery aimed

3    at requiring TAF to identify the new adopter(s) of Mana.  TAF has resisted doing so on a variety

4    of grounds, including that it is entitled to a protective order from this discovery given important

5    public policy implications.[4]  TAF has the better argument.

6        The policy implications of this discovery are significant.  Those concerns have been

7    articulated at some length in published decisions issued in other jurisdictions.  *See Feger v.*

8    *Warwick Animal Shelter*, 59 A.D. 68, 71 (N.Y. App. 2008); *Johnston v. Atlanta Humane Soc.*, 326

9    S.E.2d 585, 587-88 (Ga. App. 1985); *see also Lamare v. N. Country Animal League*, 743 A.2d

10   598, 604 (Vt. 1999) (agreeing with the policy reasoning expressed in *Johnston*).  TAF and other

11   similar organizations provide temporary housing for vulnerable animals.  Space exists for animals

12   at TAF when members of the public adopt the animals already there.  Hence, a key ingredient in

13   the success of TAF's mission is to attract potential adopters to its current animal population.  The

14   allure of adopting an animal would be dulled significantly if would-be adopters face the risk of

15   being dragged into litigation or being otherwise harassed.  The existence of fewer adopters, in turn,

16   leaves less available space for new animals to be housed at TAF.[5]  Hence, creating a risk of

17   litigation and harassment for would-be adopters, from which they may be reluctant to adopt,

18   threatens to collapse the entire enterprise of rescuing vulnerable animals so that they can be

19   coupled with humans in permanent homes.  Not surprisingly given these considerations, Clark

20   County implemented regulations aimed at providing the clean transfer of animals to new adopters.

21   *See, e.g.*, *Borenstein*, 526 F. Supp. 3d at 836 (addressing regulatory scheme).

22       Several appellate courts have concluded that allowing discovery into the identity of an

23   animal's adopter is antithetical to these important policy objectives.  *Feger*, 59 A.D. at 71-72

---

24

25   [4] This case has a lengthy history, but the undersigned was only assigned to it on July 12,
     2022.  Docket No. 253.  Although decisions in this case have previously noted that "sound policy
26   reasons underlie the practice of protecting the privacy of animal adopters," *Borenstein v. Lead
     Animal Shelter Animal Found.*, 2020 WL 7324644, at *1 (D. Nev. May 5, 2020) (Gordon, J.), the
27   Court has not squarely resolved this dispute for purposes of general discovery.

28   [5] At least some animal organizations may address such overcrowding by resorting to
     euthanasia.  *See id.* at 71-72.

1  (affirming discovery ruling preventing disclosure in discovery of new adopter's identity); *Lamare*,

2  743 A.2d at 604 (Vt. 1999) (same); *Johnston*, 326 S.E.2d at 587-88 (same).[6]  This Court similarly

3  agrees that these are significant considerations that militate strongly against allowing discovery of

4  an animal's new adopters.

5       Moreover, although Plaintiff casts the information at issue here as critical to his entire case,

6  *see, e.g.*, Docket No. 257 at 6-11, the Court is not persuaded that the identity of Mana's adopter(s)

7  is so central to the resolution of this case.  Plaintiff poses a series of questions that he contends the

8  discovery of Mana's adopter(s) may help in some way answer.  *See* Docket No. 257 at 7-8.  While

9  the Court assumes for purposes of this order that the identity of Mana's adopter(s) meets the broad

10  definition of relevance for discovery purposes, *V5 Technologies*, 334 F.R.D. at 309,[7] the Court

11  agrees with TAF that the series of questions to which Plaintiff asserts this discovery is pertinent

12  seems to indicate that Plaintiff hopes to use this information largely as a means to construct the

13  boat from which to conduct a fishing expedition, *see* Docket No. 261 at 5.  The Court will not

14  allow discovery for that purpose, *see Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1072 (9th Cir. 2004),

15  particularly given the extraordinary burden on TAF in risking its mission to provide the

16  information, *see* Fed. R. Civ. P. 26(b)(1) (courts consider whether the burden of providing

17  discovery outweighs its likely benefit).  The Court also agrees with TAF that information pertinent

18  to the questions Plaintiff posed can be obtained through other, less problematic means, including

19  from those who are already named parties in this case.  *See* Docket No. 261 at 2-5; *see also* Fed.

20  R. Civ. P. 26(b)(2)(C).

21       The Court is unpersuaded by Plaintiff's contrary positions.  In contrast to the published

22  appellate decisions relied upon by TAF, Plaintiff has not identified any case allowing discovery

23  into a new adopter's identity.  *See* Docket No. 257 at 4 n.1.[8]  Instead, Plaintiff resorts to trying to

24  _____

25  [6] Neither party has cited federal case law analyzing this issue under the Federal Rules of
Civil Procedure.

26  [7] TAF disputes relevance.  Docket No. 261 at 4-5.  In light of the ruling made herein, the
Corut assumes without deciding that the discovery meets the broad definition of relevance for
27  discovery purposes.

28  [8] The closest that Plaintiff gets is an unpublished trial court decision requiring the
disclosure of the identity of a rescue organization.  *See McCurrie v. City of N.Y.*, 2022 N.Y. Misc.

1   diminish the persuasive value of the cases cited by TAF.  These efforts fail.  For example, Plaintiff

2   argues that *Lamare* is of little persuasive value because it does not include extensive analysis.

3   Docket No. 264 at 6.  The Supreme Court of Vermont did not include extensive analysis because

4   it thought the issue was so clear cut that its ruling "require[d] little discussion" and it expressly

5   agreed with the public policy analysis in *Johnston*.  *Lamare*, 743 A.2d at 604.  That the court felt

6   it was obvious that the lower court did not err in denying the discovery sought is not a fact working

7   in Plaintiff's favor here.  Plaintiff also argues that in *Lamare* "[i]t appears that the adoptive owner

8   was known and sued; thus the discovery of the adopter's identity was not at issue."  Docket No.

9   264 at 6.  The Court has located no support for Plaintiff's reading of that decision.  The new

10   adopters were named *as doe defendants* and referred to as such throughout the decision.  *See, e.g.*,

11   *id.* at 600.  Indeed, the trial court prohibited the disclosure of the identities of these doe defendants,

12   *see, e.g.*, *id.* ("When defendants refused to disclose the identity of the Does through interrogatories,

13   plaintiffs moved to compel disclosure.  Defendants, in response, moved for a protective order to

14   protect the Does' identity.  After a hearing, the court denied plaintiffs' motion to compel"), which

15   the Supreme Court of Vermont affirmed on appeal, *id.* at 604.  From all accounts, the identity of

16   the adopters remained unknown given these rulings.

17          Plaintiff is even further off the mark in trying to discount the persuasive value of the *Feger*

18   decision, which Plaintiff contends is of little help to TAF here because it "permitted the plaintiff

19   to discover the identity of the *adopter*, if the adopter was an employee of the shelter or one of its

20   service providers or was employed by a particular law firm, all of whom the plaintiff alleged may

21   have been complicit in the theft of her cat."  Docket No. 264 at 6 (emphasis added).  Once again,

22   Plaintiff misreads that decision.  The *Feger* court flatly rejected any discovery into the identity of

23   the adopter.  59 A.D.3d at 71-72.  The portion of the decision to which Plaintiff refers contemplated

24   discovery into the identity of the animal's *donor* in very limited circumstances.  *Id.* at 72-73.[9]

25   _____

26   Lexis 1268, at *4-5 (N.Y. Sup. Ct. Mar. 11, 2022).  That court expressly distinguished the issue
    being decided from the issue of disclosing the name of an adopter.  *Id.*  That decision is not

27   instructive here.

28          [9] *Feger* involved a plaintiff seeking relief with respect to her cat "Kisses."  59 A.D.3d at
    69.  She believed a cat named "Lucy" was actually "Kisses," despite assurance from the defendant
    shelter that the cats were different.  *Id.*  The shelter refused to divulge the identity of either the

1    Plaintiff also attempts to distinguish these cases on various factual grounds.  For example,

2  Plaintiff makes much of the fact that Mana is a purported service animal, as opposed to a pet.  *See,*

3  *e.g.*, Docket No. 264 at 5, 7.  Plaintiff notes that the cases cited may have different circumstances

4  giving rise to the claims alleged, including some variations in the alleged conduct by the plaintiffs

5  or by the shelter defendant.  *See id.* at 5-7.  Importantly, Plaintiff has not explained why those

6  factual distinctions matter.  At bottom, these cases address the need to protect the identity of the

7  adopters on public policy grounds that are also directly implicated by the facts of this case.

8    Plaintiff next argues, for the first time in reply, that these state court cases cannot be applied

9  here because state privileges[10] should not be used to thwart federal causes of action.  Docket No.

10  264 at 7-8.  Plaintiff correctly quotes a decision explaining that federal courts should ensure that

11  states do not develop privilege doctrines to protect themselves from constitutional norms, *see*

12  Docket No. 264 at 7 (quoting *Kelly v. San Jose*, 114 F.R.D. 653, 655 (N.D. Cal. 1987)), but

13  Plaintiff conveniently omits the subsequent passage from that case:

14        None of this means, however, that federal courts should wholly
          ignore state laws, or rights recognized by state governments, when
15        analyzing privilege issues in civil rights cases. As a matter of
          comity, federal courts should attempt to ascertain what interests
16        inspire relevant state doctrine and should take into account the views
          of state authorities about the importance of those interests. When it
17        is clear that a desire to ward off civil rights plaintiffs played no role
          in the formulation of state privilege rules it would be irrational for a
18

19  adopter of Lucy or the donor of Lucy.  *Id.*  The *Feger* court flatly rejected any attempt to learn the
    identity of Lucy's new adopter.  *Id.* at 71 ("the Supreme Court providently exercised its discretion
20  in granting a protective order as to the identity of the adoptive owner" based on, *inter alia*, "public
    policy considerations").  The portion of the decision discussed by Plaintiff addresses whether to
21  allow disclosure of the identity of Lucy's donor, finding that such information should be revealed
    only in the very limited circumstance that the donor was an employee of the shelter, an employee
22  of a service provider of the shelter, or of a particular law firm.  *Id.* at 72-73.

23        [10] Plaintiff conflates issues of "privilege" with general discovery principles. TAF does not
    appear to be claiming a privilege.  *See* Docket No. 261.  The same result will be reached here
24  regardless of whether TAF's argument is construed as asserting a privilege. Privileged information
    is beyond the scope of allowable discovery, Fed. R. Civ. P. 26(b)(1), and a protective order may
25  issue to prevent that discovery, Fed. R. Civ. P. 26(b)(2)(C)(iii). Nonetheless, a court does not need
    to find information privileged to determine that it is not discoverable. Courts may deny discovery
26  in a number of additional scenarios, including when it:  causes annoyance, embarrassment,
    oppression, or undue burden, Fed. R. Civ. P. 26(c)(1); is disproportional to the needs of the case,
27  including weighing the burden of that discovery against its importance to the issues being litigated,
    Fed. R. Civ. P. 26(b)(1); and can be obtained from a more convenient source, Fed. R. Civ. P.
28  26(b)(2)(C).

1
2
3
4
5

> federal court to assume that it could learn nothing from state or local views about the severity of the problems that could be created if certain kinds of information were available to civil litigants. Likewise, federal courts generally should give some weight to privacy rights that are protected by state constitutions or state statutes. Of course, ultimate responsibility for deciding how much weight to ascribe to such interests, and how that weight compares with the significance of competing interests, must reside with the federal courts.

6 *Kelly*, 114 F.R.D. at 656 (citations omitted).  Indeed, the Ninth Circuit has expressly found that

7 "[s]tate law may provide a useful referent" on issues of privilege, even if it is not ultimately

8 controlling. *Breed v. U.S. Dist. Court for the N. Dist. of Cal.*, 542 F.2d 1114, 1115 (9th Cir. 1976).

9 To be clear, the Court herein is applying the federal discovery rules.  In so doing, the Court is by

10 no means barred from considering reasoned state court decisions as to the policy implications of

11 the discovery being sought.[11]

12       In short, there are weighty policy implications against allowing the discovery sought here.

13 Given those policy implications and the other considerations addressed above, the Court concludes

14 that Plaintiff is not entitled to obtain discovery on the identity of Mana's adopter(s).  Instead, the

15 Court issues a protective order preventing such discovery.

16 **III.    MOTION FOR ATTORNEYS' FEES**

17       Attorneys' fees sought in relation to a motion to compel are judged by, *inter alia*, whether

18 the movant actually succeeds in that underlying motion.  Fed. R. Civ. P. 37(a)(5)(A); *see also Big*

19 *City Dynasty v. FP Holdings, L.P.*, 336 F.R.D. 507, 513 (D. Nev. 2020) (noting that Rule 37(a)

20 creates a presumption for the award of attorneys' fees "to the party that prevails on a discovery

21 motion").  As Plaintiff did not prevail on the motion to compel, he is not entitled to fees under that

22 rule.

23

24
25
26
27
28

---

[11] Plaintiff casts TAF's conduct as nefarious and its discovery objection as an attempt to shield itself from liability. *See, e.g.*, Docket No. 264 at 8.  The policy considerations on which TAF relies, however, are clearly not manufactured to avoid liability. <u>As three appellate courts have concluded in published opinions</u>, these are important policy considerations to ensure that the animal rescue and adoption system does not collapse. *See, e.g.*, *Feger*, 59 A.D.3d at 71 ("We agree that allowing for disclosure [of adopters' identities] could lead to the collapse of what the Supreme Court called the 'animal adoption infrastructure'").  In the circumstances of this case, "it would be irrational for [this] court to assume that it could learn nothing from state or local views about the severity of the problems that could be created if certain kinds of information were available to civil litigants." *Kelly*, 114 F.R.D. at 656.

Plaintiff's motion for fees invokes Rule 37(d)(1)(A)(ii), which provides that a court may award fees when a party fails to serve an answer, objection, or written response to a discovery request.  *See* Docket No. 258 at 3.[12]  By Plaintiff's own admission, TAF served an objection. Docket No. 257 at 2-3.  As discussed at length above, that objection was valid and appropriate. The Court declines to award fees under Rule 37(d)(1)(A)(ii).

**IV.    CONCLUSION**

For the reasons discussed more fully above, the motion to compel and the motion for attorneys' fees are both **DENIED**.[13]

IT IS SO ORDERED.

Dated: August 24, 2022

_____
Nancy J. Koppe
United States Magistrate Judge

---

[12] Particularly when there exists a rule tailored to a particular issue, courts are generally reluctant to stretch other rules as potential bases to impose sanctions.  *See Tiberi v. CIGNA Ins. Co.*, 40 F.3d 110, 112 (5th Cir. 1994); *see also* 2 James Wm. Moore et al., MOORE'S FEDERAL PRACTICE, § 11.02[8] (3d ed.) ("it is preferable to use the more specifically tailored provisions in determining whether to impose sanctions" rather than resorting to more general reach of Rule 11). The Court assumes without deciding that Plaintiff may rely on Rule 37(d)(1)(A) in seeking attorneys' fees in relation to his motion to compel because the request fails at any rate.

[13] Plaintiff's counsel are cautioned that the arguments presented in this motion practice may have veered beyond zealous advocacy into the realm of improper lawyering.  The Court is cognizant that Plaintiff's counsel have taken on this case *pro bono*.  Nonetheless, counsel must ensure that they fulfill their obligations as officers of the Court moving forward.