UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

Brian Borenstein,

         Plaintiff

   v.

The Animal Foundation, et al.,

        Defendants

Case No. 2:19-cv-00985-CDS-NJK

**Order Resolving Defendants' Motions to Dismiss and Denying Plaintiff's Motion to File a Surreply**

[ECF Nos. 195, 197, 202, 209]

Plaintiff Brian Borenstein brings this lawsuit against various community entities and individuals, alleging that his purported service dog, Mana, was adopted out to another family without his consent while he was hospitalized in May 2019. Borenstein filed a second-amended complaint (SAC) on August 31, 2021. ECF No. 189. Defendants Sunrise Hospital and Medical Center, LLC; Clark County; Victor Zavala; Carly Scholten; and The Animal Foundation (TAF) all move to dismiss the SAC. ECF Nos. 195 (Sunrise Hospital), 197 (Clark County and Zavala), 202 (Scholten and TAF). Borenstein opposes all three motions and also moves for leave to file a surreply (ECF No. 209) in response to Clark County and Zavala's reply brief. For the reasons set forth in this order, I grant Sunrise Hospital's motion to dismiss in its entirety, I grant in part and deny in part the other two motions to dismiss, and I deny Borenstein's motion for leave to file a surreply.[1] I also deny TAF's request for relief under Nevada's anti-SLAPP statute.

I.    **Background**

Because the parties are familiar with the facts of this case, I do not restate them here. Instead, I adopt and incorporate the background information from United States District Court Judge Andrew P. Gordon's order ruling on the motions to dismiss the first-amended complaint

---

[1] I find that these motions are suitable for disposition without oral argument. *See* LR 78-1.

(FAC).[2] *See* ECF No. 143 at 2–6. Throughout this order, I address any factual allegations provided by the SAC (ECF No. 189) as necessary to resolve these motions.

## II.    Legal standard

The Federal Rules of Civil Procedure require a plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal is appropriate when a plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Id.*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that the defendant has acted unlawfully." *Id.* But "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id.* "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## III.    Discussion

   *a.    Borenstein does not state a plausible claim against Sunrise Hospital.*

Sunrise Hospital moves to dismiss the claims against it, arguing that Borenstein re-alleges the same negligence-based claims that were previously dismissed and rejected. ECF No.

---

[2] Judge Gordon presided over this case until it was administratively reassigned to me in April 2022. ECF No. 242.

195 at 4. Sunrise argues that the SAC should thus be dismissed with prejudice, as any amendment would be futile. *Id.* Borenstein's opposition to the dismissal motion argues that the allegations in the SAC differ from those in the FAC because the SAC focuses on Sunrise Hospital's failure to act as an advocate for him and alleges Sunrise's duties in the negligence context with more specificity. *See generally* ECF No. 201.

   i.      *The SAC fails to establish a negligence claim against Sunrise Hospital.*

To establish negligence in Nevada, a plaintiff must demonstrate by a preponderance of the evidence that: (1) the defendant owed the plaintiff a duty of care, (2) the defendant breached that duty, (3) the defendant's breach of duty was the legal cause of plaintiff's injuries, and (4) the plaintiff suffered damages. *DeBoer v. Sr. Bridges of Sparks Fam. Hosp.*, 282 P.3d 727, 732 (Nev. 2012). Foreseeability of harm is a predicate to establishing the element of duty (*Ashwood v. Clark Cnty.*, 930 P.2d 740, 743 (Nev. 1997)), and the existence of a "duty" is a question of law. *Butler ex rel. Biller v. Bayer*, 168 P.3d 1055, 1063 (Nev. 2007) (citing *Lee v. GNLV Corp.*, 22 P.3d 209, 212 (Nev. 2001)). Medical facilities have a duty to exercise reasonable care to avoid foreseeable harm when furnishing nonmedical services. *Szymborski v. Spring Mtn. Treatment Ctr.*, 403 P.3d 1280, 1284 (Nev. 2017).

As a threshold matter, I agree with and adopt Judge Gordon's reasoning and find that a duty may be established through bailment. *See* Order, ECF No. 143 at 11. The SAC alleges additional facts regarding Borenstein's assertion that a bailer-bailee relationship was created between him and Sunrise. ECF No. 189 at 3–4.[3] As noted in Judge Gordon's order, "a bailment exists when there is a "delivery of personal property by one person (the bailor) to another (the

---

[3] The SAC alleges that Sunrise Hospital staff agreed to act on Borenstein's behalf, based on his request to stay with Mana until Clark County Animal Control (CCAC) took possession of the dog. ECF No. 189 at 3. Borenstein then gave his car keys to Nurse Pasternak, who, in turn, handed them over to hospital security. *Id.* CCAC Officer Rachel Lund arrived at Sunrise to meet with Nurse Pasternak and the security officer standing near Borenstein's car. *Id.* They informed Officer Lund that Borenstein had been sedated and that Mana had been identified to them as Borenstein's service dog. *Id.* Officer Lund then removed Mana from the vehicle and placed Mana on a ten-day hold. *Id.* Nurse Pasternak then signed an impound card releasing Mana to CCAC under those conditions. *Id.*

bailee) who holds the property for a certain purpose under an express or implied-in-fact contract." *GCM Air Grp., LLC v. Chevron U.S.A., Inc.*, 2009 WL 10696479, at *6 (D. Nev. June 18, 2009), *aff'd in part, rev'd in part*, 386 F. App'x 717 (9th Cir. 2010) (unpublished opinion). While the additional language in the SAC makes the existence of a bailment a closer call, that determination becomes irrelevant based on the additional allegations in the complaint. When a bailee is entrusted with care and custody of goods, it becomes his duty at the end of the bailment to return the goods or show that their loss occurred without negligence on his part. *Kula v. Karat, Inc.*, 531 P.2d 1353, 1355 (Nev. 1975). The SAC alleges that Borenstein asked Sunrise **"medical personnel if they would call CCAC and request CCAC** to safeguard Mana while BORENSTEIN was hospitalized." ECF No. 189 (emphasis added). The SAC further alleges that Nurse Pasternak signed the CCAC impound card and **released Mana to CCAC**. ECF No. 158-3 at 3–4 (emphasis added); *see also* ECF No. 189 at ¶ 322 ("SUNRISE HOSPITAL agreed to act as BORENSTEIN'S agent to safeguard Mana **until CCAC arrived**.") (emphasis added). Thus, assuming arguendo that there was a bailment, the scope of the bailment was that Sunrise would provide temporary care for Mana and then release Mana to CCAC. Sunrise met its duty to exercise reasonable care in getting Mana to CCAC for Borenstein; Sunrise took *temporary* custody of Mana until Mana was surrendered to CCAC. There is no negligence alleged in the SAC as to Sunrise's actions because—to the extent that Sunrise had any duty, Sunrise sufficiently fulfilled it by releasing Mana to CCAC. Borenstein thus does not plausibly allege any breach and cannot make out a prima facie case for negligence.

While the SAC states that "SUNRISE HOSPITAL, acting through its officers, directors, supervisors, agents, and/or employees, **failed to ensure that Mana was safely kept until BORENSTEIN could reclaim him**, even after sedating, restraining, and involuntarily committing BORENSTEIN and transferring him to another hospital for psychiatric care," (ECF No. 143 at ¶ 97) (emphasis added), those were not the terms of the bailment. Borenstein's allegations presuppose a special duty onto Sunrise to care for Mana *after* he was released to a

third party. But "no duty is owed to control the dangerous conduct of another." *Sanchez v. Wal-Mart Stores*, 221 P.3d 1276, 1280 (Nev. 2009). Sunrise thus owed no duty to Borenstein to control CCAC's actions once CCAC had Mana. There is an exception to this rule when (1) "a special relationship exists between the parties . . . **and** (2) the harm created by the defendant's conduct is foreseeable." *Id.* at 1280–81 (emphasis added). But Borenstein has failed to demonstrate a special relationship between himself and Sunrise, instead merely asserting that "[i]mplicit in his surrender of Mana to the care and custody of SUNRISE HOSPITAL . . . was his expectation that [SUNRISE] would make efforts to ensure his property was safeguarded until BORENSTEIN" could reclaim Mana. ECF No. 189 at ¶ 317. But Borenstein provides no support for his assertion that past assistance from hospital personnel somehow creates an implicit duty that would contradict Sunrise's explicit promise to safeguard Mana until CCAC arrived.

Furthermore, the SAC fails to allege that CCAC's failure to extend the hold on Mana was foreseeable to Sunrise. Stated otherwise, Borenstein fails to address how Sunrise is responsible for what happened to Mana *after* CCAC took custody and control of him (at Borenstein's request). Borenstein also does not address how the transfer of Mana to CCAC was negligent. Instead, the SAC alleges that Sunrise should have notified North Vista hospital that Mana[4] was in the custody and control of a third party, and further that Sunrise should have called CCAC/TAF and requested an extension to Mana's hold. ECF No. 189 at ¶¶ 319–20. Borenstein cites no law in support of this argument. And while Borenstein concedes that it was not foreseeable to Sunrise that Mana's ten-day hold would be insufficient (ECF No. 201 at 13), he maintains that Sunrise's obligation to Borenstein and his property/medical needs did not end upon its surrender of Mana to CCAC. ECF No. 201 at 14. Borenstein's argument is flawed because it is premised on Sunrise owing a special duty to him, something he has not provided sufficient factual assertions to properly allege. Because duty is a required element of Borenstein's

---

[4] The SAC also states that Mana was "medically necessary property." That is a question of fact at issue in this case.

negligence and gross negligence claims, I dismiss both of his negligence claims against Sunrise Hospital without leave to amend.

        ii.      *The SAC fails to allege sufficient facts to support the claims for negligent training, supervision, and retention against Sunrise Hospital.*

In Nevada, an "employer has a duty to use reasonable care in the training, supervision, and retention of his or her employees to make sure that the employees are fit for their positions." *Hall v. SSF, Inc.*, 930 P.2d 94, 99 (Nev. 1996). The SAC broadly alleges that Sunrise Hospital's employees behaved "wrongfully" (ECF No. 201 at 15), and that Sunrise breached its duty of reasonable care when it negligently trained, hired, and retained employees. *See generally* ECF No. 189 at 61–63. Specifically, Borenstein alleges that Sunrise failed to train employees on how to safeguard Sunrise patients' property; how to comply with the Americans with Disabilities Act (ADA), Nevada anti-discrimination statutes, and Nevada's vulnerable persons statute;[5] and "other requirements," which resulted in injuries to him. *Id.* at 61. But the SAC does not identify which section of Sunrise's policies and procedures was used to negligently train, supervise, or retain employees. He likewise fails to identify what specific part of the ADA or Nevada statutes are at issue. Instead, the SAC simply advances legal conclusions couched as factual allegations. This is insufficient to state a claim against Sunrise. *See Colquhoun v. BHC Montevista Hosp., Inc.*, 2010 WL 2346607, at *3 (D. Nev. June 9, 2010) (stating that "the fact that an employee acts wrongfully does not in and of itself give rise to a claim for negligent hiring, training, or supervision"). Borenstein's opposition to the motion to dismiss is just as conclusory. *See generally* ECF No. 201 at 15–16.

Based on the foregoing, Sunrise's motion to dismiss is granted. And because there are no remaining claims against the hospital, I also dismiss Borenstein's request for special damages against it. The SAC represents Borenstein's second attempt at amending his complaint in a case

---

[5] I agree with Judge Gordon's determination that NRS § 41.1395(1), Nevada's vulnerable person statute, allows for special damages only and is not an independent claim. *See* ECF No. 143 at 14 (citing *Doe v. Clark Cnty. Sch. Dist.*, No. 2016 WL 4432683, at *13 (D. Nev. Aug. 18, 2016)).

that has been pending for nearly three years. Consequently, I will not allow leave to amend on the claims against Sunrise because it appears that amendment would be futile.

      *b.  Clark County and Zavala's motion to dismiss the SAC (ECF No. 197)*

Borenstein alleges five § 1983 claims against Clark County, including (1) a violation of his right to substantive due process, (2) violation of equal protection, (3) violation of procedural due process, (4) an unreasonable search and seizure, and (5) an unjust public taking without compensation. ECF No. 189 at 32–42. He also brings various discrimination claims under the ADA against CCAC and discrimination claims under Nevada law against both CCAC and Zavala, in his individual capacity. *Id.* at 42–52. Clark County and Zavala move to dismiss all claims against them (ECF No. 197), which Borenstein opposes (ECF No. 206). I dismiss without prejudice his § 1983 claims before turning my analysis to his claims of discrimination.

          *i.  Borenstein has not established a basis for municipal liability against Clark County.*

CCAC argues that Borenstein's § 1983 claims against the county should be dismissed because Borenstein cannot establish a theory of municipal liability under which Clark County could be held liable. ECF No. 197 at 5–6. Borenstein responds that he has established municipal liability. ECF No. 206 at 5–6. Borenstein also contends that certain claims should be permitted to proceed because Judge Gordon did not dismiss them in his order disposing of the motions to dismiss the FAC. I consider this argument unpersuasive.[6]

---

[6] Throughout Borenstein's responses to the three motions to dismiss the SAC, he relies on Judge Gordon's order, which was issued in relation to the motions to dismiss the FAC. Borenstein also uses the order to justify his decision not to change the overbroad, and often confusing, language in his complaint. Borenstein is reminded that the court can consider only what is in the operative complaint when resolving Rule 12(b)(6) motions. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). Typically, if a court considers more than the allegations in the complaint, the motion is converted into a Federal Rule of Civil Procedure 56 ("Rule 56") motion for summary judgment. *See* Fed. R. Civ. P. 12(d). To the extent that Borenstein is urging me to apply the "law-of-the-case doctrine," I decline to do so, as that is applicable "when a court decides upon a rule of law, [and] that decision should continue to govern the same issues in subsequent stages in the same case." *Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1042 (9th Cir. 2018) (quoting *Musacchio v. United States*, 577 U.S. 237, 245 (2016)). But, as the Ninth Circuit held in *Askins*, when a plaintiff files an amended complaint, the law-of-the-case doctrine does not apply because the amended complaint is a new complaint which may include additional facts and claims that are different from the original complaint, requiring a new determination by the court. *Id.* at 1043. Thus, I am free to

It is well established that § 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144, n.3 (1979). A local government may be sued under § 1983 only under certain circumstances. *Monell v. NYC Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). To establish municipal liability, Borenstein must plausibly allege that "(1) he was deprived of a constitutional right; (2) the municipality had a policy; (3) the policy amounted to deliberate indifference to [Borenstein's] constitutional right[s]; and (4) the policy was the moving force behind the constitutional violation[s]." *Lockett v. County of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020). The policy can be an official policy, a "pervasive practice or custom," a failure to train or supervise, or an "act by a final policymaker." *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 602–03 (9th Cir. 2019). Liability under a theory of respondeat superior is insufficient to confer § 1983 municipal liability. *Id.* at 603.

Municipal liability thus only attaches when execution of a government's policy or custom inflicts the plaintiff's injury. *See Monell*, 436 U.S. at 694; *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 403 (1997). A "policy" is a "deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Fogel v. Collins*, 531 F.3d 824, 834 (9th Cir. 2008). A "custom" for purposes of municipal liability is a "widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law." *St Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (internal citations and quotations omitted). The federal pleading rules for municipal liability claims "must identify the policy/custom, explain how the specific policy/custom was deficient, how the policy/custom caused plaintiff harm, and how the policy/custom amounted to deliberate indifference (i.e., how the deficiency was obvious and the

---

determine if the amended complaint is substantially the same as the initial complaint and to determine whether or not to follow the same reasoning. *Id.*

constitutional injury was likely to occur." *Jones v. County of Sacramento*, 2023 WL 2278562, at *7 (E.D. Cal. Feb. 28, 2023) (citing *Young v. City of Visalia*, 687 F. Supp. 2d 1141, 1149 (E.D. Cal. 2009)).

I find that Borenstein has not sufficiently pled municipal liability against Clark County; thus, his claims brought under § 1983 cannot proceed.[7] As to the first element of municipal liability, Borenstein plausibly alleges deprivation of multiple constitutional rights. *See generally* ECF No. 189 at 31–42. As to the second element, he alleges that the policies or customs at issue include the arbitrary and capricious enforcement of "Clark County Title 10 Animal Ordinance, the ADA, and the State Discrimination and Vulnerable Persons Statute, thereby resulting in a permanent, widespread . . . practice or custom constituting the standard operating procedures of CCAC and TAF." ECF No. 189 at 33. But he does not detail with specificity either how the policies amounted to deliberate indifference to his constitutional rights or how the policies were the moving forces behind the constitutional violations.

For example, Borenstein's claim for a violation of his substantive due process rights merely alleges that CCAC "acted intentionally and/or with callous and reckless disregard for [Borenstein's] constitutional rights and engaged in conduct that shocks the conscience." ECF No. 189 at 33. He does not explain what the "standard operating procedures" of CCAC and TAF were; how those standards amounted to deliberate indifference to his constitutional rights; or whether the alleged "standard operating procedures" were the forces behind the constitutional violations. "Allegations that there was a 'policy' . . . based on nothing more than the fact that something bad happened [are] insufficient under [§ 1983]: otherwise[,] municipal liability under § 1983 will collapse into respondeat superior." *Lundy v. Pierce Cnty. Sheriff's Dep't*, 2023 WL

---

[7] I also note here that the Federal Rules of Civil Procedure require that claims must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2) and that each allegation in a pleading "must be simple, concise, and direct," Fed. R. Civ. P. 8(d)(1). Borenstein's SAC does not contain short and plain statements of his claims, nor are his allegations simple, concise, or direct. Borenstein's allegations are often repetitive boilerplate accusations that span multiple clauses in long sentences. If he wishes to amend his complaint further, he is reminded to keep in mind that concise allegations help to focus argument regarding each individual claim later in the litigation.

2242069, at *4 (W.D. Wash. Feb. 27, 2023) (citing *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). Furthermore, "[l]iability for improper custom **may not be predicated on isolated or sporadic incidents**; it must be founded upon practices of sufficient duration, frequency, and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gate*, 99 F.3d 911, 918 (9th Cir. 1996). The Ninth Circuit has held that a single incident will not suffice to show a policy. *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999). Put simply, Borenstein has not met his burden in pleading the elements of municipal liability beyond "threadbare recitals of the elements of [his] cause[s] of action." *Iqbal*, 556 U.S. at 678. That does not suffice to survive a motion to dismiss. *Id.* Consequently, I dismiss without prejudice Borenstein's claims against CCAC brought under § 1983 (the first through fifth claims), with leave to amend.

> ii.     *The seventh claim alleging unlawful discrimination under the ADA and the Rehabilitation Act is insufficiently pled.*

Borenstein alleges that CCAC unlawfully discriminated against him based on his disabilities, thus violating the ADA and the Rehabilitation Act. CCAC moves to dismiss this claim, arguing that the SAC is insufficiently pled, the complaint improperly imputes TAF's potential liability onto CCAC, and that Borenstein's mere allegation of an agency relationship is insufficient for Clark County to be held liable for TAF's actions. ECF No. 197 at 13. Again, Borenstein relies on Judge Gordon's order ruling on the motions to dismiss the FAC, argues that the allegations (related to the ADA and Rehabilitation Act claims) in the SAC are "nearly identical" to those in the FAC, and concludes that I should deny CCAC's motion.[8] ECF No. 206 at 17.

In order to establish a Title II ADA violation, a plaintiff must allege three elements. First, that he is a "qualified individual with a disability." *Duvall v. County of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001) (citing *Weinreich v. LA Cnty. Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997)). Second, that he was "either excluded from participation in or denied the benefits of a public

---

[8] For the reasons described *supra* n.4, I again find this argument unpersuasive.

entity's services, programs, or activities, or was otherwise discriminated against by the public entity." *Id.* Finally, a plaintiff must allege that "such exclusion, denial of benefits, or discrimination was by reason of his disability." *Id.* An organization that receives federal funds violates § 504 of the Rehabilitation Act if it denies a qualified individual with a disability a reasonable accommodation that the individual needs in order to enjoy meaningful access to the benefits of public services. *Alexander v. Choate*, 469 U.S. 287, 301–02 (1985).

Borenstein's ADA and Rehabilitation Act claims are all based on CCAC's alleged failure to ensure that TAF returned Mana to Borenstein. *See* ECF No. 189 at ¶ 268 (describing the eleven alleged instances of discrimination). Municipalities like Clark County are obligated to ensure that their contractors comply with the ADA in providing government services. *See Castle v. Eurofresh, Inc.*, 731 F.3d 901, 910 (9th Cir. 2013) ("Title II's obligations apply to public entities regardless of how those entities [choose] to provide or operate their programs and benefits.") (citing *Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1065 (9th Cir. 2010)).

Again, Borenstein fails to meet the elements of his ADA and Rehabilitation Act claims because he cannot connect his disability to the conduct at issue. CCAC does not dispute that Borenstein had a disability, but it contends that TAF's actions may not be imputed onto CCAC without further allegations describing the relationship between the two entities. ECF No. 197 at 13. Even assuming arguendo that CCAC could be held liable for TAF's actions, Borenstein has not demonstrated that he was excluded from participation in TAF's services or denied the benefits of those services *because* of his disability, as is required by the ADA. The mere allegations that he was disabled and denied the benefits of TAF's services are not necessarily related without some evidence of causation. I thus dismiss without prejudice Borenstein's ADA claim against CCAC.

Borenstein's Rehabilitation Act claim fares no better. He states that he was prevented from obtaining a reasonable accommodation—to hold Mana for a sufficient period of time while he was incapacitated—but provides no argument as to how that accommodation would have

been reasonable. "Reasonable accommodation does not require an organization to make fundamental or substantial alterations to its programs." *Mark H. v. Hamamoto*, 620 F.3d 1090, 1098 (9th Cir. 2010) (citation omitted). Reasonableness "depends on the individual circumstances of each case, and requires a fact-specific, individualized analysis of the disabled individual's circumstances and the accommodations that might allow him to [enjoy meaningful access to the program.]" *Vinson v. Thomas*, 288 F.3d 1145, 1154 (9th Cir. 2002) (internal citation and quotation marks omitted). An accommodation is reasonable if it is "reasonable on its face, i.e., ordinarily or in the run of cases." *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 402 (2002). I have already determined that Mana was lawfully transferred to TAF, a ruling which I will not disturb at this time. Allegations that CCAC needed to intervene and should have required TAF to hold Mana for a lengthier period of time, when Mana was no longer Borenstein's property, are not reasonable. I thus also dismiss Borenstein's Rehabilitation Act claim without prejudice and with leave to amend.

> iii.   *Borenstein adequately pleads a claim for unlawful discrimination, harassment, and retaliation based on his disability.*

The ADA is expansive and prohibits retaliation against an individual opposing any act or practice made unlawful by the ADA. 42 U.S.C. § 12203(a). The SAC alleges that TAF placed an electronic warning in its database, warning other animal shelters and agencies not to permit Borenstein to adopt a dog, in retaliation for his bringing of this suit. *See generally* ECF No. 189 at ¶¶ 184–93. The SAC also alleges that "CCAC acquiesced in and ratified the decisions and actions made by its officers, directors, managers, supervisors, agents, employees, and/or government contractors, including . . . TAF." *Id.* at ¶ 5.

CCAC moves to dismiss this claim, arguing that there are insufficient allegations in the complaint to establish the agency relationship between CCAC and TAF and that the SAC improperly attempts to impute TAF's potential liability under the ADA onto Clark County. ECF No. 197 at 13–14. Borenstein responds that Clark County had a duty to monitor TAF's behavior

while TAF was performing governmental duties assigned to it as one of Clark County's government contractors. ECF No. 206 at 18–19. Borenstein further argues that because TAF retaliated against him for claiming that his rights were violated based on the governmental duties performed by TAF, CCAC should have rectified the violations, rather than ratifying them through inaction. *Id.*

CCAC may not have initially been aware, but Borenstein asserts that it eventually obtained notice of the electronic warning placed in the TAF database. ECF No. 207 at 18–19. Because he also alleges that CCAC had access to that notice (through both the documents filed in this litigation and through Zavala, who also became aware of the notice), I find that Borenstein has plausibly alleged that CCAC could be responsible for TAF's actions as they relate to the electronic notice. *See Lentini v. Calif. Ctr. for the Arts, Escondido*, 370 F.3d 837, 849 (9th Cir. 2004) (holding that an employee who served as Director of Center Sales and Event Services was accountable for the discriminatory treatment of a theater patron with a disability, because he "was in a position of authority, having the ability to instruct the Center staff on who could or could not be admitted to the theater"). So Borenstein may proceed on this claim.

          iv.    *Borenstein does not sufficiently allege a violation of Nevada Revised Statutes (NRS) § 426.790.*

Nevada's statute setting the penalties for interfering with a service dog, NRS § 426.790, provides that no person shall:

> Without legal justification, interfere with, or allow a dog or other animal the person owns, harbors or controls to interfere with, the use of a service animal or service animal in training by obstructing, intimidating or otherwise jeopardizing the safety of the service animal or service animal in training or the person using the service animal or service animal in training.

Borenstein alleges that, without legal justification, CCAC, Zavala, and others violated this statute when they failed to ensure that Mana was not repossessed by TAF, that the conversion interfered with his ability to use his service dog, and that the conversion threatened

his safety and well-being. ECF No. 189 at ¶ 297. Clark County and Zavala move to dismiss this claim, arguing that Judge Gordon already ruled on substantially similar language in the FAC.[9] ECF No. 197 at 14–15.

The statute prohibits interference that occurs "without legal justification." NRS § 426.790. CCAC and Zavala argue that they had legal justification to repossess Mana based on the Clark County Animal Ordinance. ECF No. 213 at 14. The parties cite no authority—and I can find none—interpreting the meaning of "without legal justification" in the context of this statute, so I turn to its plain meaning. *Mullner v. State*, 406 P.3d 473, 476 (Nev. 2017) ("A statute's plain meaning controls its interpretation."). In the absence of contrary authority, I find that NRS § 426.790 does not apply here, as the phrase "without legal justification" is unambiguous and prohibits only *unlawful interference* with a service animal. Judge Gordon allowed Borenstein to amend this claim if he could sufficiently plead facts to show that the defendants were not acting based on the ordinance. ECF No. 143 at 26. While Borenstein alleges that CCAC knows that TAF regularly acts outside of the plain language of the animal ordinance, such conclusory allegations are insufficient to demonstrate that it acted without legal justification. Furthermore, CCAC and Zavala seem to have acted in accordance with the ordinance (i.e., with legal justification in interfering with Mana), and Borenstein does not plead otherwise, despite Judge Gordon's ruling. Because I find further amendment on this claim would be futile, I dismiss Borenstein's tenth claim with prejudice.

> *v.     Borenstein fails to plausibly plead negligence or gross negligence.*

CCAC and Zavala seek to dismiss Borenstein's negligence claims based on their immunity from state-law claims. ECF No. 197 at 14–15 (citing NRS § 41.032 *et seq.*). The state retains immunity for its officers, employees, agencies, and political subdivisions for actions "[b]ased upon the exercise or performance or the failure to exercise or perform a discretionary

---

[9] While I previously addressed Borenstein's arguments relating to Judge Gordon's ruling on claims brought by the FAC, *supra* n.4, the same reasoning applies to defendants' arguments relying on Judge Gordon's prior ruling. I again find this argument unpersuasive.

function or duty . . . whether or not the discretion involved is abused." NRS § 41.032(2). As noted above, the allegations in the SAC demonstrate that both Clark County and Zavala acted in accordance with the animal ordinance, and thus negligence claims brought against them are precluded by immunity. Because Nevada law precludes suit against the state's agencies, officers, or political subdivisions when their actions are based upon "an act or omission of an officer . . . exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation is valid, if the statute or regulation has not been declared invalid by a court of competent jurisdiction," NRS § 41.032(1), I find that Borenstein has failed to adequately plead a case of negligence against CCAC and Zavala.

CCAC and Zavala seem to have followed the law (the Clark County Animal Ordinance) by impounding Mana and then rehoming him following a 72-hour waiting period. Borenstein contends that the defendants did not act in accordance with the ordinance because they impounded Mana based on actions not contemplated by the ordinance, ECF No. 206 at 21, but this argument improperly narrows the scope of the ordinance by mixing up "sufficient" and "necessary" conditions. Borenstein agrees that Mana was impounded but disagrees that the impoundment occurred under § 10.24.010 of the animal ordinance. *Compare* ECF No. 189 at ¶ C ("Mana was not impounded under § 10.24.010") *with id.* at ¶ E ("Mana was simply 'impounded,' pursuant to § 10.04.210"). Borenstein confuses the *sufficient* language for impoundment in the statute (stating that every dog that is at-large, unchipped, or violates any section of the ordinance shall be subject to impoundment) with *necessary* language (i.e., that a dog may *only* be impounded for the aforementioned reasons). Nevada law defines "impound" as "the act of taking or receiving into custody by the animal control officer any animal for the purpose of confinement in an animal shelter consistent with the provisions of this title." Clark Cnty. Code § 10.04.210.

Regardless of the justification behind impoundment, the ordinance states that an impounded animal unclaimed after the statutory period of 72 hours "shall" become the shelter's property. Clark Cnty. Code § 10.24.010. I find that CCAC and Zavala acted in accordance with

the Clark County Animal Ordinance and that Borenstein cannot make out a prima facie case for negligence against those defendants because his claim is barred by Nevada's provision of qualified immunity. Finding that amendment of this claim would be futile, I grant Clark County and Zavala's motion to dismiss this claim with prejudice.

> vi.   *The fifteenth claim, alleging intentional infliction of emotional distress against Clark County and Zavala, is dismissed.*

In Nevada, in order to establish a prima facie case of intentional infliction of emotional distress (IIED), a plaintiff must allege that a defendant's conduct be extreme and outrageous with either reckless disregard or intent to cause the emotional distress, and actual or proximate causation. *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998) (citing *Star v. Rabello*, 625 P.2d 90 (Nev. 1981)). The defendant's conduct must occur "outside all possible bounds of decency" and be regarded as "utterly intolerable in a civilized community." *Id.* Zavala argues that Borenstein fails to sufficiently allege extreme or outrageous conduct. ECF No. 197 at 16.

The allegations in the SAC set forth that Zavala and Borenstein knew each other from prior interactions involving Borenstein and his dog(s), and because of that, Zavala should have done more to help Borenstein with Mana. *See generally* ECF No. 189 at ¶¶ 364–67. While Borenstein has demonstrated that he experienced emotional distress, he implausibly alleges that virtually every action that the parties undertook was extreme and outrageous. *See id.* at 366. Borenstein fails to make "the kind of factual allegations that nudges [his] claims across the line from conceivable to plausible." *Eclectic Prop. E. v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014) (citing *Twombly*, 550 U.S. at 570) (internal quotation marks and alterations omitted). Specifically, "[w]hen faced with two possible explanations, only one of which can be true and only one of which results in liability, plaintiffs cannot offer allegations that are merely consistent with their favored explanation but are also consistent with the alternative explanation. Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, in order to render plaintiffs' allegations plausible." *In re Century Aluminum Co.*

*Secs. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013) (internal quotation marks and citations omitted).

Here, Borenstein offers no evidence that excludes the most likely explanation for CCAC and Zavala's conduct: that an animal control officer did his job to secure Mana and bring him safely to a shelter. Every accusation enveloped in this claim presumes some ill intent on the part of defendants, even CCAC's actions that seem to have focused on assisting Borenstein. For example, Borenstein alleges that CCAC "sen[t] a pretextual email to Borenstein, less than a day after his hospitalization, with instructions for reclaiming [M]ana, knowing that Borenstein was recently incapacitated, was unlikely to receive the email, and was most likely unable to act on it[.]" ECF No. 189 at ¶ 366B. Borenstein offers no evidence at all that the email was sent under pretextual circumstances with an awareness of his incapacity or an expectation that Borenstein would not act on it; rather, this claim fails to allege facts tending to exclude the possibility that the email was sent as a well-intended effort to provide Borenstein with information that might help him recover Mana. Borenstein adds that CCAC "disingenuously offer[ed] to extend the hold on Mana, with a timely request from Borenstein." *Id.* at ¶ 366G. But Borenstein offers no evidence that CCAC's offer was disingenuous, nor does he present facts which tend to exclude the possibility that, again, CCAC was acting in an effort to assist Borenstein and communicate with him. In sum, Borenstein fails to allege any factual matter that demonstrates extreme or outrageous conduct or tends to exclude the possibility that CCAC was trying to help Borenstein reunite with Mana; he simply relies on conclusory allegations of perceived malintent. Consequently, this claim fails, and I grant the motion to dismiss without prejudice and with leave to amend.

   c.  *TAF & Scholten's motion to dismiss (ECF No. 202)*[10]

TAF and Scholten (together, "the TAF Defendants") first argue that Borenstein's § 1983

---

[10] TAF and Scholten assert that Mana was not a service animal as is defined or contemplated by the ADA. ECF No. 229 at 2. They argue that Mana was an untrained emotional support animal that defense counsel "recharacterized" as a service animal following their appointment to this litigation. *Id.* At this juncture, I do not determine whether Mana was a service animal because at this point in the litigation, I must take all of Borenstein's well-pled factual allegations as true.

claims against them are improper because they did not act under the color of law. "When determining whether a private party acted under color of law, a court starts with the presumption that private conduct *does not* constitute state action." *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999). Action by private entities may be state action, however, if there is significant state involvement. *Howerton v. Gabica*, 708 F.2d 380, 382 (9th Cir. 1983). A claim against a private party under § 1983 can only succeed if the conduct of the private party is "fairly attributable to the [s]tate," and there was an agreement between the state and the private party to deprive a plaintiff of his constitutional rights. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936–37 (1982). There are at least four ways to identify when a private actor's conduct qualifies as state action for the purposes of § 1983: (1) the private actor performs a public function, (2) the private actor engages in joint activity with a state actor, (3) the private actor is subject to governmental compulsion or coercion, or (4) there is a governmental nexus with the private actor. *See Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003). I find that Borenstein has adequately pled that, insofar as TAF accepted Mana and held him for an indeterminate period of time, TAF was acting under the color of law.

"Under the public[-]function test, when private individuals or groups are endowed by the [s]tate with powers or functions governmental in nature, they become agencies or instrumentalities of the [s]tate and [are] subject to its constitutional limitations." *Id.* at 1093 (quoting *Lee v. Katz*, 276 F.3d 550, 553–54 (9th Cir. 2002)). The public-function test is satisfied only upon a showing that the function at issue is "both traditionally and exclusively governmental." *Id.* Borenstein's complaint does not allege that TAF undertook any actions that were traditionally and exclusively governmental. Borenstein's response to the motion to dismiss fails to do so either. I thus decline to find that TAF performed a public function.

The joint-action test examines whether the state has "insinuated itself into a position of interdependence with the private entity." *Kirtley*, 326 F.3d at 1093. The work of government contractors is state action when the government is "deeply intertwined" in the process. *Jensen v.*

*Lane Cnty.*, 222 F.3d 570, 575 (9th Cir. 2000). Borenstein's complaint sufficiently alleges that TAF is a government contractor, as it provides animal-shelter services to Clark County under a contract. ECF No. 189 at ¶ 4. Borenstein also alleges that TAF was clothed with statutory authority to receive and hold animals. *Id.* at ¶ 213. Borenstein's allegation of state action is supported by the fact that CCAC and TAF officials communicated with each other regarding the safe delivery of Mana to TAF and Mana's subsequent impoundment. *Id.* at ¶ 160–67. I thus find that TAF's actions in receiving and holding Mana constitute state action and this part of the claim may proceed.

However, I do not find that TAF's decision to place Borenstein on the "Do Not Adopt" list constitutes state action. Borenstein has failed to plead any facts which would allow me to infer that TAF's decision to place Borenstein on such a list was "deeply intertwined" with any government action or actors. Consequently, I limit my finding of state action for TAF to actions regarding the alleged taking and subsequent holding of Mana. Thus, the allegation of placing Mana on the "Do No Adopt" list may not proceed.

> i.   *TAF is entitled to a good-faith defense against Borenstein's first, second, third, and fifth claims arising under § 1983.*

TAF argues that it should be entitled to protection from Borenstein's § 1983 claims based on either qualified immunity or the good-faith defense. I find that, while qualified immunity does not apply here, the good-faith defense does. "The Supreme Court has held that private parties sued under 42 U.S.C. § 1983 cannot claim qualified immunity, but it has suggested in dicta that such parties might be able to assert a good faith defense to liability instead." *Danielson v. Inslee*, 945 F.3d 1096, 1099 (9th Cir. 2019) (citing *Wyatt v. Cole*, 504 U.S. 158, 168–69 (1992)). The Ninth Circuit has likewise held that private parties may, indeed, invoke such a defense. *Clement v. City of Glendale*, 518 F.3d 1090, 1096–97 (9th Cir. 2008). The good-faith defense is available to private entities and individuals because "private parties should be entitled to rely on binding judicial pronouncements and state law without concern that they will be held retroactively

liable for changing precedents." *Danielson*, 945 F.3d at 1100. Thus, a private party may avoid § 1983 liability when the challenged actions "appeared permissible under local ordinance and state law." *Clement*, 518 F.3d at 1097. I find that TAF has established that the good-faith defense applies to bar some—but not all—of Borenstein's § 1983 claims.

     *1. Borenstein does not plausibly plead a violation of substantive due process.*

   Borenstein's first claim, for violations of his substantive-due-process rights, alleges that TAF implemented the Clark County Animal Control Ordinance in an arbitrary and capricious manner. However, even taking Borenstein's allegation as true, TAF's actions in receiving and subsequently re-homing Mana appeared permissible under the animal ordinance. Borenstein argues that TAF arbitrarily extended the 72-hour shelter hold to 10 days, but it is unclear how that decision *negatively* impacted him. It seems that TAF extended the time for which Mana would remain in the shelter specifically so that Borenstein would have longer to collect him and could pick him up until the 10-day-limit had elapsed, at which point the shelter decided not to extend the hold further. Nevada law is very clear: TAF had an obligation to hold Mana for a period of at least 72 hours. Clark Cnty. Code § 10.24.010. "Any animal impounded shall be kept for a minimum term [of at least 72 hours] and, if unclaimed by the owner within such term, the animal **shall be released to and become the property of the contracted animal shelter.**" *Id.* at § 10.24.080(a). The mandatory language of Nevada law suggests that TAF was required to "release" Mana following its extension of the 72-hour hold to a 10-day hold. The good-faith defense thus bars Borenstein from suing TAF for acting in accordance with Clark County's Animal Ordinance. There are no facts that Borenstein can allege which would remedy the nature of this flaw in his argument, and I thus dismiss with prejudice Borenstein's substantive-due-process claim against TAF.

     *2. Borenstein does not plausibly plead a violation of equal protection.*

   Borenstein's second claim alleges that TAF violated his right to equal protection. He alleges that he was discriminated against because of his indigency and inability to pay shelter

fees. Again, however, TAF acted in accordance with the law and is entitled to the good-faith defense for its actions. Nevada law provides that "no dog . . . so impounded shall be released unless . . . there has been a performance of the following conditions: (a) Payment of charges and fees: There has been paid to the animal control officer all impound, board, and other charges and fees required by this title." Clark Cnty. Code § 10.24.090. The ordinance is instructive and commanding in the verbiage used; TAF did not have discretion to permit the release of Mana without Borenstein first paying the owed fees. Even assuming as true Borenstein's allegation that TAF occasionally released animals to Borenstein in the past without payment of fees, Borenstein cannot maintain a plausible case for an equal-protection violation when the impetus of the violation is denying to overlook an ordinance that TAF did not previously enforce. There are no facts that Borenstein can allege which would remedy the nature of this flaw in his argument, and I thus dismiss with prejudice Borenstein's equal-protection claim against TAF.

3. *Borenstein does not plausibly plead a violation of procedural due process.*

Borenstein's third claim alleges that TAF violated his right to procedural due process in two ways: (1) by refusing him pre- and post-deprivation remedies relevant to TAF's decision to re-home Mana after the 10-day hold, and (2) by refusing him post-deprivation remedies to challenge TAF's decision to place him on the "Do Not Adopt" list. As for the first claim, I find that the good-faith defense applies, as TAF complied with all relevant clauses of the Clark County Animal Ordinance in holding and adopting out Mana. Borenstein does not plausibly allege that TAF failed to act in accordance with the law; at best, he plausibly alleges that the ordinance were not applied as leniently to him as they could have been, given his disability. Consequently, the good-faith defense bars Borenstein from pursuing a procedural-due-process claim against TAF for its action in adopting Mana out following the time period prescribed by Nevada law.

However, Borenstein adequately pleads that TAF did not give him procedural due process following its placement of Borenstein on the "Do Not Adopt" list. TAF argues that this

claim should be dismissed, as it did not act under color of state law by placing him on such a list. As discussed supra, I agree. Borenstein states that the SAC alleges state action, but he does not specify which allegations among the 382 or so paragraphs in the complaint support that TAF acted under color of state law by placing Borenstein on the "Do Not Adopt" list. The simple fact that TAF's warning was visible to Clark County Animal Control officers is insufficient to allege that TAF drafted the warning at Clark County's behest. Borenstein's allegation that "if this [were] merely a private adoption by TAF that was not deeply entwined with the government, then there would be no need for" emails between TAF and CCAC, ECF No. 223 at 6, also fails to establish state action. Borenstein fails to plead essential elements of state action with respect to the "Do Not Adopt" list, and I thus dismiss his third claim. However, I do so without prejudice and with leave to amend, as Borenstein may be able to allege specific facts that allow me to draw the inference that TAF acted under color of state law when it placed Borenstein on the "Do Not Adopt" list.

### 4. *Borenstein plausibly pleads that TAF unreasonably seized Mana.*

Borenstein's fourth claim alleges that TAF effectuated an unreasonable seizure upon him when it obtained title to Mana and thereafter adopted him to new owners. TAF cannot have seized Mana from Borenstein twice; I liberally construe Borenstein's argument as alleging that TAF unreasonably seized Mana when it obtained title over him and, if it did not effectuate a seizure by obtaining title over Mana, it did unreasonably seize Mana when it ultimately re-homed him. I have already determined that TAF's actions in obtaining title to Mana and adopting him out complied with the mandatory language of the Clark County Animal Ordinance, but Borenstein asserts that the good-faith defense is not applicable here, as a local ordinance cannot otherwise justify Fourth Amendment deprivations. ECF No. 223 at 13 (citing ECF No. 206 at 13). The Ninth Circuit has held that "[t]he decision to impound pursuant to authority of a city ordinance and state statute does not, in and of itself, determine the reasonableness of [a] seizure under the Fourth Amendment." *Sandoval v. City of Sonoma*, 912 F.3d

509, 516 (9th Cir. 2018) (citing *Miranda v. City of Cornelius*, 429 F.3d 858, 864–65 (9th Cir. 2005)

("The question in this [c]ourt upon review of a state-approved . . . seizure is not whether the . . .

seizure[] was authorized by state law. The question is rather whether the [seizure] was

reasonable under the Fourth Amendment."). I agree with Borenstein that the relevant inquiry is

whether TAF's impoundment of Mana was reasonable.

"In evaluating whether the circumstances justified an official in acting without a

warrant, we review the totality of the circumstances." *Recchia v. City of L.A. Dep't of Animal Servs.*,

889 F.3d 553, 558 (9th Cir. 2018) (internal quotation marks and citation omitted). I find that the

totality of the circumstances in this instance indicate that Borenstein has plausibly alleged

sufficient facts to support an inference that TAF unreasonably seized Mana in spite of the

ordinance permitting (or in some cases, even mandating) TAF's actions.

> 5.   *Borenstein does not plausibly plead a private taking without compensation.*

Borenstein's fifth claim alleges that TAF effectuated a private taking of Mana without

compensating him. The Takings Clause of the Fifth Amendment of the United States

Constitution, made applicable to the states via the Fourteenth Amendment (*Lingle v. Chevron

U.S.A. Inc.*, 544 U.S. 528, 536 (2005)), provides that "private property [shall not] be taken for

public use, without just compensation." U.S. Const. amend. V. Borenstein fails to allege that

Mana was taken for public use, so this claim must be dismissed. Borenstein also alleges that

"[w]ith its assertion that Mana was not taken for public use, TAF has essentially admitted that

it . . . violated the takings clause." ECF No. 223 at 13. It is unclear how TAF's statement that it

took Mana, but not for public use, comprises an admission that it violated the takings clause.

"[I]t is only the taking's purpose, and not its mechanics . . . that matters in determining public

use." *Kelo v. City of New London*, 545 U.S. 469, 482 (2005) (citing *Haw. Hous. Auth. v. Midkiff*, 467 U.S.

229, 244 (1984)). Borenstein does not allege how TAF's alleged taking of Mana might constitute

public use. There are no facts that Borenstein can allege which would remedy the nature of this

flaw in his argument, and I thus dismiss with prejudice Borenstein's takings claim against TAF.

6.  *Borenstein does not plausibly plead First Amendment retaliation against TAF.*

As discussed at length supra, I do not find that Borenstein has sufficiently pled allegations that allow me to infer that TAF acted under the color of state law when it placed him on the "Do Not Adopt" list. I need not reiterate those points here. But because I find that Borenstein could amend his complaint to state plausible factual allegations allowing me to make such an inference, I dismiss this claim without prejudice and with leave to amend.

7.  *Borenstein adequately pleads his ADA and Rehabilitation Act claims.*

In order to set forth a prima face case under Title III, a plaintiff must establish that he was disabled within the meaning of the Act, that he was discriminated against on the basis of that disability, and that the defendant owns, leases or leases to, or operates a place of public accommodation. 42 U.S.C. § 12182(a).

The SAC contains sufficient allegations to establish a prima facie violation of the ADA. I do not disagree with TAF that the SAC reveals that TAF made accommodations, and Borenstein does not dispute that, but the question is whether those accommodations were reasonable. "The reasonableness of an accommodation is ordinarily a question of fact." *Lujan v. Pac. Mar. Ass'n*, 165 F.3d 738, 743 (9th Cir. 1999). Accordingly, this is an inappropriate determination for the court. TAF's motion to dismiss this claim is denied.

The motion to dismiss is denied, and Borenstein's request for injunctive relief, along with his requests for replevin and related relief, are likewise denied. Those requests were dismissed after Judge Gordon ruled on the motions to dismiss the FAC. Nothing has changed in the law in the interim, nor in the allegations in the SAC, that would warrant a different result. ECF No. 143 at 39–40. I therefore adopt Judge Gordon's reasoning here and dismiss that requested relief without leave to amend.

8.  *Borenstein adequately pleads a claim for ADA retaliation.*

TAF argues that Borenstein's claim for retaliation under the ADA cannot survive the burden-shifting framework established by *McDonnell Douglas Corporation v. Green*, 411 U.S. 792

(1973). ECF No. 202 at 14–15. "The prima facie case under *McDonnell Douglas*, however, is an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002). The Supreme Court "has never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss . . . [c]onsequently, the ordinary rules for assessing the sufficiency of a complaint apply." *Id.* at 511. As such, TAF's arguments regarding Borenstein's ADA retaliation claim do not provide any basis for dismissal. I thus deny TAF's motion to dismiss Borenstein's retaliation claim.

9.    *Borenstein fails to adequately plead his state-law claims.*

The TAF defendants move to dismiss the state-law claims, arguing that they acted with legal justification under the animal ordinance. ECF No. 202 at 10. Borenstein argues that because the SAC alleges the elements of a potential bailment or breach-of-contract claim, I should deny the motion to dismiss this claim. ECF No. 223 at 14.

But conclusory or formulaic recitations of a claim's elements do not alone suffice to survive a 12(b)(6) motion to dismiss for failure to state a claim. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Borenstein's allegations about a potential bailment are threadbare recitations of the elements of one. Assuming arguendo that a bailment existed as it relates to this case, it would have been between Borenstein and Clark County, as he allegedly established the bailment with CCAC officers, not with TAF. Accordingly, I find that Borenstein does not sufficiently plead a bailment relationship between himself and TAF such that TAF's actions needed to conform to some ulterior duty beyond the requirements of law. As I have already found that TAF's actions with respect to impounding Mana comported with the Clark County Animal Ordinance, I grant TAF's motion to dismiss the tenth and fourteenth claims with prejudice and without leave to amend.

                        *10.  Borenstein's negligence claim is insufficiently pled.*

TAF argues that it did not have a duty to hold Mana beyond the 10-day period as prescribed by the animal ordinance. The SAC alleges that TAF "had a duty to act in accordance with the Animal Ordinance." ECF No. 189 at ¶ 313. TAF's argument significantly narrows the scope of its duty as prescribed by Nevada law. Borenstein responds that TAF had a duty to hold Mana until he could reclaim the dog, especially because of his disability and age. He also argues that TAF had a heightened duty to communicate with him given the alleged bailment relationship between them. But Borenstein cites no authority to support his duty argument, nor his argument as to a heightened duty. And I have already found that there is no bailment relationship. Consequently, I dismiss this negligence claim with prejudice.

                    *11.  Borenstein adequately pleads a claim for negligent training, supervision, and retention.*

As noted above, Nevada imposes a duty on an "employer . . . to use reasonable care in the training, supervision, and retention of his or her employees to make sure that the employees are fit for their positions." *Hall*, 930 P.2d at 99. TAF argues that Borenstein must allege a physical harm in order to sustain this claim. ECF No. 202 at 21. Borenstein responds that the Nevada Supreme Court has never held physical harm be a requirement to maintain this claim and therefore avers that I should deny this motion.

Nevada law provides that an employee can be held liable for negligent supervision or training when the employee committed an actionable tort. *Husk v. Clark Cnty. Sch. Dist.*, 2009 WL 3189347 (Nev. 2009). But, as recognized in a recent Nevada Court of Appeals opinion and by another judge from this district, the question of whether a plaintiff must allege physical harm to pursue a claim for negligent training, supervision, and retention remains unsettled. *Russo v. Shac, LLC*, 498 P.3d 1289, at \*9 (Nev. Ct. App. Nov. 2021); *Ramirez v. Wynn Las Vegas, LLC*, 2022 WL 3715751, at \*11 (D. Nev. Aug. 29, 2022); *see also Robertson v. Wynn Las Vegas LLC*, 2010 WL 3168239, at \*3–5 (D. Nev. Aug. 9, 2010) (certifying the question to the Supreme Court of

1  Nevada), *Robertson v. Wynn Las Vegas LLC*, 373 P.3d 975, 2011 WL 3805921 at *1 (Nev.

2  2011) (withdrawing acceptance of certified question because court dismissed case on other

3  grounds).

4        In the absence of controlling state law, I must predict how the Nevada Supreme Court

5  would decide the issue. "Where the state's highest court has not decided an issue, the task of the

6  federal courts is to predict how the state high court would resolve it." *Dimidowich v. Bell & Howell*,

7  803 F.2d 1473, 1482 (9th Cir. 1986), modified at 810 F.2d 1517 (9th Cir. 1987) (citations omitted).

8  Nevada has recognized tort recovery for non-physical harm. *See, e.g., State, Univ. & Cmty. College Sys.*

9  *v. Sutton*, 120 Nev. 972, 989, 103 P.3d 8, 19 (2004) (holding that a plaintiff can recover "for all of

10  the natural and probable consequences of the wrong, including injury to the feelings from

11  humiliation, indignity, and disgrace to the person" in an action for breach of implied covenant of

12  good faith and fair dealing); *see also Russo*, 498 P.3d at 8–9 (discussing the tort of IIED and its

13  creation of a claim for negligent training, supervision, and retention). The *Russo* court declined to

14  "graft a physical harm requirement" onto the plaintiff's claim for negligent training, supervision,

15  and retention. *Id.* at 9.

16        Given *Russo* and other Nevada cases, I predict that the Nevada Supreme Court would not

17  require that a plaintiff allege physical harm to state a claim for negligent training and

18  supervision in Nevada. *See Chocolate Magic Las Vegas LLC v. Ford*, 2018 WL 473006 at *2–*3 (D.

19  Nev. Jan. 2018) (analyzing persuasive California and Restatement authority, as well as *Sadler v.*

20  *PacifiCare of Nev.*, 340 P.3d 1264 (Nev. 2014), which analyzed the injury requirement in Nevada

21  tort law, and predicted that physical harm is not necessary for a negligent-training-and-

22  supervision claim in Nevada). Consequently, I deny TAF's motion to dismiss this claim. The

23  allegations in the SAC are sufficient to establish a prima facie negligent-training-and-

24  supervision claim.

25

26

*d.   TAF's anti-SLAAP motion (ECF No. 202) is denied.*

TAF brings an anti-SLAAP motion requesting that all references to the "Do Not Adopt" memo be stricken from the SAC and that all claims or portions of claims relating to the memo in the SAC be dismissed with prejudice. ECF No. 202 at 25. Borenstein responds that TAF has failed to demonstrate that the memo is a communication falling within the purview of Nevada's anti-SLAAP statute and that the memo was not made in good faith.

"A SLAPP suit is a meritless lawsuit that a party initiates primarily to chill a defendant's exercise of his or her First Amendment free speech rights." *Stubbs v. Strickland*, 297 P.3d 326, 329 (Nev. 2013). Nevada's anti-SLAPP statute provides defendants with a procedural mechanism through which they may file a special motion to dismiss such a suit before incurring significant costs of litigation. NRS § 41.660(1); *see also Coker v. Sassone*, 432 P.3d 746, 748 (Nev. 2019) (describing anti-SLAPP motions). It immunizes from liability "[a] person who engages in a *good faith* communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern." NRS § 41.650 (emphasis added). Thus, for an anti-SLAPP motion to be granted, the court must first "[d]etermine whether the moving party has established, by a preponderance of the evidence, that the claim is based upon a good faith communication in furtherance of the right to petition . . . in direct connection with an issue of public concern." NRS § 41.660(3)(a); *Las Vegas Sands Corp. v. First Cagayan Leisure & Resort Corp.*, 2016 WL 4134523, at *3 (D. Nev. Aug. 2, 2016) (internal citation omitted). "The defendant's conduct is a good-faith communication if it falls within one of the four categories enumerated in NRS § 41.637 and is truthful or is made without knowledge of its falsehood." *LHF Prod., Inc. v. Kabala*, 2018 WL 4053324, *2 (D. Nev. Aug. 24, 2018) (internal quotation marks and citation omitted).

The four categories enumerated in NRS § 41.637 include:

> (1) Communication that is aimed at procuring any governmental or electoral action, result[,] or outcome; (2) Communication of information or a complaint to a [l]egislator, officer[,] or employee of the [f]ederal [g]overnment, this state[,] or a political subdivision of [Nevada], regarding a matter reasonably of concern to the respective governmental entity; (3) Written or oral statement made in direct connection with an issue under consideration by a [governmental body]; and (4) Communication made in direct connection with an issue of public interest in a place open to the public or in a public forum.

NRS § 41.637. If TAF, as the moving party, demonstrates that its claim is based upon one of those four categories, then the burden "shifts to the plaintiff to show 'with prima facie evidence a probability of prevailing on the claim.'" *Coker*, 432 P.3d at 749 (quoting *Shapiro v. Welt*, 389 P.3d 262, 267 (2017)). If TAF cannot meet that initial burden, then the inquiry ends.

Here, TAF contends that subsection two of the statute applies. But TAF fails to meet its initial burden of demonstrating that the memo placing Borenstein on the "Do Not Adopt" list constitutes a good-faith communication that would fall under NRS § 41.637(2). TAF argues that the memo "meets all of the criteria for protection under NRS [§] 41.637(2)" because it communicates truthful information to animal control officers about Borenstein's combativeness and animal impound history. ECF No. 202 at 22–23.

This determination turns on whether the memo was communicated internally to TAF employees or externally to some other entity, such as law enforcement. The subsection at issue requires that the communication be made to an employee of the state or one of its subdivisions and that the information was of reasonable concern to the targeted governmental entity. NRS § 41.637(2). In earlier briefing, TAF characterized "the memo [as] an internal note, **intended to be read by TAF employees, alerting TAF employees** of [p]laintiff's combativeness." ECF No. 133 at 9 (emphasis added). However, TAF has since changed its tune. Scholten now declares that the intended audience of the statements contained in the memo was much broader and that they were "made in good faith to alert TAF staff members and law enforcement animal control officers of Mr. Borenstein's combativeness in order to protect the safety and welfare of shelter

1   personnel and animals." ECF No. 202-1 at 6.

2       Scholten's declaration further contradicts TAF's statements in its motion to dismiss. For

3   example, TAF states that Borenstein's behavior "caused [the TAF defendants] to take actions

4   they reasonably believed were necessary to protect the safety of those on campus, including the

5   creation of [the Do Not Adopt] Memo that **directed TAF staff** to contact their supervisor

6   ('ZK') if [p]laintiff arrived on campus." ECF No. 202 at 15 (emphasis added). Like TAF's earlier

7   statement in the case, this emphasizes the internal nature of the memo. The plain language of the

8   memo supports this. It contains instructions directing TAF employees—not law enforcement

9   officers—to contact the supervisor, "ZK," if they encountered Borenstein. It also refers to law

10  enforcement in the third-person ("[Borenstein] will often call Metro PD to attempt to get his

11  way"), indicating that the memo was not directed *to* the police department but was, rather, *about*

12  the police department's prior interactions with Borenstein as context for TAF staff. But for

13  Scholten's self-serving declaration made in support of the TAF defendants' anti-SLAPP motion,

14  the uncontroverted evidence in the record and the plain meaning of the memo demonstrate that

15  it was a communication intended for TAF employees. I therefore conclude that the memo

16  placing Borenstein on the "Do Not Adopt" list is not protected by NRS § 41.637(2) because it

17  was not directed toward a particular government official or entity. So I deny TAF's anti-SLAPP

18  motion.

19          *e.    Borenstein's motion to file a surreply (ECF No 209) is denied.*

20      The Federal Rules of Civil Procedure do not expressly permit the filing of a sur-reply, and

21  this district's local rules do not permit surreplies without leave of court. Instead, Local Rule 7-

22  2(b) only allows for a motion, a response, and a reply. LR 7-2(b). Because surreplies are

23  discouraged, "[o]nly the most exceptional or extraordinary circumstances warrant permitting

24  a surreply to be filed." *Stevens v. Prentice*, 2018 WL 3758577, at *1 (D. Nev. Aug. 8, 2018) (citation

25  omitted).

26

1    I do not find exceptional or extraordinary circumstances here that would warrant the

2    filing of a surreply. The court will not consider issues or arguments that a party raises for the

3    first time in a reply brief. Borenstein's motion to file a surreply is therefore denied.

4    **IV.    Conclusion**

5    IT IS HEREBY ORDERED that defendant Sunrise Hospital's motion to dismiss

6    Borenstein's claims against it **[ECF No. 195] is GRANTED** with prejudice.

7    IT IS FURTHER ORDERED that defendants Clark County and Zavala's motion to

8    dismiss Borenstein's claims against them **[ECF No. 197] is GRANTED in part and DENIED in**

9    **part as discussed in this order**. Borenstein is granted leave to amend his claims arising under

10   § 1983, the ADA, and the Rehabilitation Act as to Clark County only. He also has leave to amend

11   his intentional infliction of emotional distress claim against Clark County and Zavala only.

12   IT IS FURTHER ORDERED that defendants The Animal Foundation and Scholten's

13   motion to dismiss Borenstein's claims against them **[ECF No. 202] is GRANTED in part and**

14   **DENIED in part as discussed in this order**. Borenstein is granted leave to amend his

15   procedural due process and First Amendment retaliation claims against The Animal Foundation

16   and Scholten only.

17   IT IS FURTHER ORDERED that The Animal Foundation's anti-SLAPP motion **[ECF**

18   **No. 202] is DENIED.**

19   IT IS FURTHER ORDERED that Borenstein's motion to file a surreply **[ECF No. 209] is**

20   **DENIED.**

21   The Clerk of Court is directed to enter judgment according to the instructions above.

22   If Borenstein chooses to file an amended complaint, he must do so by **May 5, 2023**, and

23   title it "Third-Amended Complaint." He is instructed to remove from his amended pleading all

24   claims that have been dismissed with prejudice. If he fails to file a third-amended complaint by

25   that date, the case will proceed on the claims listed below only. To summarize, excluding the

26

claims mentioned above that Borenstein has leave to amend, the following claims currently remain:

- Borenstein's claim against Clark County for unlawful discrimination, harassment, and retaliation based on his disability;
- Borenstein's § 1983 claim against The Animal Foundation for unreasonable seizure;
- Borenstein's claim against The Animal Foundation for violations of the ADA and the Rehabilitation Act;
- Borenstein's claim against The Animal Foundation and Scholten for ADA retaliation;
- Borenstein's claim against The Animal Foundation for negligent supervision, training, and retention.

DATED: April 5, 2023

_____
Cristina D. Silva
United States District Judge