UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| Brian Borenstein, | Case No. 2:19-cv-00985-CDS-NJK |
| Plaintiff | **Order Granting Defendant Clark County's Motion for Summary Judgment and Granting Defendant TAF's Motion for Partial Summary Judgment** |
| v. | |
| The Animal Foundation, et al., | |
| Defendants | [ECF Nos. 428, 455, 459, 468, 477, 479] |

This is a civil rights disability discrimination, property, and personal injury case. Plaintiff Brian Borenstein filed a third-amended complaint (TAC) on July 5, 2023. TAC, ECF No. 329. Pending before the court are defendant Clark County's motion for summary judgment (ECF No. 428 (sealed), ECF No. 455 (unsealed)), and defendant The Animal Foundation's (TAF) motion for partial summary judgment (ECF No. 477 (unsealed), ECF No. 479 (sealed)).[1] For the reasons herein, I grant both motions.

### I.  Background

With over four years of motion practice, the parties are familiar with the facts of this case, so I only include here the information relevant to resolving the pending motions. On May 23, 2024, I granted Clark County's motion to dismiss the TAC (ECF No. 342) and found that the only claim that remained was Borenstein's ninth cause of action: unlawful discrimination in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12203. *See* Order, ECF No. 423, ECF No. 329 at ¶¶ 316–26. Clark County now moves for summary judgment on this sole claim. Mot. for summ. j, ECF No. 455.

---

[1] Also pending is TAF's motion for summary judgment at ECF No. 459. This motion was to be stricken in a prior order. *See* Order, ECF No. 473. Due to the court's error, this motion was not actually stricken. Directions to strike this motion in accordance with my prior order are set forth at the conclusion of this order. Additionally pending before the court is Borenstein's motion to seal. ECF No. 468. Finding good cause and compelling reasons, Borenstein's motion to seal is granted.

In that same order, I granted in part TAF's motion to dismiss the TAC (ECF No. 343), allowing the following claims to survive: (1) unreasonable seizure (fourth cause of action); (2) unlawful discrimination in violation of the ADA (eighth and ninth causes of action); (3) unlawful deprivation of, interference with, and punishment for exercising rights and privileges in violation of Nev. Rev. Stat. § 651.070 *et seq.* (eleventh cause of action); and (4) negligent training, supervision, and retention (thirteenth cause of action). ECF No. 423 at 21. TAF then filed a motion for summary judgment on these claims. Mot for summ. j., ECF No. 432. However, in my October 22, 2024 order, I noted that TAF's motion was filed after the deadline for dispositive motions and was thus untimely. Order, ECF No. 454 at 6. I denied TAF's motion for summary judgment, and pursuant to Rule 56, I directed TAF to refile its motion addressing only the unreasonable seizure claim and the negligent training, supervision, and retention claim. *Id.* TAF filed its motion for partial summary judgment on December 5, 2024. Mot. for partial summ. j., ECF No. 477.[2]

## II.   Legal standard

Summary judgment is appropriate when the pleadings and admissible evidence "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). At the summary-judgment stage, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). If reasonable minds could differ on material facts, summary judgment is inappropriate because its purpose is to avoid unnecessary trials when the facts are undisputed; the case must then proceed to the trier of fact. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Once the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material

---

[2] This motion is fully briefed. *See* Opp'n, ECF No. 488; Reply, ECF No. 489.

fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323. "To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial." *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018).

III. Discussion

    A. **Clark County's motion for summary judgment is granted.**

Borenstein alleges that Clark County engaged in "unlawful retaliation in violation of the [ADA]" when it allowed TAF to place a warning in its electronic files—accessible by Clark County Animal Control and other shelters and rescue organizations—that Borenstein should not be permitted to adopt an animal. ECF No. 329 at ¶ 321. In its motion for summary judgment, Clark County argues (1) it cannot be held liable for TAF's alleged retaliatory acts; and (2) the retaliation claim fails because there is no underlying unlawful act or practice by Clark County. ECF No. 455 at 16–17.

First, Clark County argues that it cannot be held liable for TAF's alleged retaliatory acts because "[t]here is no basis to hold a government entity liable for the (alleged) retaliatory acts of its contractor under 42 U.S. Code § 12203." *Id.* at 16. Clark County further states that it has no control over TAF's adoption services and therefore has no control over TAF's decision whether to adopt to a particular individual. *Id.* To support this argument, Clark County points to the Shelter Agreement between Clark County and TAF that does not mention adoption services, as well as three witnesses who stated that the adoption services provided by TAF were separate from the shelter service that TAF provides to the County. *Id.* at 17. Because there is no evidence that Clark County had any involvement in TAF's decision to place a notice in Borenstein's electronic file, the County surmises that it cannot be held liable for acts it did not know about and in which it did not participate. *Id.*

In his opposition, Borenstein argues that the specific contours of the Shelter Agreement are irrelevant as to whether TAF engaged in unlawful retaliation, which was "indisputably rooted in its agency relationship with the County." Opp'n, ECF No. 482 at 3. He explains that it is the "unchecked defamatory statements" made by TAF via the warning note placed in the electronic system[3] in retaliation for Borenstein's ADA protected conduct that gives rise to the County's liability, and not "whether the County contracts with TAF to provide the very service [ ] denied to Mr. Borenstein by . . . TAF[.]" *Id.* Borenstein also argues that the Ninth Circuit has foreclosed the argument that state defendants cannot be held liable for ADA violations committed by their contractors. *Id.* at 3–4 (citing *Castle v. Eurofresh, Inc.*, 731 F.3d 901, 910 (9th Cir. 2013)).

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. In *Castle*, the Ninth Circuit made clear that Title II's obligations apply to public entities regardless of how those entities chose to provide or operate their programs and benefits, which includes a decision to contract out its services. 731 F.3d at 910. *See Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1065 (9th Cir. 2010) ("[A] public entity, in providing any aid, benefit, or service, may not, directly or through **contractual**, licensing, or other arrangements, discriminate against individuals with disabilities.") (quoting 28 C.F.R. § 35.130(b)(1)) (emphasis added)). Therefore, Clark County incorrectly asserts it cannot be held liable for TAF's alleged retaliation merely because TAF was a contractor.

This does not save Borenstein's claim, however, because the facts indicate that Clark County contracted with TAF for its shelter services, **not** its adoption services. Indeed, a review of the Shelter Agreement between TAF and Clark County reveals there is not a single mention of

---

[3] The name of the electronic database is "Chameleon." ECF No. 482 at 7.

4

adoption services. *See* Shelter Agreement, Clark County's Ex. 1, ECF No. 428-4 (sealed); *see also* TAF's Ex. B, ECF No. 477-2. Additionally, in his deposition, James Andersen, the Code Enforcement Manager who oversees the Code Enforcement Division and Animal Protection Services for Clark County, testified:

> The County contract for shelter services is specific to The Animal Foundation's agreement with the County for the period of time in which the animal is under our legal hold days. Animal Foundation has two distinct operating entities: the sheltering side and the nonprofit foundation side for adoptions. **The terms of this contract do not extend to the adoption portion of The Animal Foundation**. And so we do not -- the County -- tell them what to do.

Andersen dep., Clark County's Ex. E, ECF No. 428-5 at 6, 115:13–22 (sealed) (emphasis added); TAF's Ex. P, ECF No. 477-16 at 5, 115:13–22. Additionally, Carly Scholten, TAF's former Chief Operating Officer, who was in charge of adoptions, stated that the shelter admissions process and the adoptions process did not interact or work together. *See* Scholten dep., Clark County's Ex. F, ECF No. 428-6, 36:17–25 (sealed); TAF's Ex. S, ECF No. 477-19 at 7, 36:17–25. Borenstein does not provide any facts that demonstrate that Clark County had any control—actual, constructive, or otherwise—over TAF's adoption services.

Instead, Borenstein largely relies on the fact that TAF placed the warning note in his electric file on Chameleon to support his argument that Clark County is responsible for TAF's alleged violation of the ADA. *See* ECF No. 482 at 23 ("TAF placed the warning not to adopt an animal to Mr. Borenstein in the government database, which Animal Control Dispatcher, Randy Soltero, referred to as 'our system.'"). But the existence of the note on the government database is insufficient to support the conclusion that Clark County therefore has control over what notes TAF enters into the database for issues relating to its adoption services. In fact, the evidence demonstrates the opposite. In his deposition, Andersen stated that TAF's adoption services are not subject to its contract with Clark County, so Clark County does not tell TAF

what to do once an animal goes into TAF's legal custody. Andersen dep., Def.'s Ex. E, ECF No. 428-5 at 114:22–115:25 (sealed); Def.'s Ex. P, ECF No. 477-16 at 5, 114:22–115:25. This is because TAF has "two separate operating entities: the sheltering side and the nonprofit foundation side for adoptions." *Id.* The terms of this contract do not extend to the adoption portion of TAF.

Lieutenant Zavala, a Clark County Animal Control lieutenant officer, provided similar testimony. When asked if the County could provide a kind of process for a person to challenge their placement on TAF's do-not-adopt list, Zavala said, "I don't see -- I don't see us stepping in to -- to tell The Animal Foundation how their policies or -- or how to change their -- their procedures for that." Zavala dep., Pl.'s Ex. 5, ECF No. 445-5 at 78, 294:25–295:2.

Zavala also testified that Clark County does not even have access to TAF's adoption notes. He testified "the do-not-adopt-to . . . information is really on the adoption side. It's not something that's listed on any of our investigations. If we had a call for service, for whatever it is, we work in the Chameleon system. We work in a different -- a different wing of it." *Id.* at 76, 286:17–22. According to Zavala, "[t]he Animal Foundation notes details on why he's on that list. That wouldn't be part of our records. [Borenstein] could request anything and everything with his name on it from us, and there wouldn't be anything discussing [the note][.]" *Id.* at 286:23–287:2. Because there are no facts to demonstrate that Clark County contracted with TAF for its adoption services, Clark County's obligation to ensure that TAF complied with Title II extended only to TAF's actions in relation to its shelter services. It did not have any obligation to ensure TAF complied with Title II of the ADA as it relates to TAF's adoption services. *See Medina v. Valdez*, 2011 WL 887553, at *5 (D. Idaho, Mar. 10, 2011) ("When a public entity contracts with a private entity to provide a public service, the public entity must ensure by contract that the private entity will **provide the service** in accordance with title II.") (emphasis added).

6

Because Borenstein fails to identify any genuine issues of material fact as to whether Clark County contracted with TAF for its adoption services, Clark County cannot be held responsible for TAF's decision to put a do-not-adopt note in Borenstein's file. Clark County is therefore entitled to summary judgment on this claim.[4]

**B. TAF's motion for partial summary judgment is granted.**

Complying with this court's order, TAF filed another motion for summary judgment on two of Borenstein's claims: his § 1983 claim alleging an unreasonable seizure in violation of the Fourth Amendment and his negligent supervision, training, and retention claim. *See* ECF No. 477. I address each claim in turn.

### *1. TAF is entitled to summary judgment on Borenstein's § 1983 claim.*

In his TAC, Borenstein alleges that TAF "unreasonably infring[ed] on [Borenstein's] possessory interests protected by the Fourth Amendment's prohibition on unreasonable seizures . . . by unlawfully converting that temporary, authorized deprivation of Borenstein's [dog] into a permanent, unlawful deprivation, through the adoption of [Borenstein's dog]." ECF No. 329 at ¶ 272. In its motion, TAF argues that it cannot be liable under the Fourth Amendment because it did not act under color of state law. ECF No. 477 at 14. TAF argues that

> [a]lthough TAF's intake (also referred to as admissions) department works hand-in-hand with the County and its animal control officers, the County has no ability to control any aspect of TAF's business beyond the Clark County Ordinances and the Shelter Agreement, including TAF's KEPPT program, its animal clinic, and/or its adoption center. TAF's adoption-related services are similarly absent from the Shelter Agreement. Nowhere in the Shelter Agreement are terms governing how TAF must conduct its adoptions, to whom it may adopt, what animals it may adopt out, and/or under what circumstances it may not adopt any of the animals it owns.

*Id.* In opposition, Borenstein argues that

> [i]t is incorrect that TAF's shelter services are separate and distinct from its Adoption Center and that the contract does not govern any of TAF's adoption-related services, as the contract specifically provides for the adoption of animals impounded by Animal Control. This is made clear in Article II of the agreement.

---

[4] Because I grant summary judgment on this claim for these reasons, I do not address the merits of Clark County's "unlawful act" argument.

> TAF's inventory of animals available for adoption comes overwhelmingly through government impoundments; the County determines the legal hold on its impoundments, thereby controlling when and how TAF receives most of its adoption inventory (*i.e.* adoptive assets), including Mana, which inventory is subsequently comingled in the Adoption Center with other animal inventory received by other means (*e.g.* public walk-ins). TAF may not adopt any animal impounded by the County during the legal hold period and must provide humane and reasonably appropriate care and shelter during this time. Furthermore, ownership of such animals after the legal hold period may inure to TAF <u>only if</u> "TAF does not exceed the maximum shelter occupancy as provided by Section 2.5 [of the contract]." Shelter occupancy at the time TAF seized ownership of Mana is a fact genuinely in dispute in this case.

ECF No. 488 at 6–7 (underlining in original).

Borenstein brings a § 1983 claim against TAF. To maintain a § 1983 claim, Borenstein must show (1) the conduct complained of was committed by a person acting under the color of state law; and (2) the conduct deprived him of a constitutional right. *Baxter v. City of Hemet*, 728 F. Supp. 3d 1127, 1139 (C.D. Cal. 2024). Generally, private entities are not acting under color of state law. *Price v. Hawaii*, 939 F.2d 702, 707–08 (9th Cir. 1991). Because TAF is a private entity, to demonstrate that it was acting under color of state law, Borenstein must show that there was significant state involvement in the action. *Johnson v. Knowles*, 113 F.3d 1114, 1118 (9th Cir. 1997). There are four tests for determining whether a private individual's actions amount to state action: "(1) the public function test; (2) the joint action test; (3) the state compulsion test; and (4) the governmental nexus test." *Id.* As it is not entirely clear what test Borenstein uses to argue that TAF is a state actor, I analyze the facts of this case under each test to determine whether a genuine issue of material fact exists as to whether TAF was acting under color of state law.

### a. Public functions test

Under the public functions test, "when private individuals or groups are endowed by the state with powers or functions governmental in nature, they become agencies or instrumentalities of the State and subject to its constitutional limitations." *Evans v. Newton*, 382 U.S. 296, 299 (1966). "To satisfy the public functions test, the function at issue must be both traditionally and exclusively governmental." *Lee v. Katz*, 276 F.3d 550, 555 (9th Cir. 2002) (citing

*Rendell-Baker v. Kohn*, 457 U.S. 830, 842 (1982)). TAF is a non-profit entity and there are no facts in the record indicating that its adoption procedures are governed or controlled by Clark County. In fact, as I have already explained, the evidence shows that Clark County lacked control over the adoption services portion of TAF. *See* Shelter Agreement, Clark County's Ex. 1, ECF No. 428-4; Andersen dep., Clark County's Ex. E, ECF No. 428-4; TAF's Ex. P, ECF No. 477-16 at 5, 115:17–22 ("Animal Foundation has two distinct operating entities: the sheltering side and the nonprofit foundation side for adoptions. The terms of this contract do not extend to the adoption portion of The Animal Foundation. And so we do not -- the County -- tell them what to do."); Scholten dep., TAF's Ex. S, ECF No. 477-19 at 6, 36:17–25 (stating that the shelter services and the adoption services do not work together). Further, Borenstein has not shown that TAF's work adopting out animals is the traditional and exclusive domain of the government. Under the public functions test, TAF was not acting under color of state law.

### b. *State compulsion test*

Under the state compulsion test, state action is found "where the state has 'exercised coercive power or has provided such significant encouragement, either overt or covert, that the [private actor's] choice must in law be deemed to be that of the State.'" *Johnson*, 113 F.3 at 1119 (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1011 (1982)). Again, the evidence shows that Clark County does not, in any way, exercise coercive power or provide significant encouragement to TAF's adoption decisions. The evidence paints the opposite picture: Clark County employees disavow any control over the adoption services. *See, e.g.*, Andersen dep., TAF's Ex. P, ECF No. 477-16 at 5, 115:21–22 ("And so we do not -- the County -- tell [TAF] what to do."); Zavala dep., Pl.'s Ex. 5, ECF No. 445-5 at 78, 294:25–295:1–2 ("I don't see -- I don't see us stepping in to -- to tell The Animal Foundation how their policies or -- or how to change their -- their procedures for that."). Therefore, TAF does not qualify as a state actor under the state compulsion test.

### c. *Joint action test*

"Under the joint action test, we consider whether 'the state has so far insinuated itself into a position of interdependence with the private entity that it must be recognized as a joint participant in the challenged activity. This occurs when the state knowingly accepts the benefits derived from unconstitutional behavior.'" *Kirtley v. Rainey*, 326 F.3d 1088, 1093 (9th Cir. 2003) (quoting *Parks Sch. of Bus., Inc., v. Symington*, 51 F.3d 1480, 1486 (9th Cir. 1995)). Here, as set forth in the TAC, the alleged unlawful seizure came from converting the "temporary, authorized deprivation of Borenstein's [dog] into a permanent, unlawful deprivation, **through the adoption of** [Borenstein's dog.]" ECF No. 329 at ¶ 272 (emphasis added). Although, in a broad sense, animal adoption services benefit the public, and TAF and Clark County benefited from their contract, Borenstein's allegation is not enough to confer state action onto TAF. *See Gorenc v. Salt River Project Agr. Imp. & Power Dist.*, 869 F.2d 503, 508 (9th Cir. 1989) (explaining that Salt River's generation of electricity, which the public benefits from, does not confer state action). Under the joint action test, TAF does not qualify as a state actor.

### d. *Governmental nexus test*

The governmental nexus test requires the court to consider "whether there is a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself." *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352 (1974). When applying this test, the Ninth Circuit looks at factors such as whether "the private organization relies on public funding, whether it is composed mainly of public officials, and whether those public officials 'dominate decision making of the organization.'" *O'Handley v. Weber*, 62 F.4th 1145, 1157 (9th Cir. 2023) (quoting *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 995 (9th Cir. 2008) (en banc)).

The Shelter Agreement provides public funding for TAF shelter operations. *See* ECF No., 428-4 at 12. However, the United States Supreme Court has held that the provision of state funds to a private entity, without more, does not make the state responsible for that entity's

decisions. *Blum*, 457 U.S. at 1011 ("That programs undertaken by the State result in substantial funding of the activities of a private entity is no more persuasive than the fact of regulation of such an entity in demonstrating that the State is responsible for decisions made by the entity in the course of its business."). Additionally, there are no facts in the record demonstrating that TAF's adoption services are mainly run by public officials or that any public officials dominated TAF's decision-making as it relates to the adoption services. In fact, the facts demonstrate the opposite. Although Clark County Animal Control were involved with TAF's shelter services, the record demonstrates that it did not control TAF's decisions related to adoptions. *See* Zavala dep., Pl.'s Ex. 5, ECF No. 482-5 at 77, 292:19–22 ("We -- Animal Control, we're on -- we're on the different side of -- of the situation. We deal with the field. We deal with the impoundment. We don't deal with the adoption portion of it."); Andersen dep., TAF's Ex. P, ECF No. 477-16 at 5, 115:17–22 ("Animal Foundation has two distinct operating entities: the sheltering side and the nonprofit foundation side for adoptions. The terms of this contract do not extend to the adoption portion of The Animal Foundation. And so we do not -- the County -- tell them what to do."); *see also* Email from Zavala to TAF, Pl.'s Ex. 1, ECF No. 329-1 at 21 ("I let [Borenstein] know it's TAF's decision how long to hold the dog for.").

In his opposition, Borenstein argues that TAF's shelter services are not separate and distinct from its adoption services. To support his argument, Borenstein points to the following: (1) most of TAF's inventory of animals available for adoption comes from the government impoundment, (2) the County determines the legal hold on its impoundments, and (3) TAF may not adopt any animal impounded by the County during the legal hold period. ECF No. 488 at 6–7. But none of these facts support finding that TAF is a state actor. Borenstein does not cite to any case law supporting the fact that most of TAF's inventory comes from the government impoundment creates a sufficiently close nexus between Clark County's utilization of TAF for impoundments, and TAF's adoption services to qualify TAF as a state actor.

1    Indeed, Clark County's ability to determine the legal hold on impoundments and to prohibit TAF from adopting out any animals impounded by Clark County during the legal hold period binds TAF regarding its *shelter* services, but not its adoption services. The Shelter Agreement demonstrates that, during the legal hold period, the animals are controlled by TAF's shelter services. Although TAF's shelter services are intertwined with Clark County, TAF's adoption services are not. The legal hold is the mechanism from which the animals move from Clark County's property to TAF's property. During that period, Clark County is deciding how long **it** will control the animals, not how long TAF will control the animals. Once the legal hold period is over, TAF may adopt the animals out as it sees fit. *See* Andersen dep., TAF's Ex. P, ECF No. 477-16 at 6, 116:8–16 ("While the animal is on a legal hold, it's the property of Clark County. So [TAF] abides by our hold times while it's on a legal hold. When we release the legal hold on it, when the County releases the legal hold, then we have no more claim over that animal, and it's turned over to [TAF], to their adoption foundation side."). Here, the legal hold initially expired on May 22, 2019. TAF extended the hold other ten days, until May 31, 2019.[5]

Further, as already noted in this order, the evidence demonstrates that TAF's adoption services are separate and distinct from the shelter services. *See supra* pp. 4–5. Although Borenstein points out that the adoption center and the animal shelter share the same address, *see* ECF No. 488 at 8, the adoption center and the animal shelter operate in two separate buildings. *See* Map, ECF No. 428-4 at 24. Without more, that is insufficient to meet the nexus test. *See Lansing v. City of Memphis*, 202 F.3d 821, 831-834 (6th Cir. 2000) (finding, as a matter of law, that plaintiff failed to satisfy the nexus test where a non-profit corporation that operated a music festival on city property, coordinated with government officials, and conferred a substantial economic benefit on its government partner, received public funding, and had public officials on its board.).

---

[5] Borenstein requested a hold until June 2, 2019. ECF No. 329 at ¶ 125. It is unclear why the hold wasn't until June 2nd. Nonetheless, May 31, 2019, was well past the 72-hours TAF was required to hold Mana pursuant to Clark County Code § 10.24.010.

Borenstein also argues that TAF and Clark County are sufficiently intertwined because Clark County requires TAF to (1) vaccinate the animals, (2) make sure they are spayed and neutered, (3) notify owners of possible euthanasia, and (3) provide statistical reports to the County, ECF No. 488 at 7–8, and that TAF is bound by two Nevada statues: Nev. Rev. Stat. § 574.620(4) which requires that TAF "takes into custody pets which have been abandoned, abused, or neglected and places those pets with new owners" and Nev. Rev. Stat. § 244.359(1)(b) which authorizes the board of county commissioners to regulate the disposal of all kinds of animals. *Id.* at 9 (citing statutes) (underlining in original). These are all examples of how Clark County regulates TAF. But Borenstein's arguments fails because "[t]he mere fact that a [private actor] is subject to state regulation does not by itself convert its action into that of the state[.]" *Jackson*, 419 U.S. at 350; *see also Heineke v. Santa Clara Univ.*, 965 F.3d 1009 (9th Cir. 2020) (declining to find that Santa Clara University was a state actor because state and federal law coerced the private university to enforce federal and state anti-discrimination laws); *Pasadena Republican Club v. W. Just. Ctr.*, 985 F.3d 1161, 1172 (9th Cir. 2021) (holding that "the fact that the government licenses, contracts with, or grants a monopoly to a private entity does not convert the private entity into a state actor—unless the private entity is performing a traditional, exclusive public function").

Borenstein argues that the Shelter Agreement states that ownership of animals after the legal hold period[6] can be turned over to TAF only if TAF has not exceeded the maximum shelter occupancy provided in the contract, and that shelter occupancy at the time TAF seized ownership of Borenstein's dog is a fact genuinely in dispute in this case that he believes creates a genuine issue of fact as to whether TAF was a state actor. ECF No. 488 at 7. There are multiple issues with this argument. First, although the extent of state involvement presents a fact-specific inquiry (i.e., presents a question of fact), the determination of whether an entity is a

---

[6] Mana's courtesy hold expired on May 22, 2019, and the extension on that hold *expired* on May 31, 2019. ECF No. 329 at ¶¶ 106, 132, 137.

state actor is a legal—not factual—determination. *See Lopez v. Dep't of Health Servs.*, 939 F.2d 881, 883 (9th Cir. 1991); *Blum*, 457 U.S. at 997 (describing "whether there is state action" as one of "several issues of law" for the court). Borenstein cannot evade summary judgment by claiming the court should have a trial on a factual question he failed to prove—that is, whether TAF was at capacity at the time Borenstein's dog was adopted on June 1, 2019. Regardless, the evidence shows multiple TAF witnesses saying that in May and into June, TAF was probably at maximum capacity because it was its busiest time of the year. *See* Arceo dep., Pl.s Ex. 4, ECF No 445-4 at 36, 130:4–13. Second, even assuming arguendo that TAF was not at capacity, Borenstein wholly fails to address that the Shelter Agreement is between *Clark County and TAF*. Borenstein is not a party to the contract and cannot enforce it. *See Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1211 (9th Cir. 1999), *amended on denial of reh'g*, 203 F.3d 1175 (9th Cir. 2000) ("Parties that benefit from a government contract are generally assumed to be incidental beneficiaries, and may not enforce the contract absent a clear intent to the contrary."). Borenstein therefore cannot attempt to assert some sort of breach of contract between Clark County and TAF in attempt to assert that somehow makes TAF a state actor. Finally, the Shelter Agreement does not demonstrate that TAF was acting as a state actor **as it relates to its adoption services.** The complaint alleges that the "unreasonable seizure" came from TAF's decision to **adopt out** Borenstein's dog. *See* ECF No. 329 at ¶ 272. Therefore, I must analyze whether TAF's actions in the adoption of the dog were the product of state action. Although the Shelter Agreement dictates certain regulations TAF must abide by, the agreement, those requirements do not automatically convert TAF into a state actor. *See Jackson*, 419 U.S. at 350; *see also Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 829, 841 (9th Cir. 1999) ("[G]overnmental compulsion in the form of a generally applicable law, without more, is [not] sufficient to deem a private entity a governmental actor."); *Rendell-Baker*, 457 U.S. at 833, 841–42, 848 (finding no state action where state regulation required school to draft rules for dismissing employees and comply with "an equal employment opportunity requirement").

For all of the reasons stated, TAF's adoption services are not sufficiently intertwined with Clark County so as to create a "sufficiently close nexus between the state and the challenged action of the regulated entity so the action of the latter may be fairly treated as that of the state itself." *Jackson*, 419 U.S at 352. Therefore, TAF is not a state actor under the governmental nexus test.

Because TAF is not a state actor under any of the four tests, it was not acting under color of state law and cannot be held liable for a § 1983 claim. So TAF is entitled to summary judgment on Borenstein's unreasonable seizure claim.[7]

### 2. *TAF is entitled to summary judgment on the negligent training, supervision, and retention claim.*

In the TAC, Borenstein alleges that TAF was negligent in the training, supervision, and retention of its employees in the areas of "safeguarding assets, constitutional rights, the ADA, the State Discrimination Statutes, the Vulnerable Persons Statute, and other requirements, which . . . caused . . . harm and injuries to Borenstein." ECF No. 329 at ¶ 340.[8] In its motion, TAF argues:

> Borenstein is unable to provide this Court with any facts indicating TAF negligently trained or supervised its employees. Rather, TAF took special precautions when hiring its supervising employees, who at the time of this case included Carly Scholten at the helm of operations. Ms. Scholten went to the University of Illinois where she received her Bachelor of Science degree in Animal Sciences, went on to work at DuPage County animal care and control as an animal care attendant/humane education intern, worked at an animal shelter in Barrington, Illinois, worked at the Champaign County Humane Society, and had been employed with the Animal Foundation commencing in 2009. Moreover, TAF's baseline training program includes generalized training known as the "Adopters Welcome Philosophy", where TAF employees are trained to "just treat everyone with the same respect as everyone." Such a policy inherently contains the principals enacted through the ADA, whereby all individuals should be treated with the same respect as everyone else.

---

[7] Because I find that TAF is not a state actor for purposes of § 1983, I do not reach a decision on the merits of any of the other elements of the claim.

[8] The court acknowledges that, in error, it believed Borenstein to be bringing a negligent hiring claim. A review of the complaint makes clear that he does not.

ECF No. 477 at 15–16. In his reply, Borenstein argues that the employees at TAF were negligently trained because:

> [a]t no time in her approximately ten years with TAF, before [Borenstein's dog] was impounded in 2019, did Scholten or any of the people who reported to her receive any training on the ADA, including service dog and disabled persons recognition, First Amendment retaliation, Fourth Amendment search and seizure, or Fourteenth Amendment due process and equal protection, other than discrimination in hiring practices.

ECF No. 488 at 14–15.

Nevada recognizes the tort of negligent training, supervision, and retention. *See Hall v. SSF, Inc.*, 930 P.2d 94, 99 (Nev. 1996). "As is the case in hiring an employee, the employer has a duty to use reasonable care in the training, supervision, and retention of his or her employees to make sure that the employees are fit for their positions." *Id.* "Courts consider whether antecedent circumstances would 'give the employer reason to believe that the person, by reason of some attribute of character or prior conduct, would create an undue risk of harm to others in carrying out his or her employment responsibilities.'" *Romero v. Nev. Dep't of Corr.*, 2013 U.S. Dist. LEXIS 168736, at *59 (D. Nev. Nov. 27, 2013) (quoting *id.*)); *see Okeke v. Biomat USA, Inc.*, 927 F. Supp. 2d 1021, 1028 (D. Nev. 2013) ("Claims for negligent training and supervision are based upon the premise that an employer should be liable when it places an employee, who it knows or should have known behaves wrongfully, in a position in which the employee can harm someone else."). "Because the question of whether reasonable care was exercised almost always involves factual inquiries, it is a matter that must generally be decided by a jury." *Butler v. Bayer*, 168 P.3d 1055, 1065 (Nev. 2007). In Nevada, the law does not permit the inference that an employer was negligent in training or supervising simply because its employees acted in a discriminatory manner. *Reece v. Republic Servs., Inc.*, No. 2011 WL 868386, at *11 (D. Nev. Mar. 10, 2011). Thus, to survive a motion for summary judgment, Borenstein must offer evidence that the employer violated its duty. *Colquhoun v. BHC Montevista Hospital, Inc.*, 2010 WL 2346607, at *3 (D. Nev. June 9, 2010) (citing *Burnett v. C.B.A. Security Serv.*, 820 P.2d 750, 752 (Nev. 1991)).

Borenstein argues that TAF violated its duty to properly train its employees in various areas of constitutional and statutory law. However, Borenstein does not provide any evidence or authority indicating that these subject matters are required applying the "reasonable duty" standard. Borenstein also fails to cite to any case law that states that public or private entities must provide training to their employees on how not to violate the United States Constitution, much less specific Amendments. Additionally, Borenstein alleges that TAF is negligent because it failed to train its employees on "the ADA, including service dog and disabled persons recognition . . . ." ECF No. 488 at 14. Borenstein does not even allege what specific training is required nor what ADA provision requires that sort training. While the ADA and certain CFRs do require certain types of trainings, none are applicable here.[9] Borenstein does not provide any evidence of an industry standard that says that employees at an animal shelter or adoption foundation are typically trained on these things. *See, e.g., Gleason v. Garda CL West, Inc.*, 2019 WL 8226385, at *9 (D. Ariz. Dec. 6, 2019) ("Although Plaintiff claims that Defendant did not train Mr. Holzwordt on safe and proper backing up of vehicles, yielding to pedestrians, and not parking in handicapped access aisles, Plaintiff fails to identify any regulation or industry-wide standard this alleged lack of training fails to meet."). Borenstein also does not allege facts that would allow a reasonable jury to believe that the antecedent circumstances would "giv[e] the employer reason to believe that the person, by reason of some attribute of character or prior conduct, would create an undue risk of harm to others in carrying out his or her employment responsibilities." *Hall*, 930 P.2d at 99.

The evidence demonstrates that TAF has a baseline training program that sufficiently ensures that all individuals visiting TAF are treated with respect. *See* Arceo dep., TAF's Ex. K,

---

[9] *See, e.g.*, 28 C.F.R. Pt. 36 (ADA mandates that private entities that offer exams or courses related to applications, licensing, certification, or credentialing for secondary or postsecondary education, professional, or trade purposes are accessible to persons with disabilities; 42 U.S.C. § 12112 (ADA prohibiting discrimination in job training, requiring reasonable accommodations for employees with disabilities); 49 C.F.R. Pt. 37, App. D (discussing that private entities involved in transportation services are required to train their employees on ADA compliance to ensure effective service delivery and requirement standards for accessibility vehicles).

ECF No. 479-11 at 4, 99:3–14. Because there is neither evidence nor authority requiring TAF to do more than having this baseline training program, Borenstein fails to meet his burden in demonstrating that the employer violated its duty. So TAF is entitled to summary judgment on this claim.

IV.    Conclusion

IT IS THEREFORE ORDERED that Clark County's motion for summary judgment **[ECF Nos. 428 (sealed), 455 (unsealed)] is GRANTED**, so the cross claims are also dismissed. The Clerk of Court is instructed to enter judgment in favor of Clark County.

IT IS FURTHER ORDERED that The Animal Foundation's motion for partial summary judgment **[ECF Nos. 477 (unsealed), 479 (sealed)] is GRANTED**. The remaining claims against TAF are as follows:

- Borenstein's claim against The Animal Foundation for violations of § 12182 of the ADA (eighth cause of action),
- Borenstein's claim against The Animal Foundation for retaliation in violation of § 12203 of the ADA (ninth cause of action),
- Borenstein's claim against The Animal Foundation for violations of public accommodation under Nev. Rev. Stat. § 651.070 (eleventh cause of action).

IT IS FURTHER ORDERED that **ECF No. 459** is **STRICKEN**. The Clerk of Court is kindly instructed to reinstate and deny without prejudice **ECF No. 432** as it was erroneously stricken in my prior order.

IT IS FURTHER ORDERED that Borenstein's motion to seal at **[ECF No. 468]** is GRANTED.

Dated: May 9, 2025

_____
Cristina D. Silva
United States District Judge