RAELENE K. PALMER
Nevada Bar No. 8602
THE PALMER LAW FIRM, P.C.
6605 Grand Montecito Pkwy, Suite 100
Las Vegas, Nevada 89149
Phone: (702) 952-9533
Email: rpalmer@plflawyers.com

ROBERT S. MELCIC
Nevada Bar No. 14923
4930 Mar Vista Way
Las Vegas, Nevada 89121
Phone: (702) 526-4235
Fax: (702) 386-1946
Email: robertmelcic@gmail.com

RICHARD E. RETAMAR
Admitted Pro Hac Vice
RETAMAR & MILLIAN, P.A.
685 E. Hillsboro Boulevard
Deerfield Beach, Florida 33441
Phone: (954) 834-0404
Email: retamar@retamarmillian.com

*Attorneys for Plaintiff Brian Borenstein*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| BRIAN BORENSTEIN, an individual,<br><br>               Plaintiff,<br><br>vs.<br><br>THE ANIMAL FOUNDATION, a domestic<br>nonprofit corporation; *et al.*,<br><br>               Defendants. | Case No.: 2:19-cv-00985-CDS-NJK<br><br><br>**[PROPOSED]**<br>**JOINT PRETRIAL ORDER** |

After pretrial proceedings in this case,

IT IS ORDERED:

- 1 -

# I. NATURE OF THE ACTION

## A. Plaintiff's Statement

This is a federal and state discrimination and retaliation case arising under: (1) Titles III and V of the Americans with Disabilities Act and its amendments ("ADA"), as set forth in 42 U.S.C. §§ 12182 and 12203; and (2) Chapter 651 of Nevada's Public Accommodations statute, as set forth in NRS 651.070 and 651.090. In May 2019, Plaintiff Brian Borenstein ("Borenstein") was hospitalized while his dog, Mana, after having been impounded by Clark County Animal Control ("CCAC"), was sheltered by Defendant The Animal Foundation ("TAF"). Plaintiff alleges that he is a disabled person, that Mana was his service dog, and that TAF is a place of public accommodation. Borenstein alleges that TAF discriminated against him when TAF refused to accommodate his disabilities by holding Mana until Borenstein was able to reclaim him and disposed of Mana just one day sooner than Borenstein requested TAF to hold Mana and by failing to make efforts to reclaim Mana from the adopter for return to Borenstein.

Borenstein alleges that TAF further discriminated, coerced, threatened, or interfered with his exercise or enjoyment of rights, when Borenstein opposed TAF's failure to accommodate his disabilities, including when TAF published false and defamatory statements about him in a government database used by animal control agencies in Clark County, Nevada, preventing him from adopting another dog from TAF and Henderson Animal Shelter.

## B. Defendant's Statement

TAF echoes Plaintiff's procedural posture of this case as one arising out of allegations of federal and state discrimination claims against TAF for having allegedly discriminated against Mr. Borenstein. Where the parties differ, however, is the underlying basis for TAF's actions in placing Mana up for adoption and ultimately adopting the dog to a third-party. While Mr. Borenstein asserts that these actions were taken unjustly and in violation of the ADA, TAF instead asserts that it acted within the law by providing Mr. Borenstein reasonable accommodations in extending his time to reclaim Mana prior to that adoption and only placed Mana up for adoption when Mr. Borenstein became unreachable and un-responsive to TAF's many attempts to contact him. While on its face CCAC and TAF provided reasonable accommodations to Mr. Borenstein

given his hospitalization(s), the discovered facts of this case show that Mr. Borenstein had ulterior purposes in utilizing TAF's animal shelter that fundamentally altered the service TAF was providing from one of an animal shelter to one of a boarding facility.

Mr. Borenstein claims in this case that TAF acted in violation of the ADA by not holding Mana for the full amount of time he requested at the outset of his hospitalization, which was the date certain June 2, 2019, however, Mr. Borenstein chose this date from the outset because he was, unfortunately, unhoused and without money until his social security check arrived on June 2, 2019 and needed extended boarding for Mana while he sought his own sheltering through various local hospitals. When first impounding Mana, CCAC took him to TAF's animal shelter. By law, Mana was required to be held for no fewer than 72 hours; however, understanding that Mr. Borenstein was to be hospitalized, CCAC extended its legal hold to 10 days as is customary for hospitalized individuals. Mr. Borenstein thereafter sought several extensions of the already extended 10-day hold through the County, and subsequently an extension from TAF for Mana's adoption "review date." After the extended holding period, TAF extended the "review date" two more times, and ultimately Mana remained at TAF for 18 days – 15 days beyond the legal requirements or 8 days beyond the initially extended legal hold period. When TAF could no longer locate Mr. Borenstein at any of the hospitals he alleged to be at and remained unable to contact Mr. Borenstein at any of his provided contact information, TAF removed the adoption "review date" and placed Mana up for adoption.

Upon learning that his plan to misuse TAF's animal shelter had failed and Mana had been adopted to a third party, Mr. Borenstein became irate and went to TAF's facility to aggressively demand Mana's return. As a direct result of Mr. Borenstein's aggressive behavior at TAF's facility and directed toward TAF's employees, TAF made the unilateral decision to place a do-not-adopt note into Mr. Borenstein's personal file, which is recorded in its database that is jointly accessible with its jurisdictional partners along with the City of Henderson. This too is neither a violation of the ADA nor is it a violation of the ADA's anti-retaliation counterparts.

## II.    STATEMENT OF JURISDICTION

The federal claims of this case are maintained pursuant to 28 U.S.C. § 1331. This case

asserts federal discrimination claims, actionable under the Americans with Disabilities Act and the Americans with Disabilities Act Amendment Act (collectively, "ADA"), codified at 42 U.S.C. §§ 12182 and 12203. Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over the state law claims of unlawful deprivation of, interference with, and punishment for exercising rights and privileges in violation of Nevada's public accommodations statutes.

### III.    UNCONTESTED MATERIAL FACTS ADMITTED BY THE PARTIES

The following facts are admitted by the parties and require no proof:

1.  Borenstein is a disabled individual within the meaning of the Americans with Disabilities Act ("ADA") and the Americans with Disabilities Act Amendments Act ("ADAAA") (collectively hereinafter, "ADA"), Nevada Revised Statute § 41.1395 (hereinafter, "Vulnerable Persons Statute"), and Nevada Revised Statutes § 233.020(3), § 426.068, and § 651.050(1) (collectively, Titles 233, 426, and 651 of the Nevada Revised Statutes are hereinafter referred to as the "State Discrimination Statutes").

2.  TAF is subject to Title III of the ADA, as its operations affect commerce as a service establishment or social service establishment and is a public accommodation, as defined in 42 U.S.C. § 12181(7)(F) and/or (K) and NRS 651.050(4).

3.  On May 12, 2019, Borenstein drove himself and his dog, Mana, to Sunrise Hospital.

4.  Borenstein asked Sunrise Hospital to call CCAC for Mana.

5.  CCAC Officer Rachel Lund responded to the hospital, where she met with a hospital nurse and security officer who advised her that Borenstein had been sedated and that Borenstein had identified Mana as his service dog.

6.  CCAC Lieutenant Stephanie Clevinger advised Officer Lund to remove Mana from the vehicle for transport and to place a ten-day hold on him.

7.  Officer Lund left a copy of the impound card with the nurse to give to Borenstein and instructed that, if Borenstein needed more time to claim Mana, he should call

CCAC, which instruction was subsequently entered in Borenstein's medical records.

8. Borenstein's dog, Mana, was impounded by Clark County Animal Control, on May 12, 2019.

9. TAF operated the Lied Animal Shelter ("Lied") on May 12, 2019, where CCAC delivered Mana.

10. Mana was placed under TAF's care.

11. CCAC has a contract with The Animal Foundation to shelter animals on behalf of the County.

12. Lied is a facility designated by CCAC for receiving and holding animals, as defined in Nevada Revised Statute § 574.240.

13. CCAC placed a ten-day hold on Mana, pursuant to its standard policy for animals impounded with hospitalized owners.

14. On May 13, 2019, Borenstein was transported to North Vista Hospital in North Las Vegas, Nevada.

15. On May 13, 2019, and again on May 14, 2019, TAF Lost & Found Clerk Isaura Lopez-Castaneda sent emails to Borenstein with specific instructions for contacting TAF before 2:35 p.m., on May 22, 2019, to prevent Mana from being processed through the shelter.

16. TAF's customer phone line was not actively monitored 24 hours a day, seven days a week during May and June 2019.

17. Animal Description No. A1049211 was not Mana's animal identification number.

18. On May 21, 2019, CCAC Lieutenant Victor Zavala emailed TAF about a telephone call he had with Borenstein.

19. On May 24, 2019, Borenstein called CCAC and advised that he had a heart attack and was at "UMC room #202 bed#2." Borenstein also requested to have the hold extended on Mana. Lt. Clevinger relayed this information to TAF on May 28, 2019, and TAF's Assistant Director of Operations, Zoie Keast, agreed to follow

up with Borenstein by email, copying Supervisor Guzman on the email chain.

20. Following the expiration of CCAC's 10-day hold, TAF placed adoption review dates of May 24, May 28, and May 31, 2019, on Mana.

21. On or about May 30, 2019, TAF removed the May 31, 2019, adoption review date on Mana, and he was made available for adoption.

22. On June 1, 2019, Mana was adopted by a third party.

23. TAF did not place a new microchip inside Mana before adopting him to the third party.

24. At 6:38 pm, on June 1, 2019, Borenstein left a voicemail with CCAC stating that he was still in the hospital and wants to reclaim Mana.

25. On the morning of June 2, 2019, Lt. Clevinger spoke with Borenstein and advised him that Mana had already been adopted from TAF and Borenstein responded by stating, "Thank you so much Lieutenant, I am going to go kill myself now."

26. Borenstein went to the Lied Animal Shelter seeking Mana's return on June 3, 2019.

27. TAF Assistant Director Keast told Borenstein that Mana had already been adopted by someone else.

28. Borenstein contacted Clark County Commissioner Marilyn Kirkpatrick's office, on or before June 5, 2019.

29. Prior to June 8, 2019, Borenstein returned to TAF.

30. Borenstein called law enforcement to TAF's facility for help in getting Mana returned to him.

31. Borenstein filed the instant lawsuit on June 10, 2019.

32. On or before June 11, 2019, Borenstein contacted United States Senator Jackie Rosen's office.

33. On June 12, 2019, then Chief Operating Officer ("COO") Carly Scholten spoke with Aga Pinkerton in Senator Rosen's office about Mana's adoption.

34. On June 19, 2019, Borenstein emailed Bonney Brown at the Humane Network.

35. On or about June 19, 2019, COO Carly Scholten spoke with Ms. Brown about Mana's adoption.

36. TAF uses a shared database called Chameleon, along with CCAC, the City of Las Vegas, the City of North Las Vegas, and the City of Henderson.

37. On June 25, 2019, Zoie Keast placed a memo in the Chameleon database stating that TAF was placing Borenstein on "Do Not Adopt at this time." (the "Note").

38. Although the parties dispute the accuracies of the representations contained therein, the Note states, in full: "Placing P0702382, Brian Borenstein on Do Not Adopt at this time. If Brian comes onto property asking questions about a dog he previously owned "Mana" or interested in adopting another animal, please notify ZK right away. Brian has had dogs here on police holds twice in the past three months. he is combative when not given the answer he wants and will often call Metro PD to attempt to get his way. zk"

39. TAF did not notify Borenstein of the June 25, 2019 "Do not Adopt" entry it had placed in the Chameleon database when it was created.

40. Borenstein previously owned a dog, Rambo, that was sheltered by TAF three times between October 2017 and January 2018, first from October 12 to November 2, (21 days), then from November 16 to December 7 (21 days), and last from December 20 to January 3 (14 days).

41. Borenstein reclaimed Rambo after each of these three stays at the shelter.

42. Borenstein did not compensate TAF for all the costs and fees TAF believes were due to them stemming from one or more of Rambo's impounds.

43. On January 3, 2018, during Rambo's last stay at TAF's shelter, Supervisor Guzman allowed TAF's KEPPT program to cover the "adoptback" fees for Borenstein to be reunited with his dog.

44. Mana was impounded for one day at TAF on April 15, 2019.

45. Borenstein did not compensate TAF for Mana's April 15, 2019 impound.

///

## IV.    CONTESTED ISSUES OF FACT FOR TRIAL

The following are the issues of fact to be tried and determined at trial. Should counsel be unable to agree upon the language of the statement of issues of fact or law to be tried and determined upon the trial, then there shall be included separate statements of issues of fact or law to be tried and determined upon trial.

**A. Borenstein submits that the following are the issues of fact to be tried and determined upon trial:**

**9th Cause of Action** (*42 U.S.C § 12182. Prohibition of discrimination by public accommodations*) and **11th Cause of Action** (*NRS 651.070. Equal enjoyment of places of public accommodation*)

1.   Whether Borenstein was substantially limited in a major life activity or had a record of having such impairment (*i.e.* disabled within the meaning of the ADA), during the period between May 12, 2019, and June 2, 2019.

    a.   Borenstein was born disabled and has a record of impairment demonstrating that he suffers from permanent physical and mental disabilities.

    b.   Some impairments are episodic and all substantially limit the major life activity of being able to care for himself when active.

    c.   Borenstein has a document from his medical provider recommending that he have an emotional support or psychiatric service animal to assist him with his disabilities.

    d.   Borenstein uses a self-trained service dog to assist him and help him cope with his disabilities.

    e.   On May 13, 2019, Borenstein was involuntarily committed by Sunrise Hospital medical personnel for suicidal ideations and transported via ambulance/care van to North Vista Hospital in North Las Vegas, Nevada.

    f.   Borenstein remained hospitalized at North Vista Hospital until May 20, 2019.

    g.   On May 17, 2019, while on an involuntary mental health commitment, Borenstein informed the hospital case manager that he was homeless and

received $1,500.00 per month from social security for disability income and that he needed to secure room and board.

h. Borenstein was then hospitalized at Montevista Hospital until May 24, 2019.

i. Borenstein was hospitalized at University Medical Center between May 24, 2019, and May 26, 2019.

j. Borenstein was hospitalized at Seven Hills Hospital on May 27, 2019.

k. Borenstein was hospitalized at Sunrise Hospital between May 27, 2019, and May 30, 2019.

l. Borenstein was hospitalized at Desert Parkway Behavioral Hospital on May 30, 2019.

m. Borenstein was hospitalized at Valley Hospital on May 30, 2019.

n. On May 31, 2019, Borenstein was involuntarily committed by Valley Hospital medical personnel and transferred to Spring Mountain Treatment Center through June 2, 2019.

o. During the entire period between May 12, 2019, and June 2, 2019, Borenstein was suffering from physical and mental impairments that substantially limited his major life activities.

p. Borenstein's impairments prevented him from caring for himself and for his dog, Mana, during the times that he was hospitalized and for any brief time between hospital admissions between the period of May 12, 2019, and June 2, 2019.

2. Whether TAF had knowledge that Plaintiff was disabled and requested a modification from TAF to hold his dog, Mana, until June 2, 2019,

a. Borenstein was admitted to Sunrise Hospital on May 12, 2019, upon which he was sedated for one or more of these impairments.

b. Medical personnel explained to Borenstein that hospital personnel would not be able to care for Mana and had no place inside the hospital to secure Mana.

c. Borenstein did not have any family or friends who could care for Mana on

Borenstein's behalf, so he asked medical personnel if they would call CCAC and request them to hold Mana while Borenstein was incapable of caring for Mana himself.

d.  Sunrise Hospital security called CCAC dispatch and advised that Borenstein had been admitted to the hospital and requested CCAC to impound Mana.

e.  CCAC Officer Rachel Lund arrived at the hospital, where she met with a hospital nurse and security officer who advised her that Borenstein had been sedated and that Borenstein had identified Mana as his service dog.

f.  CCAC Lieutenant Stephanie Clevinger advised Officer Lund to remove Mana from the vehicle for transport and to place only a ten-day hold on him.

g.  Officer Lund left a copy of the impound card with the nurse to give to Borenstein and instructed that, if Borenstein needed more than ten-days' time to reclaim Mana, he should call CCAC, which information was subsequently entered in Borenstein's medical records.

h.  TAF operates the Lied Animal Shelter, including on May 12, 2019.

i.  A CCAC officer delivered Mana to TAF's shelter on May 12, 2019, and provided TAF with a copy of the impound card reflecting that Borenstein had been admitted to Sunrise Hospital and was sedated.

j.  Borenstein was informed by Sunrise Hospital that CCAC had placed Mana on a ten-day hold at TAF, beginning May 12, 2019.

k.  On May 13, 2019, and again on May 14, 2019, TAF Lost & Found Clerk Isaura Lopez-Castaneda sent emails to Borenstein with specific instructions for contacting TAF before 2:35 p.m., on May 22, 2019, to prevent Mana from being processed through the shelter for adoption or euthanasia.

l.  The emails stated that, if necessary, it was Borenstein's responsibility to call or email TAF Animal Admissions Supervisors, Lee Guzman or Nikolas Caldera, to request more time on Mana's hold.

m.  The emails also provided a phone number for CCAC and information about

TAF's KEPPT Program, which is described in the emails as an owner-surrender intervention program offered by TAF for persons in need of temporary boarding or other assistance for their animals.

n. Borenstein called the telephone numbers provided to him by TAF several times and left messages, as instructed in the emails, including on the fourth, ninth, and twelfth days of Mana's hold, on May 16, May 21, and May 24, 2019, respectively, and on June 1, 2019.

o. On May 21, 2019, Borenstein telephoned CCAC and spoke with Lieutenant Victor Zavala. Borenstein explained to Lt. Zavala that he was still hospitalized, and he requested that Mana be held until June 2, 2019.

p. On May 21, 2019, Victor Zavala sent an email to TAF Supervisor Guzman, advising that Borenstein had informed him that he was hospitalized, that Borenstein had requested Mana to be held until June 2, 2019, and that Borenstein did not have access to a telephone where he could be reached.

q. TAF Supervisor Guzman acknowledged receipt of the email that evening, stating that he called Sunrise Hospital and was told the hospital had no record of Borenstein. Supervisor Guzman sent a subsequent email minutes later stating that he just learned Borenstein had been discharged from the hospital.

r. On May 22, 2019, Lt. Zavala sent another email to Supervisor Guzman, explaining that Borenstein had been transferred to Montevista Hospital and that the hospital social worker there did not know if Borenstein would be released by the May 24, 2019 review date on Mana's hold. Supervisor Guzman thanked Lt. Zavala for the information.

s. On May 24, 2019, Borenstein telephoned CCAC Lt. Clevinger and explained that he had been transferred to UMC Hospital and again requested to have the hold extended on Mana. Lt. Clevinger relayed this information to TAF on May 28, 2019, and TAF's Assistant Director of Operations, Zoie Keast, agreed to follow up with Borenstein regarding his request.

t.  Supervisor Guzman was copied on the email chain.

u.  Borenstein previously owned a service dog, Rambo, that was sheltered by TAF for extended hold periods, while Borenstein was hospitalized on three occasions between October 2017 and January 2018, during which time Rambo was held for a combined total of approximately 60 days.

v.  Lt. Zavala, Supervisor Guzman, Ms. Lopez-Castaneda, and Julio Mejia all had prior experiences with Borenstein in 2017 and 2018 when he requested extended holds for Rambo, including in October through December 2018, when Rambo was sheltered at TAF on CCAC holds while Borenstein was hospitalized.

w.  Borenstein reclaimed Rambo after each of these three impounds.

x.  During Rambo's last impound, Supervisor Guzman approved Rambo's care through the KEPPT program.

3.  Whether TAF had knowledge that Plaintiff requested a second modification from TAF to seek Mana's return from the animal rescue adopter.

a.  On the evening of June 1, 2019, Mana was adopted to a third-party individual involved in animal rescue—just one day short of Borenstein's requested hold.

b.  On the morning of June 2, 2019, Lt. Clevinger spoke with Borenstein and advised him that Mana had already been adopted from TAF.

c.  That same morning, while acting on behalf of Borenstein, a licensed social worker at Spring Mountain Treatment Center, Tiffany Evans, also spoke to CCAC dispatcher, Angela Negri, who informed Ms. Evans that they knew Borenstein would be upset but proceeded with Mana's adoption anyway.

d.  Borenstein was discharged from Spring Mountain Treatment Center, thereafter.

e.  Borenstein went to the Lied Animal Shelter seeking Mana's return on June 3, 2019.

<table>
<tr><td>1</td><td>f.  Assistant Director Keast told Borenstein that Mana had already been</td></tr>
<tr><td>2</td><td>adopted by someone else and that Borenstein was too sick to have a dog.</td></tr>
<tr><td>3</td><td>g.  Borenstein later returned to Lied Animal Shelter, prior to June 8, 2019.</td></tr>
</table>

<div style="margin-left:3em">

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

</div>

f.  Assistant Director Keast told Borenstein that Mana had already been adopted by someone else and that Borenstein was too sick to have a dog.

g.  Borenstein later returned to Lied Animal Shelter, prior to June 8, 2019.

h.  Borenstein called law enforcement to TAF's facility for help in getting Mana returned to him.

i.  Borenstein contacted Channel 13 News, on or before June 5, 2019, to help get Mana back, but Clark County Public Relations Manager, Dan Kulin, convinced Channel 13 News not to run the story.

j.  Borenstein also contacted Clark County Commissioner Marilyn Kirkpatrick's office, on or before June 5, 2019, to help get Mana back.

k.  Borenstein presented TAF with a written demand for Mana's return in June 2019.

l.  On June 8, 2019, Borenstein sent an email to TAF CEO Christine Robinson asking for Mana's return.

m.  CEO Robinson forwarded the email to Assistant Director Keast, who in response, wrote to CEO Robinson that Borenstein's dog came to TAF on May 12, 2019, when Borenstein was hospitalized; that Borenstein had been transferred to two or more hospitals since being admitted; that Borenstein clearly loved his dog who provided him with a lot of emotional support, but unfortunately Borenstein was unstable and ill.

n.  On June 10, 2019, Borenstein filed a lawsuit seeking the return of Mana.

o.  On or before June 11, 2019, Borenstein contacted United States Senator Jackie Rosen's office to help get Mana back.

p.  On June 19, 2019, Borenstein emailed Bonney Brown at the Humane Network to help get Mana back.

q.  On June 20, 2019, Borenstein filed a request for preliminary injunction seeking the return of Mana.

4.  Whether Borenstein's request to hold Mana until June 2, 2019, was reasonable.

a. TAF held Mana until June 1, 2019.

b. Borenstein requested TAF to hold Mana until June 2, 2019.

5. Whether Borenstein's request for TAF to seek Mana's return from the third-party adopter was reasonable.

    a. Mana was Borenstein's self-trained service animal.

    b. The third-party adopter was admittedly an individual involved in animal rescue.

    c. TAF was aware of Borenstein's request for the return of Mana just two days after Mana was adopted.

6. Whether TAF failed to make one or more requested reasonable modifications to accommodate Borenstein's disability.

    a. TAF did not extend the hold date on Mana, as Borenstein requested. but instead placed review dates of May 24, May 28, and May 31, 2019, to re-evaluate whether Mana should continue to be held.

    b. On May 29, 2019, TAF Assistant Director Keast documented in the Chameleon database that CCAC had received a call from Borenstein and that she was placing a new May 31, 2019 review date on Mana to allow time for TAF to make contact with Borenstein.

    c. Assistant Director Keast instructed Julio Mejia to remove the hold placed on Mana.

    d. On May 30, 2019, Julio Mejia removed the hold on Mana early, after calling UMC and Montevista Hospital, notwithstanding that Borenstein was then at Sunrise Hospital and had informed TAF through Lt. Zavala, on May 21, 2019, that he needed Mana held until June 2, 2019.

    e. Mana was made available for adoption on or about May 31, 2019.

    f. On the evening of June 1, 2019, Mana was adopted to a third-party individual involved in animal rescue—just one day short of Borenstein's requested hold.

    g. TAF did not attempt to hold Mana until June 2, 2019, through its KEPPT

program or through one of its PAW partners, as a reasonable modification requested by Borenstein, on May 21, 2019.

 h. TAF's shelter facility was not at capacity while Mana was being held in May or June 2019.

 i. On June 12, 2019, Scholten spoke with Aga Pinkerton in Senator Rosen's office about Mana's adoption and told her that Borenstein did not come forward to reclaim Mana during the County's legal hold period.

 j. On June 19, 2019, Scholten spoke with Ms. Brown about Mana's adoption and told her that Borenstein did not come forward to reclaim Mana during the County's legal hold period.

 k. Scholten testified in her deposition that "come forward to reclaim" means to contact TAF by showing up in person, calling TAF, or sending TAF an email.

 l. TAF did not seek the return of Mana from the new adopter or otherwise inform the adopter of Borenstein's request for Mana's return.

 m. TAF interfered with Borenstein's individual community outreach efforts seeking Mana's return.

7. Whether TAF can meet its burden of proof to show that Borenstein's request to hold Mana until June 2, 2019, and/or to inform the third-party adopter that Borenstein was seeking repossession of Mana would fundamentally alter the nature of TAF.

 a. TAF held Mana until June 1, 2019.

 b. TAF is a non-profit entity that received nearly five million dollars of public funding alone to provide shelter services for local governments in the greater Las Vegas valley.

 c. TAF operates the KEPPT (Keeping Every Person and Pet Together) program to assist pet owners in caring for their pets.

 d. TAF utilized this program for extending holds on Borenstein's previous service dog, Rambo.

 e. TAF also has numerous PAW partners, including German Sheperd Rescue,

who foster pets temporarily.

8. Alternatively to the foregoing issues of fact, whether TAF uses standards, criteria, or methods of administration that have the effect of discriminating based on disability, including discriminating against Borenstein.

    a. Chief Operating Officer Scholten testified that she did not recall TAF training her or other employees on the ADA.

    b. TAF's entity witness, Director of Operations Brenda Arceo, testified that she never received training on the ADA.

    c. Arceo testified that she was not aware of any and did not believe that TAF provided training to any of its staff or volunteers to protect against discrimination when interacting with members of the public.

    d. Arceo testified that she did not believe TAF provided any training to prevent retaliation against persons who oppose an act or policy of TAF's.

    e. Arceo testified that all animals coming to TAF, including those held at the request of a hospitalized owner, are handled through the Lost and Found Department at TAF.

    f. Arceo testified that TAF does not do an individual assessment for a disabled person seeking an accommodation and would give the person the same accommodation given to anyone else who is not disabled.

    g. Arceo testified that TAF supervisors are not trained to determine when TAF should provide an accommodation to an individual, in accordance with the ADA.

    h. Arceo testified that TAF does not have an anti-discrimination policy or procedure applicable to interacting with members of the public.

    i. Scholten testified that she did not understand what a reasonable accommodation means as it pertains to members of the public.

    j. Scholten testified that when any person contacts TAF regarding his pet, he is directed to animal admissions where he might have to leave a voice message.

k. In December 2017, Julio Mejia (the same person who removed the hold on Mana, making him available for adoption to a third-party) sent an internal email explaining that he had accidentally deleted a voice message from Borenstein, who Mejia said he thought was trying to get his dog returned to him.

l. On May 16, 2019, both Borenstein and his hospital social worker telephoned TAF multiple times in attempt to obtain an extension on Mana's hold, but no one answered the telephone, and no one from TAF returned his voice messages.

m. On June 2, 2019, both Borenstein and a different hospital social worker telephoned TAF multiple times, but no one answered the telephone.

n. TAF holds animals for any extended period mandated by CCAC but otherwise decides whether to extend a hold without specifically considering an owner's disability needs.

9. Whether Borenstein is entitled to injunctive relief.

10. ***NRS 651.070 only*** – whether Borenstein suffered actual damages and the amount thereof.

**8th Cause of Action** (*42 U.S.C § 12203. Prohibition against retaliation*) and **11th Cause of Action** (*NRS 651.090. Deprivation of, interference with, and punishment for exercising rights and privileges*)

1. Whether Borenstein was involved in a protected activity under the ADA, including by, but not limited to, seeking the return of Mana through his hospital social worker, contacting public and private officials, contacting law enforcement, contacting the media, and/or seeking relief in federal court.

   a. See § 3(c)-(q), *supra.*

2. Whether TAF coerced, intimidated, threatened, or interfered with Borenstein on account of his having exercised any right granted or protected by the ADA, including, but not limited to, Borenstein's ability to obtain or use the services, facilities,

privileges, advantages, or accommodations of TAF.

    a.  TAF interfered with Borenstein's individual community outreach efforts seeking Mana's return.

    b.  On June 25, 2019, Keast placed a memo in the Chameleon database placing Borenstein on a Do Not Adopt list with a false or misleading explanation that he had dogs at the Lied Animal Shelter twice on police holds in the prior three months and that he is combative when not given the answer he wants and will often call the police to attempt to get his way.

    c.  TAF did not notify Mr. Borenstein of the June 25, 2019 database entry.

    d.  Borenstein tried to adopt another dog from TAF and was refused an adoption because of Keast's memo.

    e.  Borenstein tried to adopt another dog from the City of Henderson Animal Shelter, on January 29, 2020, and was refused an adoption because of the memo.

3.  Whether TAF retaliated against Borenstein (*e.g.* withheld, denied, deprived, or attempted to withhold, deny, or deprive Borenstein the full and equal enjoyment of services, facilities, privileges, advantages, or accommodations or intimidated, threatened, coerced, or attempted to threaten, intimidate, or coerce Borenstein for the purpose of interfering with his full and equal enjoyment of the services, facilities, privileges, advantages, or accommodations or punished or attempted to punish Borenstein for opposing a discriminatory practice), because he participated in action to enforce the ADA, including, but not limited to, the return of Mana and TAF's entry into the Chameleon database system.

    a.  Borenstein engaged in protected activity beginning on June 2, 2019, when his social worker acted on his behalf by calling CCAC to help him seek Mana's return, through June 20, 2019, when he filed the instant lawsuit.

    b.  The temporal proximity of the false and misleading Do Not Adopt memo placed by Keast in the Chameleon database occurred in the same month as

Borenstein's protected activities.

     c.   Because Borenstein's protected activities, he was prevented from adopting another dog from TAF and the Henderson Animal Shelter.

4.   Whether Borenstein is entitled to injunctive relief.

5.   *NRS 651.090 only* – whether Borenstein suffered actual damages and the amount thereof.

**B. TAF submits that the following are the issues of fact to be tried and determined upon trial:**

1.   Those facts required for Plaintiff to meet his burden of proof on his causes of action.

2.   Whether Borenstein provided TAF actual notice of his disability.

3.   Whether CCAC provided Borenstein a reasonable accommodation when it placed Mana on a 10-day legal hold.

4.   Whether TAF provided Borenstein a reasonable accommodation when it placed Mana on an adoption "review date" hold.

5.   Whether TAF provided Borenstein a reasonable accommodation when it extended the adoption "review date" hold placed on Mana.

6.   Whether TAF was reasonable in removing the adoption "review date" hold placed on Mana when it was unable to contact or locate Borenstein at any of the hospitals he alleged to be at.

7.   Whether Borenstein created a pre-planned scheme to utilize TAF's animal shelter as a boarding facility for Mana while he awaited receipt of his social security check so that he could re-obtain a place to house himself and the dog.

8.   Whether Borenstein had a modus operandi of seeking temporary shelter by malingering and gaining hospital admission.

9.   Whether Borenstein had opportunity and means to retrieve Mana from TAF's animal shelter when he was discharged during Mana's adoption "review date" hold.

10.   Whether Mana was a trained service animal.

11.   Whether Borenstein used Mana as a service animal.

12. Whether Borenstein trained Mana as a service animal.

## V.    CONTESTED ISSUES OF LAW FOR TRIAL

The following are the issues of law to be tried and determined at trial. Should counsel be unable to agree upon the language of the statement of issues of fact or law to be tried and determined upon the trial, then there shall be included separate statements of issues of fact or law to be tried and determined upon trial.

**A. Borenstein submits that the following are the issues of law to be tried and determined upon trial:**

**8th Cause of Action** (*42 U.S.C § 12203. Prohibition against retaliation*)

1. Whether Borenstein was involved in a protected activity under the ADA, including by, but not limited to, seeking the return of Mana through his hospital social worker and directly through TAF, contacting public and private officials, contacting law enforcement, contacting the media, and/or seeking relief in federal court.

2. Whether TAF coerced, intimidated, threatened, or interfered with Borenstein on account of his having exercised any right granted or protected by the ADA, including, but not limited to, Borenstein's ability to obtain or use the services, facilities, privileges, advantages, or accommodations of TAF.

3. Whether TAF retaliated against Borenstein because he participated in action to enforce the ADA, including, but not limited to, TAF's entry into the Chameleon database system.

4. Whether Borenstein is entitled to injunctive relief.

**9th Cause of Action** (*42 U.S.C § 12182. Prohibition of discrimination by public accommodations*)

1. Whether Borenstein was disabled within the meaning of the ADA, during the period between May 12, 2019, and June 2, 2019.

2. Whether Borenstein requested a reasonable modification to TAF's policies and procedures, including but not limited to his request to hold Mana until June 2, 2019, and/or to make reasonable efforts to reclaim Mana from the adopters for return to

Borenstein.

3.  Whether TAF failed to make a requested reasonable modification to accommodate Borenstein's disability.

4.  Whether TAF excluded or otherwise denied Borenstein services, facilities, privileges, advantages, accommodations, or other opportunities because of his known disability(ies).

5.  Alternatively, whether TAF uses standards, criteria, or methods of administration that have the effect of discriminating on the basis of disability, including discriminating against Borenstein.

6.  Whether Borenstein is entitled to injunctive relief.

**11th Cause of Action** (*NRS 651.070. Equal enjoyment of places of public accommodation*)

1.  Whether TAF violated the ADA (*i.e.* per se violation of NRS); or

2.  Whether TAF reasonably modified its policies and procedures by holding Mana long enough to ensure that Borenstein had the full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations of TAF, without discrimination on the basis of his disability.

3.  Whether Borenstein suffered actual damages and the amount thereof.

4.  Whether Borenstein is entitled to injunctive relief.

**11th Cause of Action** (*NRS 651.090. Deprivation of, interference with, and punishment for exercising rights and privileges*)

1.  Whether TAF violated the ADA (*i.e.* per se violation of NRS); or

2.  Whether TAF withheld, denied, deprived, or attempted to withhold, deny, or deprive Borenstein the full and equal enjoyment of services, facilities, privileges, advantages, or accommodations of TAF, including by, but not limited to, failing to hold Mana until June 2, 2019, and/or inform the adopter of Borenstein's request to return Mana, and/or prevent Borenstein from adopting an animal from a government shelter in Clark County, Nevada; or

3.   Whether TAF intimidated, threatened, coerced, or attempted to threaten, intimidate, or coerce Borenstein for the purpose of interfering with his full and equal enjoyment of the services, facilities, privileges, advantages, or accommodations of TAF; or

4.   Whether TAF punished or attempted to punish Borenstein for having filed a complaint or for having opposed a discriminatory practice, including by, but not limited to, placing a defamatory entry about Borenstein in the Chameleon database.

5.   Whether Borenstein suffered actual damages and the amount thereof.

6.   Whether Borenstein is entitled to injunctive relief.

**B. TAF submits that the following are the issues of law to be tried and determined upon trial:**

1.   Whether Borenstein's requested accommodation would fundamentally alter the service TAF provides.

2.   Whether Borenstein's requested accommodation would require TAF provide him a greater opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to those afforded to other individuals.

3.   Whether TAF placed the Note in its database as a result of Borenstein engaging in a protected activity.

4.   Whether Borenstein suffered an adverse action from TAF as a result of his engaging in a protected activity.

5.   Whether any alleged adverse action was in retaliation of Borenstein's engagement in protected activities.

6.   Whether TAF was within its rights to place the Note in its database as Borenstein posed a direct threat to the health or safety of others.

7.   Whether the Note was instructive to any entity or organization beyond TAF.

8.   Whether TAF discriminated against Borenstein because of his disability.

9.   Whether Borenstein suffered actual damages.

10.  Whether TAF's actions proximately caused Borenstein's actual damages.

///

## VI.    EXHIBITS

**A.** The parties have identified and attached hereto as **Exhibit A**, a list of the exhibits that they intend to offer at trial, and the parties do not contest the authenticity of the documents, except as noted in Subsection B, *infra.*, although information contained within the documents is subject to applicable objections, including hearsay, under the rules set forth, *supra.*; all other exhibits may be marked by the clerk, subject to exclusion by the Court on an objection by the parties (these exhibits are not admitted into evidence at this time). Furthermore, where one party introduces only part of a document, the other party reserves the right to request the introduction of the remainder of the document, pursuant to FRE 106.

**B. Preliminary Objections:** As to the following exhibits, the party against whom the same will be offered objects to their admission on the grounds stated:

1. Borenstein's Exhibits[1] and TAF's objections to them**:**

Relevance objections:

- **CC000606, 648, 933, 2180,** and **2184**
- **TAF000002, 3-4, 5-6, 7, 8-18, 71, 86, 88, 89, 127,** and **130**
- **PLF00110-150, 151-191**, and **228-310**

Other objections:

- **PLF00228-310**: prejudice outweighs probative value
- **PLF00350**: hearsay

2. TAF's Exhibits and Borenstein's objections to them**:**

Relevance objections:

---

[1] Email documents originally produced by TAF in discovery on June 5, 2021, were corrupted, in that the dates on the final post of all emails that are part of a thread reverted to the date on which the document was datamined, rather than the date on which the email was sent. The errors were purportedly corrected in amended productions, on July 28, 2022, May 11, 2023, and June 28, 2023. However, while selecting the exhibits for this JPTO, Plaintiff's counsel discovered that the carbon copy lines in each of the affected documents had been excluded from the amended production, which Plaintiff has not alleged was intentional. <mark>Attorney Lipman agrees that the carbon copy line information should be corrected before the trial, but the parties disagree whose obligation it is to correct the information and request the Court to rule on this dispute.</mark> The affected documents are marked with FRE 1003, in the proposed exhibit list.

- **CC00965-79, 2027; PLF00209-13; SUNRISE000095-104, 183, 185-91, 339-49, 429, 431-38, 830, 833-42, 890-97**

Other objections:

- **CC00965-79, 2027**: FRE 403 – unfair prejudice, confusing issues, misleading; FRE 404 – character evidence; FRE 801-03 – hearsay within hearsay with no exceptions
- **CC002027**: FRE 106 – related statement (**CC000993-94**)
- **TAF000031, 33, 38**: FRE 105, FRE 403, FRE 404; FRE 801-03
- **TAF000044**: FRE 404; FRE 801-03
- **TAF000066, 132-35**: FRE 1003 – possible authenticity issues
- **TAF000096:** incomplete communication (use **CC002256-57**, instead); FRE 801-03
- **TAF000102-03**: FRE 105, FRE 801-03; FRE 1003
- **PLF00209-13**: FRE 105, FRE 403; FRE 404; FRE 801-03; **PLF 210**, n.1 limits admissibility
- **SUNRISE000095-96, 103**: FRE 105, FRE 403; FRE 404; FRE 801-03
- **SUNRISE000183**: FRE 403; FRE 404; FRE 801-03
- **SUNRISE000338**: FRE 403; FRE 404; FRE 801-03
- **SUNRISE000340, 345-48**: FRE 105, FRE 403; FRE 404; FRE 801-03
- **SUNRISE000429**: FRE 403; FRE 404; FRE 801-03
- **SUNRISE000435-37**: FRE 403; FRE 404; FRE 801-03
- **SUNRISE000833, 836, 841**: FRE 403; FRE 404; FRE 801-03
- **SUNRISE000890, 893, 895**: FRE 403; FRE 404; FRE 801-03

## C. Electronic Evidence:

1. The parties intend to present electronic evidence for the purpose of jury deliberation.
2. Borenstein intends to present electronic evidence in the form of audiotaped recording(s) produced by Defendant County of Clark in discovery.

///

**D. Depositions:**

1.  Borenstein will offer the following depositions:

    (a) James Andersen videorecording of entire testimony, unless available for trial.

    (b) Brenda Arceo, videorecording of entire testimony, unless available for trial.

    (c) Carly Scholten, videorecording of entire testimony, unless available for trial.

    (d) Borenstein reserves the right to introduce depositions, or portion(s) thereof, as necessary to impeach witness testimony.

Other witnesses are anticipated to be available at trial. However, to the degree that they are unavailable at trial, Borenstein intends to present their testimony by videorecording, if available, and by transcript reading if no videorecording is available.

2.  TAF will offer the following depositions:

    (a) TAF does not intend to offer any depositions in lieu of direct examination.

    (b) TAF reserves the right to introduce depositions, or portion(s) thereof, should any witness be unavailable at the time of trial or as necessary to impeach witness testimony.

**E. Objections to Depositions:**

1.  Borenstein's objections to TAF's depositions: None.

2.  TAF's objections to Borenstein's depositions: None.

**VII.  WITNESSES**

The following witnesses may be called by the parties at trial:

**A. Borenstein's Witnesses**

1.  Brian Borenstein, c/o Raelene K. Palmer, Esq., The Palmer Law Firm, P.C., 6605 Grand Montecito Pkwy, Suite 100. Las Vegas, Nevada 89149, (702) 952-9533, rpalmer@plflawyers.com; Robert S. Melcic, Esq., 4930 Mar Vista Way, Las Vegas, Nevada 89121, (702) 526-4235, robertmelcic@gmail.com; and Richard E. Retamar, Esq., Retamar & Millian, P.A., 685 E. Hillsboro Boulevard, Deerfield Beach, Florida 33441, (954) 834-0404, retamar@retamarmillian.com.

///

2.  Gail Tower,[2] c/o Raelene K. Palmer, Esq., The Palmer Law Firm, P.C., 6605 Grand Montecito Pkwy, Suite 100. Las Vegas, Nevada 89149, (702) 952-9533, rpalmer@plflawyers.com; Robert S. Melcic, Esq., 4930 Mar Vista Way, Las Vegas, Nevada 89121, (702) 526-4235, robertmelcic@gmail.com; and Richard E. Retamar, Esq., Retamar & Millian, P.A., 685 E. Hillsboro Boulevard, Deerfield Beach, Florida 33441, (954) 834-0404, retamar@retamarmillian.com.

3.  James Andersen, Corporate Representative for County of Clark and its Animal Control Division, c/o Jonathan D. Blum, Esq., Wiley Petersen, 10000 West Charleston Blvd., Suite 230, Las Vegas, Nevada 89135, (702) 952-9533, jblum@wileypetersenlaw.com.

4.  Custodian of Records for County of Clark and its Animal Control Division, c/o Jonathan D. Blum, Esq., Wiley Petersen, 10000 West Charleston Blvd., Suite 230, Las Vegas, Nevada 89135, (702) 952-9533, jblum@wileypetersenlaw.com.

5.  Victor Zavala, c/o Jonathan D. Blum, Esq., Wiley Petersen, 10000 West Charleston Blvd., Suite 230, Las Vegas, Nevada 89135, (702) 952-9533, jblum@wileypetersenlaw.com.

6.  Stephanie Clevinger, c/o Jonathan D. Blum, Esq., Wiley Petersen, 10000 West Charleston Blvd., Suite 230, Las Vegas, Nevada 89135, (702) 952-9533, jblum@wileypetersenlaw.com.

7.  Rachel Lund, c/o Jonathan D. Blum, Esq., Wiley Petersen, 10000 West Charleston Blvd., Suite 230, Las Vegas, Nevada 89135, (702) 952-9533, jblum@wileypetersenlaw.com.

8.  Angela Negri, 822 Fireweed Drive, Henderson, Nevada 89002, (702) 523-0654

9.  Brenda Arceo, Corporate Representative for TAF, c/o Bradley L. Lipman, Esq., Reid Rubinstein & Bogatz, 300 South 4th Street, Suite 830, Las Vegas, Nevada 89101, (702) 776-7000, blipman@rrblf.com.

---

[2] Plaintiff seeks permission for Gail Tower to testify remotely, pursuant to Fed. R. Civ. P. 43(a). Ms. Tower is an eighty-plus year-old resident of the state of Florida, whose health conditions make it difficult for her to travel and make her susceptible to illness. TAF does not object to such a request.

10. Custodian of Records for TAF, c/o Bradley L. Lipman, Esq., Reid Rubinstein & Bogatz, 300 South 4th Street, Suite 830, Las Vegas, Nevada 89101, (702) 776-7000, blipman@rrblf.com.

11. Carly Scholten,[3] c/o Bradley L. Lipman, Esq., Reid Rubinstein & Bogatz, 300 South 4th Street, Suite 830, Las Vegas, Nevada 89101, (702) 776-7000, blipman@rrblf.com.

12. Zoie Keast c/o Reid Rubinstein & Bogatz, 300 S. Fourth Street, Suite 830, Las Vegas, NV 89101, (702) 776-7000, blipman@rrblf.com.

13. Lee Guzman, c/o Bradley L. Lipman, Esq., Reid Rubinstein & Bogatz, 300 South 4th Street, Suite 830, Las Vegas, Nevada 89101, (702) 776-7000, blipman@rrblf.com.

14. Arthur Munoz, c/o Bradley L. Lipman, Esq., Reid Rubinstein & Bogatz, 300 South 4th Street, Suite 830, Las Vegas, Nevada 89101, (702) 776-7000, blipman@rrblf.com.

15. Isaura Lopez-Casteneda, c/o Bradley L. Lipman, Esq., Reid Rubinstein & Bogatz, 300 South 4th Street, Suite 830, Las Vegas, Nevada 89101, (702) 776-7000, blipman@rrblf.com.

16. Tiffany Evans, 9716 Fast Elk Street, Las Vegas NV 89143, (909) 246-8269.

17. Custodian of Records for Sunrise Hospital.

18. Custodian of Records for Spring Mountain Treatment Center.

19. Danielle Harney, City of Henderson, 300 E. Galleria Drive, Henderson, Nevada 89011, (702) 267-4970, email dharney@cityofhenderson.com.

20. Any witness not otherwise identified for impeachment purposes.

21. Plaintiff reserves the right to call those witnesses identified by TAF herein.

TAF objects to the following witnesses identified by Borenstein on the following grounds:

1. Carly Scholten – Ms. Scholten is an unavailable witness as she resides more than 100 miles from the place of trial. *See* Fed. R. Civ. P. 45 (c)(1)(A). Ms. Scholten is a resident of Illinois and no longer a party to this action. TAF objects to the extent that Ms. Scholten is unavailable and unwilling or unable to appear remotely via court-allowed videoconferencing.

---

[3] Carly Scholten is a resident of Illinois and is not expected to be available for trial. As such, Plaintiff intends to introduce her deposition testimony, as set forth, *supra.*

2.  Brenda Arceo as TAF's corporate representative — While Ms. Arceo may act as TAF's corporate representative for testimony at time of trial, TAF objects that it must produce Ms. Arceo for this purpose. Ms. Arceo acted as TAF's 30(b)(6) designee for discovery purposes, but that does not require her testimony in the same capacity at the time of trial. TAF reserves the right to produce any individual so designated for testimony should it be called to testify.

3.  TAF reserves the right to object to any witness called at the time of trial.

**B. TAF's Witnesses**

1.  Brian Borenstein

2.  Sunrise Hospital custodian of records, c/o Bailey Kennedy, 8984 Spanish Ridge Ave., Las Vegas, NV 89148-1302; (702) 562-8820.

3.  Clark County Animal Control custodian of records, c/o Wiley Petersen, 10000 W Charleston Blvd, Suite 230, Las Vegas, NV 89145; (702) 910-3329.

4.  The Animal Foundation custodian of records, c/o Reid Rubinstein & Bogatz, 300 S. Fourth Street, Suite 830, Las Vegas, NV 89101

5.  Zoie Keast c/o Reid Rubinstein & Bogatz, 300 S. Fourth Street, Suite 830, Las Vegas, NV 89101.

6.  Daniel B. Gowhari, D.O. c/o Bailey Kennedy, 8984 Spanish Ridge Ave., Las Vegas, NV 89148-1302; (702) 562-8820.

7.  Heber S. Phillips, D.O. c/o Bailey Kennedy, 8984 Spanish Ridge Ave., Las Vegas, NV 89148-1302; (702) 562-8820.

8.  Seven Hills Behavioral Health Hospital custodian of records, 3021 W Horizon Ridge Pkwy, Henderson, NV 89052; (855) 358-1424.

9.  Spring Mountain Treatment Center custodian of records, 7000 Spring Mountain Rd., Las Vegas, NV 89117; (702) 873-2400.

10. Mountain View Hospital custodian of records, 3100 N. Tenaya Way, Las Vegas, NV 89128

11. University Medical Center custodian of records, 1800 W. Charleston Blvd., Las

Vegas, NV 89102; (702) 383-2000.

12. City of Henderson Animal Care and Control custodian of records, 300 E. Galleria Dr., Henderson, NV 89011; (702) 267-4970.

13. TAF reserves the right to call those witnesses identified by Plaintiff herein.

Borenstein objects to the following witnesses identified by TAF on the following grounds:

1. As to the corporate or entity custodian of records, to the extent that TAF is simply seeking to authenticate identified exhibit documents, the parties have agreed that such documents will be admitted without further proof, subject to objections based on other rules of evidence such as relevance, unfair prejudice, hearsay, etc.

2. Mountain View Hospital is not a relevant witnesses to this case.

3. Upon information and belief, Zoie Keast is a resident of the state of Colorado who is not subject to a Rule 45 subpoena in Nevada. To the extent that she voluntarily appears for trial, Plaintiff seeks to call her as a witness for his case in chief, as well.

4. TAF reserves the right to object to any witness called at the time of trial.

## VIII.    MOTIONS IN LIMINE

No motions in limine have been filed. The parties understand that all motions in limine must be filed 30 days before trial.

## IX.    TRIAL DATE

The attorneys have met and have not agreed to three trial dates:

- Plaintiff's counsel is available in March and April 2026; but Attorney Lipman has informed them that he has been set for a three-week jury trial starting March 16, 2026, another jury trial starting April 27, 2026, and will be out of the country in mid-April.

- Plaintiff's counsel is not available in May or June 2026, due to the anticipated birth of a grandchild in May and her son's law school graduation and residency relocation in June, both out of state.

It is expressly understood by the undersigned that the court will set the trial of this matter at the convenience of the court's calendar.

1      It is estimated that the trial will take a total of seven (7) to ten (10) days.

2   APPROVED AS TO FORM AND CONTENT:

3      Dated this 3rd day of November 2025.     THE PALMER LAW FIRM, P.C.

4                                              */s/ Raelene K. Palmer*_____
5                                              RAELENE K. PALMER, Esq.
        Nevada Bar No. 8602
6                                              6605 Grand Montecito Pkwy, Suite 100
        Las Vegas, Nevada 89149
7                                              (702) 952-9533
8                                              *Attorneys for Plaintiff Brian Borenstein*

9

10  APPROVED AS TO FORM AND CONTENT:

11     Dated this 3rd day of November 2025.     REID RUBINSTEIN & BOGATZ

12                                             */s/ Bradley L. Lipman*_____
13                                             BRADLEY L. LIPMAN, Esq.
        Nevada Bar No. 14567
14                                             300 S. Fourth Street, Suite 830
15                                             Las Vegas, Nevada 89101
        (702) 776-7000
16                                             *Attorneys for Defendant The Animal Foundation*

17

18     **X.     ACTION BY THE COURT**

19  This case is set for court/jury trial on the fixed/stacked calendar on _____. Calendar

20  call will be held on _____.

21

22  DATED: _____     _____

23                                 UNITED STATES DISTRICT JUDGE

24

25

26

27

28